EXHIBIT A — Procedural Concerns and Accommodation Request to Department Chair

**Yi Yang, MD, PhD**

Chair and Professor

Department of Pharmacy Administration

The University of Mississippi

April 26, 2025

### Request Regarding Procedural Safeguards for Comprehensive Examination Retake

Dear Dr. Yang,

I hope this letter finds you well.

I am writing to formally and respectfully request specific procedural considerations and safeguards for my upcoming comprehensive examination retake scheduled for June 2025. As this will be my second and final opportunity to complete the examination, it is critical that the process fully aligns with departmental policies, upholds the principles of fairness and validity, and provide appropriate support for both my mental health and academic well-being.

Although several months have passed since my initial attempt, this period has given me valuable time to reflect carefully on the outcome, identify potential contributing factors, and thoughtfully consider steps that could help prevent similar issues—both for myself and for future students. I want to be clear that my purpose in raising these concerns is not to contest or dispute the previous examination result. Rather, it is to highlight where misunderstandings or procedural gaps may have occurred, so that appropriate safeguards and improvements can be implemented to strengthen the process and promote a fairer, more transparent examination experience moving forward.

1

Building on these reflections, and through discussions with faculty members, one central theme emerged regarding the outcome of my first examination attempt: **differing interpretations played a significant role.** While it would be easy to place full responsibility on myself for any misunderstanding, I believe doing so would overlook important factors that contributed to these differing interpretations. Accordingly, I have chosen to present the relevant facts as objectively as possible, so that informed judgments can be made about what occurred and how similar issues might be prevented in the future.

The two key factors which I believe contributed to the differing interpretations are:

1. **Ambiguity in the question's framing.**
2. **A procedural gap in exam development.**

I will elaborate on each of these factors below.

## 1. AMBIGUITY IN QUESTION FRAMING

As part of my efforts to better understand the factors which contributed to the outcome of my first comprehensive examination attempt—and following discussions with faculty members—I was encouraged to revisit NIH-style Requests for Proposals (RFPs) to help prevent a recurrence of a similar outcome. In response, I carefully reviewed the NIH-style sample RFPs distributed during the Spring 2021 departmental seminar. A close comparison between the NIH sample prompt and the comprehensive exam prompt I received made it clear that the core issue was not a lack of familiarity with RFP formats, but rather ambiguity in the wording of the examination prompt itself. For clarity, I have outlined the key phrasing from each prompt below:

### NIH Sample RFP Prompt (Spring 2021 Seminar, Question 15)

Child and maternal health in Mississippi is lacking in a number of ways according to the 2016 Health of Women and Child Report from America's Health Rankings (https://www.americashealthrankings.org/learn/reports/2016-health-of-women-and-children report/state-summaries-mississippi). Community pharmacists represent an untapped resource for the provision of clinical care in resource poor rural communities. Community pharmacy interventions have research evidence for both chronic diseases (i.e., diabetes, hypertension, smoking cessation, etc.) and self-limiting conditions (i.e., cough and cold, minor injuries). Focusing on one or two health outcomes for which Mississippi is performing poorly for women, infants, and/or children, propose an intervention that could be delivered in a community pharmacy setting to address your chosen outcome(s) and propose a study to collect any preliminary data you might need to eventually test the intervention's effectiveness. This mini proposal must contain clearly-stated information under each of the following headings: (1) Nature of Project—a brief description of the purpose and goals of the proposed work, including appropriate background material and significance of the project. (2) Objectives—a clear statement of expectations for the project. (3) Methods—the methods to be used for the study, including study subjects, data source, and data analysis. This mini proposal should be limited to 5 pages in length. Any tables, figures, or references can be appended on additional pages that will not be counted towards the 5-page limit.

### Comprehensive Exam RFP Prompt (Question 1)

Obesity is highly prevalent in adults in the United States (US). According to the Centers for Disease Control and Prevention the prevalence of obesity among adults in the US was 41.9% during 2017-March 2020 (https://www.cdc.gov/obesity/php/data-research/adult-obesity-facts). Individuals experiencing obesity are more likely to have other serious chronic diseases, including cardiovascular disease and diabetes, and have greater healthcare costs

3

(Ward et al., 2021). The FDA has approved new medications for the treatment of obesity, including Wegovy and Zepbound. Lifestyle changes, including diet and physical activity, are recommended in conjunction with the use of these medications to improve body composition and improve some health conditions. However, lifestyle changes are challenging for many individuals. Health behavior theories have been utilized to guide interventions that aim to help individuals make positive health behavior changes. This mini request for proposals seeks to develop a theory-guided diet and/or physical activity intervention for individuals utilizing prescription medications for weight loss. Specifically, this proposal should identify a health behavior theory and **propose a study to develop and test an intervention** designed to impact one or more of the mediating variables in the theory. Outcome measurement should be restricted to the targeted behavioral outcome(s) for this mini-proposal. This mini proposal must contain clearly-stated information under each of the following headings: (1) Nature of Project—a brief description of the purpose and goals of the proposed work, including appropriate background material and significance of the project. (2) Objectives—a clear statement of expectations for the project. (3) Methods—the methods to be used for the study, including study subjects, data source, operationalization of key study variables, and data analysis. This mini proposal should be limited to 5 pages in length. Any tables, figures, or references can be appended on additional pages that will not be counted towards the 5-page limit.

## NIH Sample RFP Prompt:

Instruction: **"Propose an intervention."**

**Interpretation:** Clearly directs the respondent to propose an intervention.

## Comprehensive Exam RFP Prompt:

Instruction: **"Propose a study to develop and test an intervention."**

**Potential Interpretations:**

**Interpretation 1:** Propose a study that could be used to develop and test an intervention (consistent with observational research approaches).

**Interpretation 2:** Propose an intervention (which does not align with the prompt's wording on proposing a study).

The distinction here is critical.

Whereas the NIH sample prompt clearly directs the respondent to propose an intervention, the comprehensive exam prompt introduces ambiguity:

- Is the student being asked to propose an observational study that would lay the groundwork for future intervention development and testing?
- Or is the student being asked to design and propose an immediate intervention?

To assess how a reasonable doctoral student might interpret the task, it is important to consider the academic context.

Throughout my doctoral training, I have consistently pursued an observational, theory-driven methodological trajectory. Designing observational studies to inform future interventions is standard practice within this tradition and has been systematically reinforced through four years of coursework, thesis research, research assistantships, and conference participation. Given this background, it was entirely reasonable—and indeed expected—that I would interpret the prompt in line with **Interpretation 1: proposing a study to support the future development and testing of an intervention.**

It could be argued that, if any uncertainty existed, clarification should have been sought. However, the possibility that Response 2—an immediate intervention proposal—might have been intended only became apparent during the oral examination session, well after the written responses had been submitted. Throughout the writing phase, the prompt appeared unambiguous in light of my academic preparation, and I was confident that my interpretation was both appropriate and consistent with established research practices. Clarification is typically sought when uncertainty is perceived; in this case, no ambiguity was reasonably apparent to me at the time, based on my academic preparation.

5

**Regardless, what is the constructive way forward?**

To help prevent similar occurrences and promote clearer evaluation standards, I respectfully propose the following safeguards:

- Examination prompts, particularly those requesting research proposals, should use language that clearly indicates whether an immediate intervention or a formative/observational study is expected.

- Examination prompts should be pilot tested with graduate students at comparable stages of training to ensure that intended expectations are consistently understood.

- Faculty members who are substantively familiar with a student's methodological background should be responsible for developing examination prompts involving research proposals or tasks with significant methodological nuances, as emphasized in departmental policies.

Faculty who are meaningfully familiar with a student's research trajectory are better positioned to craft examination prompts that either (1) align with the student's methodological orientation, or (2) explicitly signal when a methodological shift is intended, thereby minimizing the risk of interpretive confusion.

I will expand further on the importance of examiner familiarity in the next section.

## 2.  PROCEDUARAL GAP IN EXAM DEVELOPMENT

A key safeguard against the types of interpretive challenges described above is clearly embedded within the department's policy, which states: ***"The exam will be developed by a committee of three faculty members familiar with the student's research interests."*** This requirement is designed to ensure that comprehensive examination questions are crafted by faculty members who possess substantive, working familiarity with the student's methodological training, research focus, and scholarly development—thereby promoting fair, valid, and contextually appropriate evaluation.

Meaningful familiarity is typically established through deeper academic engagement—such as serving on a student's thesis or dissertation committee, collaborating directly on research projects, or providing mentorship through research assistantships—rather than through general classroom instruction alone. Faculty with this level of substantive engagement are far better positioned to craft examination prompts that either align with the students' methodological training or, when necessary, explicitly signal any intended methodological departures.

However, during recent conversations with faculty members, it was suggested that all faculty members could be considered equally familiar with all students. Applying the concept of "familiarity" in such a universal manner effectively neutralizes the protective purpose of the departmental policy. If every faculty member is presumed equally familiar with every student, the policy ceases to function as a meaningful safeguard and instead becomes a procedural formality.

In my case, had the safeguard been properly applied—ensuring that exam questions were developed by faculty members with substantive, working familiarity with my research trajectory—the following issues could likely have been avoided:

- the ambiguity in the exam prompt;

7

- the lack of alignment with my academic experiences (including my thesis, four years of research proposals, poster presentations, podium presentations, and dissertation work); and
- the absence of clear and explicit cues indicating that a methodological shift from my established observational research approach was expected.

Faculty members meaningfully familiar with my scholarly development would have been better positioned either to align the prompt with my training or, if a departure was intended, to signal that expectation clearly and explicitly. These circumstances—and the resulting examination outcome—illustrate precisely the kind of procedural failure that can arise when the policy's intended safeguards are diluted or loosely applied.

To illustrate how safeguards could have strengthened the examination process and helped prevent interpretive discrepancies, I have prepared two tables. **Table 1** outlines the ideal examination development process from the faculty perspective, the corresponding safeguards intended to uphold fairness and validity, and a comparison with what occurred during my examination. **Table 2** presents the examination process from the student perspective, contrasting the ideal scenario with my actual experience. Together, these comparisons highlight key points where future examination practices could be strengthened to promote greater fairness, clarity, and alignment with departmental standards.

**Table 1: Examination Development Process (Faculty side)**

| Step | Ideal Scenario | Key Safeguard to Ensure Ideal Scenario | My Exam |
|---|---|---|---|
| **Exam Writers Selection** | Faculty members with substantive, working familiarity with the student's research interests and methodological background are selected. | **Policy:** *"Exam will be developed by three faculty members familiar with the student's research interests."* Intended to ensure alignment and reduce risk of interpretive misalignment. | Familiarity was assumed based on general departmental association, rather than demonstrated through thesis or dissertation committee membership, collaborative research projects, or research assistantship supervision. |
| **Writes Questions** | Exam writers develop questions that are clear, unambiguous, aligned with the student's methodological training, or explicitly signal when a methodological departure is expected. | Clear framing minimizes risk of interpretive discrepancies; explicit cues are provided if a departure from the student's established research framework is intended. | Questions were ambiguously framed, allowing multiple reasonable interpretations; no cue was provided to indicate a methodological departure was expected. |
| **Preliminary Review** | Draft questions are reviewed for clarity by both faculty members and students at a similar stage of training to the examinee. | Combining faculty and student perspectives helps ensure questions are interpreted as intended by the target examinee group. | No preliminary review from both perspectives; potential ambiguity from a student's viewpoint remained unaddressed. |
| **Final Faculty Review** | Questions are finalized only after verifying clarity, methodological alignment, and explicit signaling if a methodological departure is expected. | Final check ensures that prompts are free of ambiguity, align with the student's training unless otherwise cued, and fairly signal expectations. | No correction of ambiguity or signaling of methodological departure; issues persisted into the final version of the exam |
| **Question Administration** | Students receive questions that are either aligned with their training or contain clear, explicit cues if a methodological shift is expected. | Final exam reflects careful adherence to safeguards established during question development and review. | Gaps in examiner familiarity, question clarity, and departure signaling were carried forward into the exam without correction. |

**Table 2: Student Response and Grade Receipt (Student side)**

| Step | Ideal Scenario | Key Safeguard to Ensure Ideal Scenario | My Exam |
|---|---|---|---|
| **Receives Questions** | Student receives questions aligned with their established methodological orientation, or with a clear, explicit cue if a departure is expected. | Prompts signal explicitly if students are expected to depart from their established research framework. | No explicit cue signaled a shift away from my longstanding observational methodological orientation. |
| **Interprets Questions** | Student interprets the prompt based on cumulative research experiences—such **as thesis development, research proposals, poster presentations, podium presentations, and dissertation work**—consistent with their established methodological focus. | Clear wording and appropriate cueing ensure consistent interpretation aligned with intended expectations. | Interpreted the question based on prior research experiences and training in observational methods. |
| **Draws on Ability to Respond** | Student applies methodological skills and research competencies consistent with the prompt's explicit expectations. | Students demonstrate ability through the appropriate application of research methodology based on the prompt's clear requirements. | Applied rigorous observational research methods based on my interpretation of the prompt as presented. |
| **Submits Response** | Student submits work that is consistent with prior methodological training and any interpretation reasonably drawn from the prompt. | Students' responses reflect both their preparation and the intended evaluative task. | Submitted a response consistent with my observational training and the interpretation I explained during the oral examination. |
| **Grading based on Ability** | Grades are based on presence or absence of the abilities the exam intended to measure—not misunderstandings caused by ambiguous prompts. | Ensures that evaluation reflects scholarly competence rather than unintended interpretive confusion. | Grading reflected an interpretive mismatch rather than a deficiency in substantive academic abilities. Remediation feedback confirmed my competence. |

10

### 3. CLARITY, TRANSPARENCY, AND PROCEDURAL FAIRNESS

In recent conversations with faculty members regarding my upcoming comprehensive examination retake scheduled for June, I was informed that the concerns outlined in this letter would be raised in future faculty meetings to help strengthen examination practices. While I appreciate this proactive initiative, it remains uncertain how these discussions could meaningfully influence my current situation, given that—to my understanding—the examination questions for my retake have already been finalized.

Adding to this uncertainty, I have received conflicting information from multiple faculty members regarding the status of the upcoming examination. One faculty member indicated that the questions had already been finalized. Another later confirmed that the finalized questions would remain identical to those from my previous attempt. A third subsequently suggested that the questions would be different, with greater attention given to examiner familiarity. These inconsistencies have raised significant concerns about procedural transparency and have made it difficult to ascertain whether the department's established safeguards are being consistently and meaningfully applied.

I also wish to express concerns regarding the conduct and transparency of the prior oral examination, which was held behind closed doors. During subsequent remediation discussions, significant discrepancies emerged between my recollection of the oral exchange and the interpretations later conveyed by faculty members. For instance, during one remediation meeting, it was implied by a faculty member that I had intentionally refused to address the question because it was intervention-based. However, during the oral examination itself, I clearly explained my thought process, stating that I had not interpreted the written question as calling for an intervention.

Furthermore, when prompted during the oral examination to design an intervention to assess my competence in that area, I did so without difficulty. At no point during or after the oral session was my ability to design an intervention questioned or challenged. These misalignments between the oral proceedings and subsequent faculty characterizations have heightened my concerns regarding transparency and procedural accuracy.

To help mitigate similar risks during my upcoming examination, I respectfully request that an external, neutral observer be present throughout the process, particularly during the oral portion. Additionally, if feasible, I would strongly prefer that the oral examination be conducted openly, consistent with the department's established practices for thesis and dissertation defenses, where visibility helps promote fairness, accuracy, and procedural accountability.

To be clear, I am not requesting leniency, favoritism, or an exemption from academic standards. Rather, I am requesting that the comprehensive examination process be conducted fully in accordance with departmental policies, ensuring a fair, valid, and reasonable opportunity to demonstrate my competence without undue psychological strain. The challenges I experienced during my previous examination attempt were not inevitable; they stemmed from departures from established safeguards that were intended to prevent such outcomes. In light of this, I believe it is both appropriate and necessary to advocate for a transparent, policy-guided evaluation process moving forward.

After several months of academic delay, personal distress, and careful reflection, I remain fully committed to moving forward constructively and professionally. I respectfully request your timely and thoughtful consideration of the points outlined in this letter, and I would welcome the opportunity to discuss any aspect further to help ensure a fair, transparent, and successful examination process.

12

Thank you very much for your time and consideration.


Warm regards,

Eriakha Omokhodion Alfred

Doctoral Student, Department of Pharmacy Administration

University of Mississippi