*[Handwritten:]* EXHIBIT B — Chair's Response to Procedural Concerns and Accommodation Request

**THE UNIVERSITY OF MISSISSIPPI**

Omokhodion Eriakha <oeriakha@go.olemiss.edu>

## Follow-Up on Comprehensive Examination Safeguards Request
10 messages

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>  Mon, Apr 28, 2025 at 8:44 AM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John Bentley <phjpb@olemiss.edu>

Hi Dr. Yang,

Good morning! I hope you are doing well. I wanted to follow up on our meeting from Friday to formally request procedural safeguards regarding my upcoming comprehensive examination.

Please find attached a letter that outlines and elaborates on this request. Thank you very much for your time and consideration.

Best regards,
Alfred

--
Alfred Eriakha
PhD Student
Department of Pharmacy Administration
The University of Mississippi
oeriakha@go.olemiss.edu
+1-662-380-0924

📎 Request_For_Safeguards_04_27_25.pdf
240K

---

**Yi Yang** <yiyang@olemiss.edu>  Tue, Apr 29, 2025 at 1:40 PM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Hi Alfred,

Thank you for the message. Our department faculty will discuss this, and I will inform you of our decision.

Thanks, Yi


Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

**From:** Omokhodion Eriakha <oeriakha@go.olemiss.edu>
**Sent:** Monday, April 28, 2025 8:44 AM
**To:** Yi Yang <yiyang@olemiss.edu>
**Cc:** Marie Barnard <mbarnard@olemiss.edu>; John P Bentley <phjpb@olemiss.edu>
**Subject:** Follow-Up on Comprehensive Examination Safeguards Request

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Tue, Apr 29, 2025 at 3:52 PM

Sounds good. Thank you very much, Dr. Yang!

Best regards,
Alfred
[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Mon, May 5, 2025 at 8:59 AM

Good morning, Alfred,

Our department faculty met and determined that you will retake your Comprehensive Examination following our department's established procedures. You will receive your exam questions before noon on June 9 and will have one week to complete them.

One clarification - you will be given a new set of questions for this administration of the exam.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Tue, May 6, 2025 at 4:11 PM

Hi Dr. Yang,

Thank you very much for your response and for confirming that a new set of questions will be provided for my upcoming comprehensive examination. However, I remain unclear about how the department's decision addresses the specific concerns I raised in my letter—particularly regarding the procedural safeguards that were not adequately applied during my previous attempt.

In my letter, I provided detailed reflections—summarized in the tables on pages 9 and 10—describing the procedures that I understand were followed during my previous comprehensive examination and that contributed directly to the outcome. Based on your email, it appears that these same procedures will be followed again. If that is the case, I am deeply concerned that the same issues that undermined my previous attempt remain unaddressed.

I am not sure how I can be expected to retake an exam I have already failed—with the same procedural framework that was applied previously and that, in my view, directly contributed to the outcome—with full confidence that the result will be any different. If the procedures used in the earlier attempt were entirely sound, then their repetition might be justified. However, if those procedures contained weaknesses—as I have carefully outlined—then proceeding without adjustment risks repeating the same breakdowns. My intent is not to revisit the past, but to move forward constructively. For that to happen, it is critical to understand what went wrong, learn from it, and implement the appropriate safeguards to prevent recurrence.

In an effort to understand and address the factors that may have contributed to the outcome of my previous exam, I met with you and several faculty members to explore what had gone wrong. A consistent theme that emerged from those conversations was that interpretation played a significant role. I also asked what I could do differently to help prevent a recurrence. You advised me to revisit NIH-style Requests for Proposals (RFPs) as a way to better align with expectations. I followed that recommendation immediately and reviewed the NIH sample RFPs distributed during the Spring 2021 departmental seminar. However, this review only reinforced my original interpretation of the comprehensive exam prompt. In my letter, I carefully outlined the discordance between the phrasing of the NIH RFP and my exam question and demonstrated how, when viewed side by side, the prompt I was given was ambiguous. These concerns—particularly the ambiguity and its implications—were not acknowledged or addressed in your response.

Additionally, Drs. Barnard and Rosenthal advised that if uncertainty arises during the next exam, I should seek clarification. While I understand this advice, clarification is typically only pursued when uncertainty is perceived. Furthermore, upon my recent review of the NIH RFP—particularly when compared side by side

with the prompt I received—I remain confident that my interpretation was both appropriate and consistent with the language of the prompt. As highlighted in my letter, the phrasing of the comprehensive exam prompt was markedly different from that of the NIH RFP, which explicitly instructed the respondent to design an intervention. Given this, I am left genuinely uncertain as to what I could do differently from my end that would objectively lead to a different outcome. What actionable, concrete steps can be taken to ensure that these issues do not recur?

In further efforts to ensure that the issues from my previous exam are not repeated, I asked Dr. Barnard during our remediation meeting whether any guardrails were currently in place to prevent a similar outcome on the upcoming exam. Her response was that there are none. In light of that response—along with my own reflections and additional conversations with faculty—I compiled and presented the relevant facts as objectively as possible in my letter, with the aim of supporting informed evaluation of what went wrong and encouraging the implementation of appropriate procedural safeguards. I want to re-emphasize that I am not seeking leniency, favoritism, or exemption from academic standards, but a process that corrects the procedural shortcomings that contributed to the previous outcome, so they are not repeated. If I am to fail again, it should be due to a genuine deficiency in my ability—not due to departures from established safeguards that were intended to prevent such outcomes.

Therefore, I respectfully seek clarification on whether the following requests will be granted for my upcoming comprehensive examination:

1. **That the exam questions—particularly those involving a request for proposals and research methods—be developed by faculty members who are meaningfully familiar with my research trajectory and interests, as clearly stated in the department's policies.**

This request directly reflects not only the written policy but also longstanding departmental precedent. As acknowledged by faculty members—and supported by existing departmental precedents—meaningful familiarity is typically established through direct academic engagement, such as serving on a student's thesis or dissertation committee, collaborating on research projects, or providing mentorship through research assistantships, poster presentations, or podium presentations rather than through general classroom instruction alone. Such meaningful familiarity ensures that exam prompts are aligned with the student's academic background or, if a shift is expected, that a clear cue is provided. This safeguard was not followed during my previous examination attempt—contributing significantly to the misalignment and outcome.

Granting this request would not only align the process with stated policy and precedent, but it would also provide me with renewed confidence and psychological assurance. Knowing that the risk of another preventable misunderstanding has been meaningfully addressed would greatly enhance my mental readiness and reduce the likelihood of a recurrence of the prior outcome.

## 2. That the oral examination either includes a neutral, external observer or be conducted in an open format consistent with departmental practices for thesis and dissertation defenses.

As outlined in my letter, there were notable discrepancies between what I conveyed during the oral examination and how those statements were later characterized by faculty. For instance, during a remediation meeting, Dr. Barnard implied that I had intentionally refused to address the exam prompt because it was intervention-based. However, I clearly explained my reasoning during the oral examination: **I did not interpret the prompt as calling for an intervention.** This misrepresentation was later corrected after I raised this concern.

However, this same assumption—that I had knowingly disregarded an intervention-focused question—has surfaced in multiple conversations with faculty members and, notably, in the response to my appeal which I received from the Dean of the Graduate School. In that response, the dean stated that "there was insufficient evidence to suggest the exam question fell outside the bounds of expected knowledge for program graduates". While this may have been meant as a general statement, it appeared to reflect a belief that I had understood the question as intervention-focused and simply failed to demonstrate the required competency. However, this perception is inconsistent not only with the explanation I provided during the oral examination, but also with the fact that when I was explicitly asked during that session to design an intervention to assess my competence in that area, I did so without difficulty—and at no point during or after the exam was my ability to design an intervention questioned or challenged.

The fact that I have repeatedly needed to clarify this core issue is precisely why I believe that conducting the oral examination in an open setting—or with the presence of a neutral observer—would help prevent miscommunication, reinforce fairness, and improve my confidence going into the exam. I understand from our previous conversation that the use of recycled questions may complicate this request. If necessary, I would be more than willing to submit a formal accommodation request through the appropriate channels to ensure that I can approach the examination in the best possible psychological state. This added transparency

would help ease ongoing concerns about the potential misrepresentation of my responses and support both my confidence and psychological well-being during the exam process.

Thank you once again for your time and thoughtful consideration.

Warm regards,

Alfred

[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>   Wed, May 7, 2025 at 8:44 AM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Hi Alfred,

Thank you for your email. You will retake your Comprehensive Examination starting on June 9 in accordance with our department's established procedures.

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>   Wed, May 7, 2025 at 1:15 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

5/9/25, 10:38 AM  University of Mississippi Mail - Follow-Up on Comprehensive Examination Safeguards Request

Dear Dr. Yang,

Thank you very much for your response. However, I remain concerned that the detailed issues outlined in my original letter and subsequent follow-up email were neither acknowledged nor addressed.

While I understand that acknowledging these concerns may raise difficult questions about the prior exam, I want to emphasize clearly that my intention is not to revisit past decisions. I have moved forward, and my primary focus now is ensuring that the procedural issues which contributed to the earlier outcome are adequately addressed so they do not recur.

I sincerely appreciate the extended time you, Dr. Holmes, and Dr. Bentley devoted to my remediation meeting. The depth and length of those conversations reflect a genuine investment in my success, and I have no doubt that each of you wants me to succeed.

That said, as much as I would like to trust that the outcome of the upcoming exam will be based solely on my abilities, I cannot overlook the need to proactively address the procedural gaps that affected my previous attempt. Specifically, I remain concerned that—just as I was failed in the previous exam without any identified deficiency in the abilities or competencies outlined in the department's policies—a similar outcome could occur again despite my best efforts.

Given these ongoing concerns, **I respectfully request postponing my comprehensive examination until the next available administration date.** This postponement will provide the necessary time to engage all relevant parties and work constructively toward addressing these concerns thoroughly.

Thank you again for your understanding, continued support, and thoughtful consideration.

Warm regards,
Alfred
[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>  Fri, May 9, 2025 at 9:33 AM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Hi Alfred,

Thank you. Yes, although I can grant your request to postpone your comprehensive exam to September 2025, which is the next available time for comps in our department, I wanted to remind you that our Policy and Procedures guide states that "Doctoral students may receive support as a graduate assistant for *up to five years* (or three years post M.S.). Reappointment is contingent upon availability of funds, satisfactory academic progression by the student, satisfactory involvement and performance in research and teaching activities, program needs, and recommendation by the Department Faculty."

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>  Fri, May 9, 2025 at 9:54 AM
To: Eriakha Ehiremen Bennard <eriakhabernard@gmail.com>

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>  Fri, May 9, 2025 at 10:30 AM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>, eorc@olemiss.edu, sds@olemiss.edu, "Noel E. Wilkin" <nwilkin@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, Victoria Hughes <vhughes@olemiss.edu>

Dear Dr. Yang,

Thank you for your response and for granting the postponement of my comprehensive examination to September 2025. I sincerely appreciate your flexibility and continued engagement.

I acknowledge the department's policy regarding graduate assistantship support and remain fully committed to maintaining satisfactory academic progress and fulfilling all responsibilities associated with my role.

That said, as much as I would like to trust that the outcome of the upcoming exam will be based solely on my abilities, I cannot overlook the need to proactively address the procedural gaps that affected my previous attempt. Specifically, I remain concerned that—just as I was failed in the prior exam without any identified deficiency in the abilities or competencies outlined in departmental policy—a similar outcome could occur again despite my best efforts.

To that end, I am currently exploring all appropriate institutional channels—including the Office of Equal Opportunity and Regulatory Compliance and Student Disability Services—to ensure that my concerns are formally reviewed and addressed. Given the potential implications for my academic funding and standing, which you have noted, I also intend to seek independent legal counsel to help guide me through this process. Please know that this step is not intended to create conflict, but rather to safeguard my academic rights and well-being in light of the high stakes involved.

I've copied relevant university offices on this message to ensure transparency and to keep all appropriate parties informed.

Thank you again for your time and consideration.

Warm regards,
Alfred
[Quoted text hidden]