**EXHIBIT L — Rebuttal Letter in Response to False Accusatory Memorandum**

**TO:** Noel Wilkin, Provost & Executive Vice Chancellor for Academic Affairs

**CC:** Danielle Ambrose, Registrar
Annette S. Kluck, Dean of the Graduate School
Yi Yang, Chair
Marie Barnard, Graduate Program Coordinator
Erin R. Holmes
Meagen Rosenthal

**FROM:** Omokhodion (Alfred) Eriakha (Student Number 10859637)

**DATE:** July 7, 2025

**SUBJECT:** Formal Rebuttal to June 30, 2025, Memorandum Alleging Disruption and Recommending Academic Probation

**Dear Dr. Wilkin,**

I hope this letter finds you well. I am writing in response to the June 30, 2025, memorandum issued by the Department of Pharmacy Administration recommending that I be placed on academic probation for alleged **"disruption"** during a thesis presentation held on June 25, 2025. Regrettably, this memorandum continues a troubling pattern of departmental actions that have significantly disrupted my academic progress, compromised my well-being, and now threaten to jeopardize my academic and professional reputation—with potential consequences that may extend well beyond graduate school.

The timing of the memorandum, its vague and unsubstantiated language, and the absence of specific factual allegations raise serious concerns that this action is retaliatory in nature. It appears to be a response to my repeated and good-faith efforts to assert procedural rights, report policy violations, and engage in protected academic expression. Rather than addressing the serious and well-documented procedural failures I have identified, the department appears to be relying on

punitive measures to compel compliance, suppress dissent, and divert scrutiny from its own lack of accountability.

To contextualize this most recent and coordinated series of punitive actions—all issued on June 30, 2025—I outline below several core areas of concern, many of which I have previously documented.

**1. Breach of Contract**

As a public institution, the University of Mississippi is bound by the policies it publishes—policies that courts have recognized as forming part of an implied contract between the university and its students. One such policy, clearly stated in the Department of Pharmacy Administration's *Comprehensive Exam Policies and Procedures*, reads:

*"The exam will be **developed** by a committee of three faculty members **familiar** with the student's research interests."*

Despite this explicit requirement, the following occurred:

- The Dean of the Graduate School confirmed that during my first comprehensive examination attempt, the department employed a process in which faculty members familiar with my research interests **served in a consultative or review capacity**—rather than as actual **developers of the examination questions**—directly contravening departmental policy.

- The Dean further acknowledged that this same deviation would apply to my second attempt, even after I formally raised concerns, thereby demonstrating a knowing and willful disregard for established university policy.

- I repeatedly documented how this policy deviation compromised the fairness and academic integrity of my first comprehensive examination, which ultimately led to a sequence of events that materially influenced the outcome.
- Reinforcing this disregard of established university policy, the Department Chair explicitly questioned the necessity of this policy safeguard, stating it could be ignored on the basis that ***"every faculty member is equally familiar with every student's research interests."*** This statement, coupled with the pattern of conduct described above, not only dismisses the intent and protective function of the policy but also signals a broader pattern of disregard for established institutional policy.

This deliberate departure from clearly articulated guidelines constitutes a potential breach of the university's implied contractual obligations to its students. More broadly, it reflects a troubling erosion of the department's responsibility to uphold transparency, accountability, and fairness in its academic procedures. When policies governing high-stakes evaluations, such as comprehensive examinations, are willfully disregarded, students are denied due process and deprived of the legitimate expectation of a just and equitable educational environment.

## 2. Denial of Requests for Deficient Competencies

Following the ruling on the appeal of my first comprehensive examination, I began preparing—both mentally and academically—for my second attempt. To do so constructively, it was essential to understand the specific competencies I was judged to have failed to demonstrate. Accordingly, I promptly requested written documentation identifying those specific competencies or abilities for which I was found to be deficient.

This request was fully justified by the department's own policies and procedures, which state:

*"The purpose of the Comprehensive Examination is to allow the student to **demonstrate the competencies** necessary to conduct independent research at the doctoral level."*.

These competencies are outlined on pages 15 and 16 of the departmental policy handbook. By definition, the comprehensive examination must serve as a valid measure of those defined competencies. Therefore, when a student fails the comprehensive examination, it logically follows that there should be documentation identifying the specific competencies judged as deficient.

Despite multiple written and verbal requests, the department has failed to provide this documentation. Compounding the issue, I was directed to participate in remediation meetings without ever being informed of the specific deficiencies these meetings were intended to address. As of today, July 7, 2025, I still have not received any written documentation outlining which competencies I was deemed deficient in—despite the examination's high stakes, the academic delays that followed, and the negative impact on my mental health. The department's continued refusal to provide this information raises several serious concerns:

- **Academic Transparency and Fairness**: Denying access to information regarding competencies allegedly judged deficient undermines foundational principles of transparency, accountability, and student support.

- **FERPA Compliance**: The Family Educational Rights and Privacy Act (FERPA) entitles me to inspect and review records related to my academic performance, including the request and evaluation of specific competencies or abilities I was judged to have failed to demonstrate during my comprehensive examination.

- **Substantive Due Process**: The failure of a high-stakes examination, particularly one tied to degree progress, necessitates policy-based justification in the form of identified competencies

deemed to be deficient, for which the comprehensive examination is designed to measure. Without such documentation, the legitimacy of the decision may be called into question.

This lack of transparency not only violates basic principles of academic fairness but also directly contravenes the department's own policy, which frames the comprehensive examination as a measure of clearly articulated, demonstrable competencies.

### 3. First Denial of Disability Accommodations

Concurrent with my efforts to obtain documentation of deficient competencies, I also formally requested reasonable accommodations for a documented mental health condition. Specifically, I asked for flexibility in the format of remediation meetings—such as asynchronous or virtual participation—to help mitigate mental health strain. These requests were denied without any engagement in the interactive process mandated by federal disability law. At no point was I referred to the University's Student Disability Services (SDS) for formal evaluation, nor were any alternative accommodations discussed or proposed.

Recognizing the need for formal support, I independently initiated the accommodation process through SDS. However, even after disclosing my mental health concerns to a departmental faculty member, I was encouraged to pause the SDS request and instead proceed with synchronous remediation meetings—despite the risk of exacerbating my condition. In good faith and to avoid further escalation, I complied.

These remediation sessions proceeded without any identification of the specific competencies I was allegedly deficient in, nor any clear framework for how the sessions would address those unknown deficiencies. Predictably, the synchronous sessions had a detrimental effect on my mental health, exacerbating the very condition for which I had initially sought accommodation.

The department's **failure to engage in a legally mandated, good-faith interactive process**; its **disregard for established accommodation protocols**, and its **continued lack of transparency** raise serious concerns under both university policy and federal disability law—including the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

**4. Second Denial of Disability Accommodations**

In good faith, I worked to move past the outcome of my first comprehensive examination and began preparing for my second attempt. As part of these preparations, I submitted a renewed request for accommodation related to my documented mental health condition. This request proposed allowing the presence of an additional observer during the oral examination or holding the exam in a publicly accessible setting (consistent with standard practices for thesis and dissertation defenses).

Unfortunately, this request was once again ignored by the department. No interactive discussion occurred. I received no referral to Student Disability Services (SDS), and no alternatives were offered or explored.

The department's failure to engage in the legally required interactive process raises serious concerns under both the **Americans with Disabilities Act (ADA)** and **Section 504 of the Rehabilitation Act**.

This ongoing pattern of non-responsiveness and procedural evasion has had a direct and adverse impact on both my academic progression and my personal well-being. It also stands in stark contrast to the University of Mississippi's stated values—**fairness, transparency, respect, and integrity**—values that I have consistently upheld and have respectfully asked the department to honor in return.

## 5. Retaliation to Avoid Accountability

On April 27, 2025, I formally raised and documented many of the above concerns in a letter to the Department Chair. My intent was constructive—to advocate for procedural safeguards and transparency so that future processes might be fairer, more compliant, and more respectful of student rights.

However, instead of responding to these clearly documented concerns in good faith, the department's subsequent actions have grown increasingly punitive. These actions appear retaliatory in nature and seem intended to discourage further inquiry, suppress dissent, and evade accountability.

Recent and coordinated examples include the following:

- **Abrupt Termination of Assistantship Funding:**

My graduate assistantship was abruptly **terminated without explanation** and without any prior documented concerns regarding my performance.

- **Unfounded Accusation of Disruption:**

I received a memorandum accusing me of **"disruption"** during a thesis presentation, yet it provided no factual description of my conduct and cited no supporting evidence.

- **Recommendation of Academic Probation:**

The department formally recommended **academic probation** based solely on the vague and unsubstantiated allegation above.

- **Escalating Coercive Pressure:**

Both my brother and I are being pressured—under threat of academic sanction—to submit a developmental document ("Abilities Transcript") despite unresolved procedural barriers that directly impede our ability to complete the process in good faith.

Taken together, these actions appear not only punitive but also coordinated—calculated to isolate and discredit me while deterring protected expression and procedural advocacy. The pattern of escalation strongly suggests an effort to preempt my second comprehensive examination attempt, which would necessarily involve revisiting—and potentially correcting—prior procedural violations.

This deeply concerning trend raises serious questions about the misuse of institutional authority to silence student voices, suppress protected expression and lawful advocacy, evade responsibility, and undermine the rights and dignity of students who engage in good-faith efforts to uphold academic integrity and policy compliance.

## 6. Mischaracterizations and Potential Character Defamation

The vague accusation of "disruption" fits into a broader and troubling pattern of mischaracterizations that both my brother and I have experienced during academic engagements within the department. These concerns were previously documented in my appeal to the Dean of the Graduate School on October 2, 2024. For context, I include the following excerpt from that appeal:

*"...We have been referred to by terms such as **'bullies'** and **'dominants'** simply because we actively contribute, **ask questions, and seek clarification during presentations**...it was even suggested by a faculty member that we **limit the number of questions we ask because other faculty members feel that we are not allowing other students to shine.***"

While I did not pursue formal action at the time, these earlier mischaracterizations are now being effectively formalized through this current allegation—an allegation that carries serious reputational, academic, and professional consequences.

In a professional graduate program, an allegation of "disruption," particularly during a peer's thesis defense, can cast aspersions on one's academic integrity, collegiality, and professional fitness. When such an allegation is vague, unsubstantiated, and issued without due process—as is the case here—it risks inflicting lasting damage on one's reputation, graduate record, future academic opportunities, and employability.

The potential defamatory impact is compounded when such an unsupported allegation is recorded in departmental files or disseminated among faculty or third parties without **due process**. Should the department provide a description of the alleged conduct and allow for a formal appeal, and that appeal confirms the allegation to be unfounded, then it might suggest a reckless disregard for the truth.

Under such circumstances, the allegation could reasonably meet the threshold for **retaliatory defamation of character,** aimed at discrediting me in response to my protected procedural advocacy and documented complaints. This raises not only ethical concerns but also potential legal implications under defamation law, particularly if reputational harm results from demonstrably unsubstantiated statements issued with institutional authority.

## 7. Denial of Due Process and Fair Procedure

As a graduate student at a public institution, I am entitled to both procedural and substantive due process protections under the Fifth and Fourteenth Amendments of the United States Constitution.

These protections exist to safeguard against arbitrary, discriminatory, or retaliatory actions by those in positions of institutional authority.

The U.S. Supreme Court's ruling in *Goss v. Lopez*, 419 U.S. 565 (1975), along with guidance from the U.S. Department of Education's Office for Civil Rights (OCR), affirms that students facing disciplinary sanctions are entitled to the following minimum standards of procedural fairness:

- Timely notice of the charges, **with sufficient specificity** to allow a meaningful response.
- **Disclosure of the evidence** supporting those charges; and
- An opportunity to respond, **informed by the particular policy or rule** alleged to have been violated.

These same principles are echoed in the University of Mississippi's academic discipline policy, which states:

*"Initiating an academic discipline case requires the person initiating the case to **provide a written report of the alleged incident, including information regarding the communications with the student**... indicate the recommended sanction... **indicate whether the student accepted the sanction.**"* (M Book, p. 12)

In this case, aside from the indication of a recommended sanction (academic probation), the June 30 memorandum fails to satisfy any of the fundamental due process requirements listed above. Specifically:

- I was provided with **no description of the specific conduct** alleged to constitute "disruption",
- I was **not cited for violating any specific** departmental or university **policy**,
- I received **no supporting evidence or factual basis** for the allegation, and

- I received **no prior communication, meeting, or opportunity to respond** before the issuance of the memorandum or the disciplinary recommendation was made.

Rather than follow the university's own procedures or those required by constitutional due process, the department appears to have invoked an overbroad and undefined standard to justify a punitive and unsubstantiated allegation. The absence of these essential procedural elements renders the memorandum not only unfair but arguably constitutionally infirm under established federal and institutional regulations.

As a result, I am effectively denied the opportunity to mount a meaningful appeal. Participating in a process that lacks clarity, transparency, and procedural legitimacy would risk validating an unjust and flawed action that fails to meet even the most basic standards of fairness.

## 8. Position and Request for Remedy

Given the due procedural protections afforded under both federal law and university policy, I am currently unable to meaningfully participate in or respond to the appeal process. Unless and until the minimum standards of due process are satisfied, including:

- A **clear and specific description of the conduct** alleged to constitute "disruption",
- **Citation** of the **exact departmental or university policy** I am alleged to have **violated**; and
- Disclosure of the **specific evidence** supporting this allegation,

...I must respectfully decline to engage in a process that—in its current form—lacks the transparency, fairness, and procedural integrity necessary to ensure a just and informed outcome.

To participate under these conditions would risk validating a procedurally deficient action that falls short of both constitutional protections and the University's own stated commitment to fairness

and accountability. I therefore reserve all rights to seek appropriate remedies through legal, regulatory, or administrative channels as necessary.

## 9. Conclusion

In conclusion, I must respectfully and unequivocally dispute both the factual accuracy and the procedural legitimacy of the June 30 memorandum alleging "disruption" and recommending academic probation. Contrary to the characterization in that memorandum, I have consistently conducted myself in accordance with the principles of professionalism, academic integrity, and good faith engagement.

As a voluntary member of the University of Mississippi, I have made every effort to uphold the values articulated in our University Creed:

- I believe in **respect for the dignity of each person** —a principle that demands fair treatment, transparent communication, and acknowledgment of individual rights and needs.
- I believe in **fairness and civility,** which should guide all departmental actions, especially those carrying serious academic and reputational consequences.
- I believe in **personal and professional integrity,** including the obligation to speak out when institutional policies are disregarded.
- I believe in **academic honesty and freedom,** both of which are diminished when protected expression is met with punitive measures.
- I believe in **good stewardship of our resources,** including adherence to policies that ensure transparency, accountability, and student success.

I remain committed to these values and respectfully call on the Department of Pharmacy Administration to do the same. I urge the department to clearly articulate the factual basis for the

allegation against me and to adhere to a fair, transparent, and policy-consistent process moving forward. Doing so would not only allow me to participate meaningfully in the appeal process but would also reaffirm the University's stated commitment to justice, openness, and mutual respect.

Thank you for your time and consideration. I look forward to receiving the information necessary to ensure a fair and informed appeal.

Sincerely,

**Alfred Eriakha**

Graduate Student, Pharmacy Administration

The University of Mississippi