EXHIBIT 25 — Timeline showing Selective and Retroactive
Rewording of Policy Safeguard

## 2024-2025 POLICIES AND PROCEDURES GUIDE

### GRADUATE PROGRAM OF THE
### DEPARTMENT OF PHARMACY ADMINISTRATION
### THE UNIVERSITY OF MISSISSIPPI

*Last Major Revision: June 2024*
*Minor revisions in August 2018, August 2019, August 2020, August 2021, December 2021, June 2024,*
*September 2024*

(Social and Administrative Pharmacy I), which includes an introduction to the U.S. health care system.

PHAD 698 Non-Thesis Research will consist of a submission ready manuscript for a targeted journal. Project concept and target journal must be approved in advance by the faculty advisor. Final results will be presented in a departmental level seminar. At least two additional faculty members will serve as reviewers.

It is important to note that if an applicant has a Master's degree, he or she may petition in writing to the Department Chair for substitution or waiver of certain courses upon entry into the program. The Faculty will evaluate the request, following the Graduate School policies, and determine which courses, if any, can be waived or substituted. If an applicant has completed a thesis, he or she is asked to provide a copy of the thesis for review to determine whether waiver of PHAD 698 and other courses is acceptable. Substitution or waiver of courses will then be documented on the student's progression form.

### The Comprehensive Examination
The purpose of the Comprehensive Examination is to allow the student to demonstrate the competencies necessary to conduct independent research at the doctoral level. **The Comprehensive Examination precedes the formal dissertation proposal and follows the completion of required course work.**

The comprehensive examination is given three times annually: January, June, and September (the exam will start the second Monday of each of these months). The student is responsible for coordinating with the GPC/Department Chair to schedule the examination at least two months in advance. **The GPC/Department Chair will complete the Authorization to Sit for a Comprehensive Exam Form (Form GS5) and submit it to the Graduate School.** This form can be found online on the Graduate School website.

The examination will involve the development of a written exam with knowledge and application questions followed by an oral examination. The student will have one week to complete the written exam independently. The exam will be developed by a committee of three faculty members familiar with the student's research interests. The faculty committee will be appointed by the GPC/Department chair. A list of competencies to be demonstrated are listed below.

*Competencies to be Demonstrated*
1.  Familiarity with and an understanding of major theoretical issues in the major field and in the minor track.

2.  Ability to evaluate critically research literature, identifying strengths and weaknesses in research design, statistical analysis, and conclusions.

3.  Understanding of the process for formulating and testing of research hypotheses and the design consideration necessary for use in this process.

    a.  Understanding the importance of and the distinction between theoretical models, conceptual models, concepts and variables.

    b.  Understanding of the benefits and disadvantages of the major recognized techniques of data gathering, such as personal interview, mail survey, telephone survey, observation, use of secondary data, etc.

    c.  Understanding of levels of measurement and the methodological and statistical compromises required by their respective choices.

**Yi Yang, MD, PhD**

Chair and Professor

Department of Pharmacy Administration

The University of Mississippi

April 26, 2025


## Request Regarding Procedural Safeguards for Comprehensive Examination Retake

Dear Dr. Yang,

I hope this letter finds you well.

I am writing to formally and respectfully request specific procedural considerations and safeguards for my upcoming comprehensive examination retake scheduled for June 2025. As this will be my second and final opportunity to complete the examination, it is critical that the process fully aligns with departmental policies, upholds the principles of fairness and validity, and provide appropriate support for both my mental health and academic well-being.

Although several months have passed since my initial attempt, this period has given me valuable time to reflect carefully on the outcome, identify potential contributing factors, and thoughtfully consider steps that could help prevent similar issues—both for myself and for future students. I want to be clear that my purpose in raising these concerns is not to contest or dispute the previous examination result. Rather, it is to highlight where misunderstandings or procedural gaps may have occurred, so that appropriate safeguards and improvements can be implemented to strengthen the process and promote a fairer, more transparent examination experience moving forward.

1

## 2. PROCEDUARAL GAP IN EXAM DEVELOPMENT

A key safeguard against the types of interpretive challenges described above is clearly embedded within the department's policy, which states: ***"The exam will be developed by a committee of three faculty members familiar with the student's research interests."*** This requirement is designed to ensure that comprehensive examination questions are crafted by faculty members who possess substantive, working familiarity with the student's methodological training, research focus, and scholarly development—thereby promoting fair, valid, and contextually appropriate evaluation.

Meaningful familiarity is typically established through deeper academic engagement—such as serving on a student's thesis or dissertation committee, collaborating directly on research projects, or providing mentorship through research assistantships—rather than through general classroom instruction alone. Faculty with this level of substantive engagement are far better positioned to craft examination prompts that either align with the students' methodological training or, when necessary, explicitly signal any intended methodological departures.

However, during recent conversations with faculty members, it was suggested that all faculty members could be considered equally familiar with all students. Applying the concept of "familiarity" in such a universal manner effectively neutralizes the protective purpose of the departmental policy. If every faculty member is presumed equally familiar with every student, the policy ceases to function as a meaningful safeguard and instead becomes a procedural formality.

In my case, had the safeguard been properly applied—ensuring that exam questions were developed by faculty members with substantive, working familiarity with my research trajectory—the following issues could likely have been avoided:

- the ambiguity in the exam prompt;

7

## Table 1: Examination Development Process (Faculty side)

| Step | Ideal Scenario | Key Safeguard to Ensure Ideal Scenario | My Exam |
|---|---|---|---|
| **Exam Writers Selection** | Faculty members with substantive, working familiarity with the student's research interests and methodological background are selected. | **Policy:** *"Exam will be developed by three faculty members familiar with the student's research interests."* Intended to ensure alignment and reduce risk of interpretive misalignment. | Familiarity was assumed based on general departmental association, rather than demonstrated through thesis or dissertation committee membership, collaborative research projects, or research assistantship supervision. |
| **Writes Questions** | Exam writers develop questions that are clear, unambiguous, aligned with the student's methodological training, or explicitly signal when a methodological departure is expected. | Clear framing minimizes risk of interpretive discrepancies; explicit cues are provided if a departure from the student's established research framework is intended. | Questions were ambiguously framed, allowing multiple reasonable interpretations; no cue was provided to indicate a methodological departure was expected. |
| **Preliminary Review** | Draft questions are reviewed for clarity by both faculty members and students at a similar stage of training to the examinee. | Combining faculty and student perspectives helps ensure questions are interpreted as intended by the target examinee group. | No preliminary review from both perspectives; potential ambiguity from a student's viewpoint remained unaddressed. |
| **Final Faculty Review** | Questions are finalized only after verifying clarity, methodological alignment, and explicit signaling if a methodological departure is expected. | Final check ensures that prompts are free of ambiguity, align with the student's training unless otherwise cued, and fairly signal expectations. | No correction of ambiguity or signaling of methodological departure; issues persisted into the final version of the exam |
| **Question Administration** | Students receive questions that are either aligned with their training or contain clear, explicit cues if a methodological shift is expected. | Final exam reflects careful adherence to safeguards established during question development and review. | Gaps in examiner familiarity, question clarity, and departure signaling were carried forward into the exam without correction. |

9

Case: 3:25-cv-00226-NBB-JMV Doc #: 1-4 Filed: 09/08/25 6 of 33 PageID #: 172


THE UNIVERSITY OF
**MISSISSIPPI**

Omokhodion Eriakha <oeriakha@go.olemiss.edu>

---

## Follow-Up on Comprehensive Examination Safeguards Request
10 messages

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John Bentley <phjpb@olemiss.edu>

Mon, Apr 28, 2025 at 8:44 AM

Hi Dr. Yang,

Good morning! I hope you are doing well. I wanted to follow up on our meeting from Friday to formally request procedural safeguards regarding my upcoming comprehensive examination.

Please find attached a letter that outlines and elaborates on this request. Thank you very much for your time and consideration.

Best regards,
Alfred

--

Alfred Eriakha
PhD Student
Department of Pharmacy Administration
The University of Mississippi
oeriakha@go.olemiss.edu
+1-662-380-0924

📄 **Request_For_Safeguards_04_27_25.pdf**
240K

---

**Yi Yang** <yiyang@olemiss.edu>
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Tue, Apr 29, 2025 at 1:40 PM

Hi Alfred,

Thank you for the message. Our department faculty will discuss this, and I will inform you of our decision.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

---

would help ease ongoing concerns about the potential misrepresentation of my responses and support both

my confidence and psychological well-being during the exam process.

Thank you once again for your time and thoughtful consideration.

Warm regards,

Alfred

[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>                                          Wed, May 7, 2025 at 8:44 AM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Hi Alfred,

Thank you for your email. You will retake your Comprehensive Examination starting on June 9 in accordance with our department's established procedures.

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                          Wed, May 7, 2025 at 1:15 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>



THE UNIVERSITY OF
**MISSISSIPPI**

Omokhodion Eriakha <oeriakha@go.olemiss.edu>

---

# Request for Support Regarding Comprehensive Examination Concerns
4 messages

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>
To: "Noel E. Wilkin" <nwilkin@olemiss.edu>
Cc: Victoria Hughes <vhughes@olemiss.edu>

Fri, May 9, 2025 at 11:14 AM

Dear Dr. Wilkin,

Good morning. I hope this email finds you well.

I am writing to respectfully request your guidance and support regarding unresolved concerns related to the administration and outcome of my comprehensive examination. I have communicated these concerns formally to my department and have attached both the letter I submitted and the follow-up correspondence with my department's chair for your review.

While I remain committed to my academic success and have moved forward in good faith, I continue to have serious concerns about specific procedural issues that affected my previous attempt and may remain unaddressed in the upcoming retake. These include matters of policy implementation, examiner alignment, question clarity, and overall procedural fairness.

Given the significant implications this exam has for my academic progress and graduate assistantship funding, I am seeking support from appropriate university offices to ensure that the examination process going forward is conducted in a fair, transparent, and policy-aligned manner.

I would be sincerely grateful for any insight or guidance you may be able to provide, or for direction to the appropriate avenues through which this matter can be further addressed.

Thank you very much for your time and thoughtful consideration.

Warm regards,
Alfred

--
**Alfred Eriakha**
PhD Student
Department of Pharmacy Administration
The University of Mississippi
oeriakha@go.olemiss.edu
+1-662-380-0924

---

2 attachments

📄 **Request_For_Safeguards_04_27_25.pdf**
240K

📄 **Email_Thread_Chair.pdf**
353K

---

**Noel E Wilkin** <nwilkin@olemiss.edu>
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Victoria Hughes <vhughes@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, Donna Sue West Strum <dswest@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Mon, May 12, 2025 at 9:37 PM

Hi Alfred,

Thank you for your email. Please know that the faculty within your academic program have the authority and expertise to draft a comprehensive exam, passage of which can be required for progression.

The attached UM policy on comprehensive examinations states, "The determination of fitness for a particular degree rests solely upon the judgment of the graduate faculty."

The only individuals who can implement changes to the examination format and question would be the faculty members charged by the department to draft the examination. As a result, I encourage you to submit your requests to the appropriate faculty members and department chair.

That same comprehensive examination policy outlines the procedure required to appeal failure on a comprehensive examination, and the allowable grounds for appeal.

If dismissal from a program is recommended as a result of comprehensive examination failure, the department would be expected to follow the procedure outlined in the Policy on the Dismissal or Change in Status of Graduate Students, which is also attached.

Note that both of these policies outline the role of various individuals and offices. As a result, I would not have a role in the drafting of a comprehensive examination or the examination format.

I hope that this is helpful. Should you choose to retake the examination, as offered by the department in alignment with their policy, it is my hope that you do well.

Sincerely,

Noel

**Noel E. Wilkin, Ph.D.**

Provost & Executive Vice Chancellor for Academic Affairs, Professor, and Research Professor

The University of Mississippi

Office of the Provost

137 Lyceum Circle

P.O. Box 1848

University, MS 38677-1848

U.S.A.

+1-662-915-5317

nwilkin@olemiss.edu | www.olemiss.edu

[Quoted text hidden]

## 2 attachments

 **UM Graduate Student Policy.pdf**
323K

 **UM Comprehensive Examination Appeal.pdf**
40K

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>          Tue, May 13, 2025 at 7:18 AM
To: Noel E Wilkin <nwilkin@olemiss.edu>
Cc: Victoria Hughes <vhughes@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, Donna Sue West Strum
<dswest@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Hi Dr. Wilkin,

Thank you very much for your response and for clarifying the university's policy regarding comprehensive examinations.

To clarify, my concern is not with the faculty's authority to design or evaluate the comprehensive examination itself.

Rather, my concerns center on what I believe are significant departures from established departmental policies, denial of disability-related accommodations, and recent actions by my academic department which I perceive as coercive and retaliatory.

Specifically:

- I requested asynchronous remediation meetings due to documented mental health conditions; my department chair denied this without policy justification (I have attached the relevant email documentation below).
- I had initiated a formal accommodation request through Student Disability Services and was in the process of submitting full medical documentation.
- On faculty urging, I halted the accommodation request and participated in synchronous meetings despite the significant psychological impact.
- I formally raised and documented concerns about the department's failure to follow its own written policies (I have attached the relevant documentation below).
- These concerns were not acknowledged or addressed.
- I am now being pressured to proceed under the same procedural conditions which contributed materially to the prior outcome.

I am currently working actively with the Office of Equal Opportunity and Regulatory Compliance and Student Disability Services to explore internal institutional solutions. Additionally, I am seeking external advice regarding my rights—not to generate conflict, but to ensure that my academic standing, funding, and well-being are appropriately protected.

I understand that you may not have direct authority over departmental decisions, but I wanted to ensure you were fully aware of the broader context, particularly as it involves potential violations of university policy and my rights as a student.

I remain fully committed to addressing these concerns constructively and collaboratively within the university. I would greatly appreciate any further guidance you might provide regarding appropriate next steps.

Thank you once again for your time and consideration.

Warm regards,
Alfred
[Quoted text hidden]

**2 attachments**

📄 **Email Thread - Department's Chair.pdf**
446K

📄 **Request_For_Safeguards_04_27_25.pdf**
240K

---

**postmaster@olemiss.onmicrosoft.com** <postmaster@olemiss.onmicrosoft.com>
To: oeriakha@go.olemiss.edu

Tue, May 13, 2025 at 7:19 AM

## Delivery has failed to these recipients or groups:

Victoria Hughes (vhughes@olemiss.edu)

The recipient's mailbox is full and can't accept messages now. Please try resending your message later, or contact the recipient directly.



THE UNIVERSITY OF
**MISSISSIPPI**

Omokhodion Eriakha <oeriakha@go.olemiss.edu>

# Request for Support and Guidance Regarding Comprehensive Examination Concerns

12 messages

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>  
To: Annette Kluck <askluck@olemiss.edu>

Fri, May 9, 2025 at 11:11 AM

Dear Dr. Kluck,

Good morning. I hope this email finds you well.

I am writing to respectfully request your guidance and support regarding unresolved concerns surrounding my comprehensive examination process. I have recently communicated these issues in detail with my department, and I've attached the formal letter and follow-up correspondence for your review.

While I am committed to academic success and have taken steps to move forward, I remain concerned about specific procedural aspects of my previous attempt that, in my view, were not adequately addressed. These concerns directly affect my ability to approach the upcoming retake with clarity and confidence.

Given the stakes involved—including potential implications for my academic standing and funding—I am seeking insight from all appropriate university offices to ensure that my retake proceeds with the transparency, fairness, and safeguards expected under university policies.

I would sincerely appreciate any guidance you can provide on possible next steps or university resources available in this matter.

Thank you very much for your time and consideration.

Warm regards,  
Alfred

--  
**Alfred Eriakha**  
PhD Student  
Department of Pharmacy Administration  
The University of Mississippi  
oeriakha@go.olemiss.edu  
+1-662-380-0924

---

**2 attachments**

📄 **Email_Thread_Chair.pdf**  
353K

📄 **Request_For_Safeguards_04_27_25.pdf**  
240K

---

**Annette Kluck** <askluck@olemiss.edu>  
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>

Mon, May 12, 2025 at 9:08 AM

Hi Alfred,

I am looking into your request. The Provost also notified me that you had emailed him and asked me to respond to you. It may take a little time for me to get back to you.

**Omokhodion Erlakha** <oerlakha@go.olemiss.edu>                                        Tue, May 27, 2025 at 2:47 PM
To: Annette Kluck <askluck@olemiss.edu>

Hi Dr. Kluck,

Thank you very much for the update. I appreciate your time.

Best regards,
Alfred
[Quoted text hidden]

---

**Annette Kluck** <askluck@olemiss.edu>                                              Mon, Jun 2, 2025 at 12:59 PM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Dear Alfred,


I have reviewed the request for safeguards during the comprehensive exam process that you sent on May 9th and correspondence with the Provost on May 12th and 13th. I consulted with relevant offices and spoke with the Chair and the Graduate Program Coordinator in Pharmacy Administration. I appreciate your investment to ensure a fair, valid, and reasonable process for the evaluation of students' mastery of their field.


You expressed an expectation for the individuals who write the questions to be familiar with your interests. The department uses a process through which those faculty have the opportunity to provide input about all comps questions and that was the case with your first attempt. It will be the case with your second attempt as well. Thus, if the faculty members who are most familiar with your interest believe that a question requires modification to align with areas of interest, those faculty members can recommend modifications as they see fit.


Beyond the review and input from faculty most familiar with your work, multiple faculty members in the department review the exam questions. Thus, the program has an existing review process to finalize the questions prior to distributing them to a student.


I encourage you to review the institutional policy related to the comprehensive exam for the doctoral degree, described in the Catalog, in addition to program policies. The link to the catalog appears at the end of this message. Please note that the institution policy states, "The purpose of this examination is to establish that the student has satisfactorily mastered the body of academic material appropriate to the degree." The faculty within the field are deemed to have the expertise to determine what falls within the body of academic material appropriate to the degree. This includes knowledge of different methodologies used within a field. Due to the purpose of the exam, it is not atypical for a student to be expected to demonstrate knowledge of the broad range of methodologies within a field even if they do not employ those methodologies themselves—this is what is meant by the body of knowledge.


The institutional policy also states, "Though academic programs have broad latitude in the design of the comprehensive examinations, the following guidelines should be followed." Those guidelines do not require the presence of an independent observer during the oral exam. Thus, the program should follow its policies which do not allow the presence of individuals other than the student completing the oral exam and the faculty conducting the examination.


You also requested for the exam questions to be piloted with other graduate students. I do not find this to be an appropriate process as it risks the integrity of the exam.


When I met with the Department Chair and Graduate Program Coordinator, they informed me that you have met with program faculty to attain feedback. I believe this strategy is the appropriate way to approach the re-examination.

Your request also raised a concern about whether the questions on the second attempt to complete the comprehensive exam will be the same as or different from the first. The Graduate Program Coordinator is the appropriate person to advise you as to whether the questions will be new or repeat previous questions you received. The Graduate Program Coordinator shall also ensure that the questions given are consistent with the information they provide.

In your email to the Provost, you raised concerns about accommodations. You noted the correct offices involved in approving such accommodations and ensuring that they are followed.

All students and employees have the right to pursue the process of attaining accommodations. For accommodations related to your role as a student (which includes the comprehensive exam process), please reach out to Student Disability Services to ensure they notify the relevant faculty of approved accommodations (if any). For those related to your role as a graduate assistant (should that be relevant), you would contact the Equal Opportunity and Regulatory Compliance Office and they would make notification to the hiring unit of any approved accommodations. The office that approves an accommodation is also the office involved in ensuring compliance with approved accommodations should concerns arise. The institution and its faculty are only obligated to follow accommodations of which they are notified through the official channels.

I wish you the best with the exam process as you move forward. If I can be of additional assistance, please feel free to contact me.

Catalog Reference:     https://catalog.olemiss.edu/graduate-school/academics/doctoral.pdf

Sincerely,

[Quoted text hidden]

📄 **Review of Request for Safeguards for Comprehensive Exam 6.2.2025.pdf**
152K

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                                    Tue, Jun 3, 2025 at 8:31 AM
To: Annette Kluck <askluck@olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Dear Dr. Kluck,

Thank you for your thoughtful response and for taking the time to review the procedural concerns I raised regarding the administration of the comprehensive examination. I remain sincerely appreciative of your careful attention and transparency throughout this process.

I would like to respectfully clarify and formally respond to several key points:

### 1. Assignment of Exam Question Development

In your response, you expressed that during my first examination attempt, the department employed a process in which faculty members familiar with my research interests served in a consultative or review capacity rather than as developers of the examination questions. You further noted that this same process will apply to the second attempt. Respectfully, this process is inconsistent with the department's stated policy, which clearly states:

*"The exam will be developed by a committee of three faculty members familiar with the student's research interests."*

Relegating familiar faculty to a post hoc review role represents a procedural deviation from this policy. As documented previously, the absence of this safeguard in my first attempt led to a sequence of events that materially influenced the outcome.

## 2. Misrepresentation of Policy and Safeguards

I must also respectfully note that, during a previous meeting, the Department Chair explicitly questioned the necessity of this policy safeguard—stating that it could be removed on the grounds that *"every faculty member is equally familiar with every student's research interests."* This position undermines the purpose of the policy, risks procedural ambiguity, and potentially nullifies the safeguard explicitly established by the department's own guidelines to ensure the relevance and appropriateness of examination content.

## 3. Second Attempt: Nature of Questions

With regard to the nature of the second examination, I appreciate your comments. The Department Chair previously confirmed in writing that the retake will involve a new set of questions. I trust that the Graduate Program Coordinator will ensure alignment and consistency between communicated expectations and administered exam content. In addition, the Department Chair has expressed a willingness to grant my request for a September retake, which would allow time for appropriate preparation, should the procedural concerns be meaningfully addressed.

## 4. Right to Accommodation

I am also grateful for your affirmation of my right to pursue formal accommodations. While this right was never explicitly acknowledged by the department during prior interactions, I had initiated the process on the basis of medical concerns but halted it upon faculty urging. With your clarification, I intend to resume this process through Student Disability Services in accordance with institutional procedures.

In conclusion, I remain committed to engaging in the comprehensive examination process in good faith and with full respect for its academic rigor. My intent throughout has been to ensure that the examination is administered in accordance with established policy and that appropriate safeguards are meaningfully upheld.

I appreciate your continued attention to these matters and your commitment to supporting procedural fairness.

Best regards,
Alfred
[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                                    Thu, Jun 19, 2025 at 9:16 AM
To: Eriakha Ehiremen Bennard <eriakhabernard@gmail.com>

[Quoted text hidden]

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                                    Wed, Jun 25, 2025 at 4:27 AM
To: Annette Kluck <askluck@olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Hi Dr. Kluck,

I hope this email finds you well. I'm writing to follow up on my June 3 email regarding unaddressed concerns about deviations from departmental policy in my upcoming comprehensive exam.

Resolution of this matter is essential for progressing in the program, including meeting with my developmental mentor and completing the Abilities Transcript recently requested by the Graduate Program Coordinator (copied here). As noted in your earlier response, the department intends to follow the same process used during my first attempt—a process that is inconsistent with the department's stated policy and one that materially affected the prior outcome.

As outlined in the department's policy on the Abilities Transcript, completion of the form requires a developmental mentoring meeting and thoughtful reflection on one's goals and academic trajectory. Several sections—particularly those addressing future goals and objectives—require a clear and informed plan for progression, which in my case includes preparation for the comprehensive examination. Until this matter is resolved, I am unable to begin preparation for the comprehensive examination or complete the form in a way that accurately reflects my academic standing or next steps.

I would sincerely appreciate your guidance on how best to proceed.

Thank you again for your time and continued support.

Best regards,
Alfred
[Quoted text hidden]

---

**Annette Kluck** <askluck@olemiss.edu>                                  Wed, Jun 25, 2025 at 10:05 AM
To: "oerlakha@go.olemiss.edu" <oerlakha@go.olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Hi Alfred,

In your email responding to my decision, I did not see any follow up questions. My conclusions stand.

I encourage you to follow the program requirements and submit the Abilities Transcript as required.

[Quoted text hidden]

# 2025-2026 POLICIES & PROCEDURES GUIDE

for the

GRADUATE PROGRAMS
of the
DEPARTMENT OF PHARMACY ADMINISTRATION
THE UNIVERSITY OF MISSISSIPPI

Last Major Revision: June 2025
Minor revisions in
August 2018, August 2019, August 2020, August 2021,
December 2021, June 2024, September 2024, June 2025

Other Academic Requirements

In addition to the course requirements, each student must participate and complete an orientation to the discipline of pharmacy administration and register for a departmental seminar (PHAD 543/544) each semester (1 credit hour per semester). Each student must pass a comprehensive examination, prepare and successfully defend a dissertation prospectus, and complete and defend his/her dissertation project, which is based on original, independent research.

Notes

Non-pharmacists and international students are encouraged to audit the course in the PharmD program that includes an introduction to the U.S. health care system.

PHAD 698 Non-Thesis Research will consist of a submission ready manuscript for a targeted journal. Project concept and target journal must be approved in advance by the faculty advisor. Final results will be presented in a departmental level seminar. At least two additional faculty members will serve as reviewers.

It is important to note that if an applicant has a Master's degree, he or she may petition in writing to the Department Chair for substitution or waiver of certain courses upon entry into the program. The Faculty will evaluate the request, following the Graduate School policies, and determine which courses, if any, can be waived or substituted. If an applicant has completed a thesis, he or she is asked to provide a copy of the thesis for review to determine whether waiver of PHAD 698 and other courses is acceptable. Substitution or waiver of courses will then be documented on the student's progression form.

The Comprehensive Examination

The purpose of the Comprehensive Examination is to allow the student to demonstrate the competencies necessary to conduct independent research at the doctoral level. This follows the Graduate School's requirement which indicates that the purpose of this examination is to establish that the student has satisfactorily mastered the body of academic material appropriate to the degree. **The Comprehensive Examination precedes the formal dissertation proposal and follows the completion of required course work.**

The comprehensive examination is given three times annually: January, June, and September (the exam will start the second Monday of each of these months). The student is responsible for coordinating with the GPC/Department Chair to schedule the examination at least two months in advance. The GPC/Department Chair will complete the Authorization to Sit for a Comprehensive Exam Form (Form GS5) and submit it to the Graduate School. This form can be found online on the Graduate School website.

The examination will involve the development of a written exam with knowledge and application questions followed by an oral examination. The student will have one week to complete the written exam independently. The exam will be developed by a committee of faculty members familiar with the student's research interests. The faculty committee will be appointed by the GPC/Department chair. A list of competencies to be demonstrated are listed below.

19



**THE UNIVERSITY OF MISSISSIPPI** Omokhodion Eriakha <oeriakha@go.olemiss.edu>

---

# Notice of Non-Renewal of Graduate Research Assistantship

2 messages

---

**Yi Yang** <yiyang@olemiss.edu>                                             Mon, Jun 30, 2025 at 2:11 PM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>

Hi Alfred,

At our faculty meeting last week, the department faculty has decided not to recommend you to be
reappointed as a graduate research assistant (RA). As a result, your RA funding will end on
**August 15, 2025**. Please see the attached memo.

Best regards,
Yi

Yi Yang, MD, PhD
Chair and Professor, Department of Pharmacy Administration
Research Professor, Research Institute of Pharmaceutical Sciences
The University of Mississippi School of Pharmacy
(662) 915 1062
yiyang@olemiss.edu
225 Faser Hall
University, MS 38677



📄 **2025 06 30_Alfred Eriakha Memo - Funding.pdf**
    79K

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                             Mon, Jun 30, 2025 at 2:20 PM
To: Eriakha Ehiremen Bennard <eriakhabernard@gmail.com>

Alfred Eriakha
PhD Student
Department of Pharmacy Administration
The University of Mississippi
oeriakha@go.olemiss.edu
+1-662-380-0924
[Quoted text hidden]

📄 **2025 06 30_Alfred Eriakha Memo - Funding.pdf**
    79K



THE UNIVERSITY OF
**MISSISSIPPI**

Omokhodion Eriakha <oeriakha@go.olemiss.edu>



## Notice of Disciplinary Recommendation for Disruption of Thesis Defense
3 messages

---

**Erin Renee Holmes** <erholmes@olemiss.edu>                    Mon, Jun 30, 2025 at 2:00 PM
To: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>, Meagen Marie Rosenthal <mmrosent@olemiss.edu>, Marie Barnard
<mbarnard@olemiss.edu>

Alfred,

Please find attached a memo that regarding behavior during Ivy's thesis defense on June 25, 2025.

Dr.. Holmes

*Erin R. Holmes, PharmD, PhD*
*Professor of Pharmacy Administration*
*University of Mississippi School of Pharmacy*
*Make an Appointment*

 **Alfred Eriakha Memo.docx**
22K

---

**Omokhodion Eriakha** <oeriakha@go.olemiss.edu>                    Mon, Jun 30, 2025 at 2:05 PM
To: Eriakha Ehiremen Bennard <eriakhabernard@gmail.com>

Alfred Eriakha
PhD Student
Department of Pharmacy Administration
The University of Mississippi
oeriakha@go.olemiss.edu
+1-662-380-0924
[Quoted text hidden]

**Alfred Eriakha Memo.docx**
22K

---

**Yi Yang** <yiyang@olemiss.edu>                    Mon, Jun 30, 2025 at 2:27 PM
To: Annette Kluck <askluck@olemiss.edu>
Cc: "oeriakha@go.olemiss.edu" <oeriakha@go.olemiss.edu>

Good afternoon, Dean Kluck,

Please see the email below and the attached memo from three members of our faculty regarding
disciplinary recommendation against Alfred Eriakha for disruption of thesis defense. I support and concur
with the faculty members' recommendation.

Please let me know if you have any questions.

Thanks, Yi


Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall


---

**From:** Erin Renee Holmes <erholmes@olemiss.edu>
**Sent:** Monday, June 30, 2025 2:00 PM
**To:** oeriakha@go.olemiss.edu <oeriakha@go.olemiss.edu>
**Cc:** Yi Yang <yiyang@olemiss.edu>; Meagen Marie Rosenthal <mmrosent@olemiss.edu>; Marie Barnard <mbarnard@olemiss.edu>
**Subject:** Notice of Disciplinary Recommendation for Disruption of Thesis Defense

[Quoted text hidden]

📄 **Alfred Eriakha Memo.docx**
22K

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi
University, MS 38677

**TO:** Omokhodion (Alfred) Eriakha (Student Number 10859637)

**CC:** Yi Yang, Chair and Professor

**FROM:** Erin Holmes; Marie Barnard; Meagen Rosenthal

**DATE:** June 30, 2025

**SUBJECT:** Notice of Disciplinary Recommendation for Disruption of Thesis Defense

This memo serves as a formal notification, following the disruption of a fellow graduate student's thesis defense question and answer session on Wednesday June 25, 2025, that the thesis committee is recommending you be placed on academic probation.

The disruption was found to be in violation with Section 1 of the University of Mississippi *M Book*, specifically regarding behaving in a collegial manner and adhering to the professional and ethical standards of the discipline (See below for the relevant excerpt from the M Book).

> ***Dismissal or Change in Status Based Upon Failure to Meet Professional, Ethical, And Behavioral Expectations:*** *Graduate students are also expected to behave in a collegial manner and to adhere to the professional and ethical standards of the discipline. Students are expected to develop collaborative and collegial relationships with and to work with graduate faculty, students, and other professionals in research, academic, or professional settings. If in the judgment of the appropriate faculty group a student fails to meet the above expectations, or otherwise fails to act in ways that are consistent with the norms and standards of the profession or discipline, an appropriate faculty group may recommend dismissal or change in the admission status of that graduate student. This recommendation shall be forwarded by the graduate program coordinator or department chair to the Graduate Dean and to the affected student, with an indication whether the chair or program coordinator concurs with the faculty recommendation. The Graduate Dean will act on the faculty recommendation and inform the student and the graduate program coordinator or department chair of the action taken. Ordinarily, if a student is dismissed from a graduate program for the above reasons, he or she will be considered a non-degree II student and may re-apply to a graduate program. The judgment of the Graduate Dean may be to prohibit the individual from re-applying to some programs.*

Such actions not only undermine the integrity of the academic process but also negatively impact your peers and the broader scholarly community.

We will be initiating an academic discipline case recommending that you be placed on probation for the Fall 2025 semester.

You will be notified of any additional steps or conditions associated with the probation. You are also entitled to respond to this recommendation and may request a meeting to discuss the matter further.

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi
University, MS 38677

**TO:**       Omokhodion (Alfred) Eriakha (Student Number 10859637)

**CC:**       Marie Barnard, Associate Professor and Graduate Program Coordinator
John Bentley, Professor

**FROM:**    Yi Yang, Chair and Professor

**DATE:**    June 30, 2025

**SUBJECT:**  Notice of Non-Renewal of Graduate Research Assistantship

This memo serves as formal notification that your appointment as a Graduate Research Assistant (RA) will not be renewed for the 2025–2026 academic year.

In accordance with Departmental Policies and Procedures Guide, it is important to note that **reappointment for subsequent academic years is not automatic.** As stated in our guidelines:

"Reappointment is contingent upon availability of funds, satisfactory academic progression by the student, satisfactory involvement and performance in research and teaching activities, program needs, and recommendation by the Department Faculty."

After careful consideration, the Department Faculty has decided not to recommend your reappointment. As a result, your RA funding will end on **August 15, 2025.**

If you have any questions or would like to schedule a meeting to discuss this matter further, please feel free to contact me directly.

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi

**TO:**        Omokhodion (Alfred) Eriakha (Student Number 10859637)

**CC:**        Yi Yang, Chair

**FROM:**      Marie Barnard, Graduate Program Coordinator

**DATE:**      June 30, 2025

**SUBJECT:**   Warning and Remediation Plan to Address Failure to Meet a Non-Course Work
               Academic Performance Expectation

This memo serves as a formal warning that you have failed to meet a non-course work academic performance expectation, specifically, the required annual submission of the Abilities Transcript (AT). The required annual submission of the AT is made clear in the Department of Pharmacy Administration Policies and Procedures Guide. The AT is utilized by the department faculty as part of the annual review of graduate students. You received multiple email notifications requesting that you submit your AT. As of June 30, 2025, you have still not submitted your AT.

In order to remediate this issue, you must meet with your development mentor and submit your updated Abilities Transcript to the department chair by August 15, 2025. Failure to do so will result in a recommendation to the Graduate Dean that you have a change of status to provisional status.



**The University of Mississippi**

Oxford • Jackson • Tupelo • Southaven
Office of Admission and Records
104 Martindale
Post Office Box 1848
University, MS 38677

July 01, 2025

Mr. Omokhodion Eriakha
OLOSUN ESTATE
Abeokuta, OG 23401

Dear Mr. Eriakha:

The Provost has advised me to notify you by way of this letter that Dr. Erin Holmes has recommended the following sanction(s) against you:

Probation

You have the right to appeal this sanction within fourteen days from the date of this letter. You may appeal this case to the Academic Discipline Committee by visiting the following website, my.olemiss.edu. You will need your Web ID and password to access this site. You will then select Academic Discipline under the main workset of your student account. Your case number is 000021828145.

You can obtain a copy of the University of Mississippi's academic discipline policy and procedures at the following site: https://policies.olemiss.edu/ShowDetails.jsp?istatPara=1&policyObjidPara=10817696

If you have any questions, you may call me at 662-915-7792.

Sincerely,

Danielle Ambrose
Registrar

| **TO:** | **Noel Wilkin**, Provost & Executive Vice Chancellor for Academic Affairs |
|---|---|
| **CC:** | **Danielle Ambrose**, Registrar<br>**Annette S. Kluck**, Dean of the Graduate School<br>**Yi Yang**, Chair<br>**Marie Barnard**, Graduate Program Coordinator<br>**Erin R. Holmes**<br>**Meagen Rosenthal** |
| **FROM:** | Omokhodion (Alfred) Eriakha (Student Number 10859637) |
| **DATE:** | July 7, 2025 |
| **SUBJECT:** | Formal Rebuttal to June 30, 2025, Memorandum Alleging Disruption and Recommending Academic Probation |

**Dear Dr. Wilkin,**

I hope this letter finds you well. I am writing in response to the June 30, 2025, memorandum issued by the Department of Pharmacy Administration recommending that I be placed on academic probation for alleged **"disruption"** during a thesis presentation held on June 25, 2025. Regrettably, this memorandum continues a troubling pattern of departmental actions that have significantly disrupted my academic progress, compromised my well-being, and now threaten to jeopardize my academic and professional reputation—with potential consequences that may extend well beyond graduate school.

The timing of the memorandum, its vague and unsubstantiated language, and the absence of specific factual allegations raise serious concerns that this action is retaliatory in nature. It appears to be a response to my repeated and good-faith efforts to assert procedural rights, report policy violations, and engage in protected academic expression. Rather than addressing the serious and well-documented procedural failures I have identified, the department appears to be relying on

punitive measures to compel compliance, suppress dissent, and divert scrutiny from its own lack of accountability.

To contextualize this most recent and coordinated series of punitive actions—all issued on June 30, 2025—I outline below several core areas of concern, many of which I have previously documented.

## 1. Breach of Contract

As a public institution, the University of Mississippi is bound by the policies it publishes—policies that courts have recognized as forming part of an implied contract between the university and its students. One such policy, clearly stated in the Department of Pharmacy Administration's *Comprehensive Exam Policies and Procedures*, reads:

*"The exam will be **developed** by a committee of three faculty members **familiar** with the student's research interests."*

Despite this explicit requirement, the following occurred:

- The Dean of the Graduate School confirmed that during my first comprehensive examination attempt, the department employed a process in which faculty members familiar with my research interests **served in a consultative or review capacity**—rather than as actual **developers of the examination questions**—directly contravening departmental policy.

- The Dean further acknowledged that this same deviation would apply to my second attempt, even after I formally raised concerns, thereby demonstrating a knowing and willful disregard for established university policy.

- I repeatedly documented how this policy deviation compromised the fairness and academic integrity of my first comprehensive examination, which ultimately led to a sequence of events that materially influenced the outcome.

- Reinforcing this disregard of established university policy, the Department Chair explicitly questioned the necessity of this policy safeguard, stating it could be ignored on the basis that *"every faculty member is equally familiar with every student's research interests."* This statement, coupled with the pattern of conduct described above, not only dismisses the intent and protective function of the policy but also signals a broader pattern of disregard for established institutional policy.

This deliberate departure from clearly articulated guidelines constitutes a potential breach of the university's implied contractual obligations to its students. More broadly, it reflects a troubling erosion of the department's responsibility to uphold transparency, accountability, and fairness in its academic procedures. When policies governing high-stakes evaluations, such as comprehensive examinations, are willfully disregarded, students are denied due process and deprived of the legitimate expectation of a just and equitable educational environment.

## 2. Denial of Requests for Deficient Competencies

Following the ruling on the appeal of my first comprehensive examination, I began preparing—both mentally and academically—for my second attempt. To do so constructively, it was essential to understand the specific competencies I was judged to have failed to demonstrate. Accordingly, I promptly requested written documentation identifying those specific competencies or abilities for which I was found to be deficient.

This request was fully justified by the department's own policies and procedures, which state:



THE UNIVERSITY of
**MISSISSIPPI**
OFFICE OF THE REGISTRAR

August 5, 2025

Mr. Omokhodion Eriakha
OLOSUN ESTATE
Abeokuta, OG 23401

Case Number: 000021828145

Dear Mr. Eriakha:

Pursuant to the M-Book procedure in cases involving accusations of academic discipline, you were informed of the following recommended sanction(s) from the University:

- Academic Disciplinary Probation for the duration of the student's enrollment at The University of Mississippi

You had the right to challenge the recommended sanction(s) by appealing in writing to the Chair of the Academic Discipline Committee within 14 days of the recommendation of the sanction(s). However, you did not exercise that right. The recommended sanction (s) have been approved and are now final.

Please feel free to contact me if you have any questions.

Sincerely yours,

Danielle Ambrose
Registrar



THE UNIVERSITY OF
**MISSISSIPPI** | **Graduate School**

August 7, 2025

Dear Omokhodion (Alfred) Eriakha (#10859637),

Your academic program faculty, via a faculty member, submitted a recommendation to place you on probation status via the academic discipline process on July 1, 2025. On July 30, 2025, the Academic Discipline Committee upheld the recommended sanction.

I subsequently consulted with Dean Strum. The institutional procedures were followed and the sanction stands. Thus, you will be on academic probation.

Sincerely,

Annette S. Kluck, Ph.D.
Dean of the Graduate School
Professor of Leadership and Counselor Education
University of Mississippi

Cc:  Dr. Erin Holmes
     Dr. Yi Yang
     Dr. Donna Strum
     Prof William Berry
     Dr. Jennifer Simmons
     Ms. Kelley Jenkins
     Dr. Noel Wilkin
     Ms. Robin Wiebe Bourgeois

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi

**TO:**        Omokhodion (Alfred) Eriakha (Student Number 10859637)

**CC:**        Yi Yang, Chair

**FROM:**      Marie Barnard, Graduate Program Coordinator

**DATE:**      August 21, 2025

**SUBJECT:**   Recommendation for a Change in Status

On June 30, 2025 I sent you a memo as a warning that you had failed to meet a non-course work academic performance expectation, specifically, the required annual submission of the Abilities Transcript (AT). That memo specified that you could remediate this issue by meeting with your development mentor and submitting your updated Abilities Transcript to the department chair by August 15, 2025. That memo further indicated that failure to do so would result in a recommendation to the Graduate Dean that you have a change of status to provisional status.

Because you have not submitted your Abilities Transcript as of August 21, 2025, this memo serves as formal notice that the Department of Pharmacy Administration is recommending that the Graduate Dean change your admission status to provisional status. As Graduate Program Coordinator I concur with this recommendation. In order to be returned to full standing in the Pharmacy Administration graduate program for the Spring 2026 semester, you must do the following:

1. Meet with your development mentor to complete the Abilities Transcript and submit it to the department chair by September 30, 2025.
2. Meet weekly throughout the Fall semester with your dissertation advisor to make progress on your dissertation.
3. Follow Department of Pharmacy Administration 2025-26 Policies and Procedures Guide to register for the January 2026 Comprehensive Examination.
4. Submit a written draft of chapter 1 (the literature review) of your dissertation by December 5, 2025 to your dissertation advisor and the department chair.
5. Participate in three professional development activities offered by the Graduate School by December 5, 2025. For each one, you must register for and attend the activity and submit a brief (one paragraph) reflection to the department indicating the name and date of the activity, what you learned and how you could apply this in your future professional career.

All of these actions must be completed per the deadlines in each item. Upon completion of all of these actions, I will submit a recommendation to the Graduate Dean that you be returned to full-standing in the graduate program in Pharmacy Administration.

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi

**TO:**       Annette Kluck, Dean - Graduate School

**CC:**       Omokhodion (Alfred) Eriakha (Student Number 10859637)

              Yi Yang, Chair - Department of Pharmacy Administration

**FROM:**     Marie Barnard, Graduate Program Coordinator - Department of Pharmacy
              Administration

**DATE:**     August 21, 2025

**SUBJECT:**  Recommendation for a Change in Status for Omokhodion (Alfred) Eriakha (Student
              Number 10859637)

The Department of Pharmacy Administration recommends that the admission status of Omokhodion (Alfred) Eriakha (Student Number 10859637) be changed to provisional status. As Graduate Program Coordinator I concur with this recommendation. In order to be returned to full standing in the Pharmacy Administration graduate program for the Spring 2026 semester, we have asked Alfred to do the following:

1. Meet with his development mentor to complete the Abilities Transcript and submit it to the department chair by September 30, 2025.
2. Meet weekly throughout the Fall semester with his dissertation advisor to make progress on his dissertation.
3. Follow Department of Pharmacy Administration 2025-26 Policies and Procedures Guide to register for the January 2026 Comprehensive Examination.
4. Submit a written draft of chapter 1 (the literature review) of his dissertation by December 5, 2025 to his dissertation advisor and the department chair.
5. Participate in three professional development activities offered by the Graduate School by December 5, 2025. For each one, he must register for and attend the activity and submit a brief (one paragraph) reflection to the department indicating the name and date of the activity, what he learned and how he could apply this in your future professional career.

We requested that all of these actions be completed per the deadlines in each item. Upon completion of all of these actions, I will submit a recommendation to you that Alfred be returned to full-standing in the graduate program in Pharmacy Administration.



# THE UNIVERSITY OF MISSISSIPPI. | Graduate School

August 22, 2025

Dear Omokhodion (Alfred) Eriakha (#10859637),

Your academic program faculty, via the Graduate Program Coordinator, submitted a recommendation to change your admission status to provisional on August 21, 2025.

The relevant policy can be found at https://policies.olemiss.edu/ShowDetails.jsp?istatPara=1&policyObjidPara=11142506. The policy states, "Departments/programs may establish non-course related academic performance expectations...", "The advisor, graduate program coordinator, or department chair must provide reasonable warning to the student, in writing...", and "An appropriate faculty group, which may be the student's advisory committee or the graduate education committee of a department/program, may recommend dismissal or change in the admission status of a student."

Individuals on provision status must complete the requirements to attain full standing within 9 credit hours. Only students in full standing are ineligible for an assistantship, federal financial aid, preregistration for enrollment for the next term, and sitting for the comprehensive examination.

Given the requirements within the program handbook and written warning, I support the recommendation of the program faculty to change your enrollment status to provisional. The program has provided the requirements to return to full standing in the memo to you dated August 21, 2025.

I regret that this is likely not the news you were hoping to receive. I wish you well as you complete the requirements outlined by the program.

Sincerely,

Annette S. Kluck, Ph.D.
Dean of the Graduate School
Professor of Leadership and Counselor Education
University of Mississippi

Cc:    Dr. Marie Barnard
       Dr. Yi Yang
       Ms. Robin Wiebe Bourgeois