# UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division



RECEIVED

OCT 15 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

Omokhodion Alfred Eriakha

*Plaintiff*

-v-

University of Mississippi; Dr. Yi Yang; Dr.
Marie Barnard; Dr. Erin Holmes; Dr. Meagen
Rosenthal; Dr. Annette Kluck; Dr. Jennifer
Simmons

*Defendants*

Case No.   3:25-cv-00226

)
)
)
)
)
)
)

## AMENDED COMPLAINT AND REQUEST FOR INJUNCTION

## JURY TRIAL DEMANDED

## I. PARTIES

### A. Plaintiff

1. Plaintiff, Omokhodion Alfred Eriakha, is an adult resident of Lafayette County, Mississippi, residing at 1802 Jackson Avenue West, Oxford, Mississippi 38655.

2. At all relevant times, Plaintiff was enrolled full-time and in good academic standing as a graduate student in the Department of Pharmacy Administration within the University of Mississippi School of Pharmacy.

3. Plaintiff was concurrently employed as a Graduate Research Assistant, a position providing a stipend, tuition remission, and health-insurance benefits essential to his continued enrollment and lawful status.

4. Plaintiff's academic and employment statuses together constituted his primary means of financial and professional sustenance, both of which were directly affected by the actions described herein.

5. Plaintiff may be contacted at (662) 281-4676 or eriakhab@gmail.com.

### B. Defendants

#### Defendant 1 - The University of Mississippi

1. The University of Mississippi ("University") is a public institution of higher education and an instrumentality of the State of Mississippi, located in Oxford, Lafayette County, Mississippi 38677.

2. The University is a recipient of federal financial assistance and is a "public entity" within the meaning of *Title II* of the *Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.*, and *Section 504* of the *Rehabilitation Act, 29 U.S.C. § 794.*

2

3. At all relevant times, the University acted through its officers, agents, and employees—including the individual defendants named herein—each acting under color of state law and within the scope of their official duties.

4. The University may be contacted through its Office of General Counsel, Lyceum Building, University of Mississippi, University, MS 38677.

### Defendant 2 - Dr. Yi Yang

1. Defendant Dr. Yi Yang is Chair of the Department of Pharmacy Administration and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Yang exercised supervisory authority over departmental policy, academic discipline, and Graduate Research Assistantship appointments, serving as the department's final approving authority for graduate-student disciplinary and employment actions.

3. Acting under color of state law, Dr. Yang authorized and ratified the June 30, 2025 disciplinary memorandum labeling Plaintiff's academic remarks during a thesis defense as "disruptive" and recommending probation (*Exhibit H*), despite knowing that no factual evidence or policy basis supported the allegation.

4. On that same date, Dr. Yang approved or participated in the termination of Plaintiff's Graduate Research Assistantship—his primary source of funding—without cause, or documented performance issue.

5. Dr. Yang also endorsed or directed additional adverse actions, including:

    i) A **June 24, 2025** employment threat citing non-submission of a non-evaluative mentoring document ("Abilities Transcript");

    ii) The **June 30, 2025** memorandum linking academic consequences to that same developmental form; and

    iii) An **August 21, 2025** recommendation to downgrade Plaintiff's academic status to "provisional," contrary to University policy requiring committee review and documented deficiencies.

6. Upon information and belief, Dr. Yang's decisions were motivated by retaliation for Plaintiff's protected activities—specifically, his written procedural complaints and accommodation requests—constituting protected conduct under the ***First Amendment***, ***Section 504***, and ***Title II***.

7. Dr. Yang acted with deliberate indifference to established procedural safeguards by approving sanctions issued without notice, evidence, or opportunity to respond, thereby violating Plaintiff's clearly established rights under the ***First*** and ***Fourteenth Amendments*** and federal disability law.

8. Dr. Yang's actions directly caused the deprivation of Plaintiff's protected interests in academic standing, employment, and reputation, forming a material basis for the claims asserted herein.

9. Dr. Yang's business address is 225 Faser Hall, Oxford, Mississippi 38677, and she may be contacted at yiyang@olemiss.edu.

4

**Defendant 3 – Dr. Marie Barnard**

1. Defendant Dr. Marie Barnard is the Graduate Program Coordinator for the Department of Pharmacy Administration at the University of Mississippi and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Barnard exercised administrative and evaluative authority over graduate-student progression, disciplinary recommendations, and assistantship appointments, and served as a principal advisor to the Department Chair on matters affecting Plaintiff.

3. Acting under color of state law, Dr. Barnard co-authored the **June 30, 2025** disciplinary memorandum—together with Drs. Erin Holmes and Meagen Rosenthal—which labeled Plaintiff's academic remarks during a thesis defense as "disruptive" and recommended probation. The memorandum cited no evidence, identified no specific rule violation, and was issued without notice or an opportunity to respond, contrary to University policy and due-process standards.

4. Upon information and belief, Dr. Barnard's participation in the memorandum was retaliatory, targeting Plaintiff's protected academic speech and prior written advocacy regarding procedural fairness and disability accommodations. Such conduct constitutes prohibited retaliation under the *First Amendment*, *Section 504 of the Rehabilitation Act*, and *Title II of the ADA*.

5. Following the **June 30** memorandum, Dr. Barnard authored or approved additional communications faulting Plaintiff for non-submission of the "Abilities Transcript"—a non-evaluative mentoring form—despite her knowledge that procedural barriers prevented completion and that no policy authorized disciplinary consequences based on that document.

6. On **August 21, 2025**, Dr. Barnard endorsed or authored a recommendation to downgrade Plaintiff's academic status to "provisional" without evidence of academic deficiency or required committee review, only weeks after Plaintiff filed formal objections and accommodation requests—further evidencing retaliatory motive.

7. Dr. Barnard acted knowingly and in coordination with other Defendants despite being aware of Plaintiff's pending grievances, accommodation requests, and good-faith compliance. Her actions lacked factual foundation or legitimate academic purpose and were inconsistent with established policy.

8. Dr. Barnard's conduct directly contributed to the deprivation of Plaintiff's protected interests in academic standing, employment, and reputation, forming a material basis for his *First Amendment* retaliation, *Fourteenth Amendment* due-process, and *ADA/Section 504* discrimination claims.

9. Dr. Barnard's business address is 234 Faser Hall, Oxford, Mississippi 38677, and she may be contacted at mbarnard@olemiss.edu.

**Defendant 4 – Dr. Erin Holmes**

1. Defendant Dr. Erin Holmes is a Professor of Pharmacy Administration at the University of Mississippi and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Holmes exercised academic and administrative authority within the Department of Pharmacy Administration, including roles in graduate student discipline, evaluation, and assistantship decisions. She also served as a faculty mentor and academic advisor to students, including those involved in the academic events giving rise to this action.

3. Acting under color of state law, Dr. Holmes initiated and co-authored the **June 30, 2025** disciplinary memorandum, along with Drs. Marie Barnard and Meagen Rosenthal, which labeled Plaintiff's academic comments during a thesis defense as "disruptive" and recommended probation. The memorandum cited no evidence, included no witness statements, and was issued without prior notice or opportunity for response, in violation of University policy and the Fourteenth Amendment's due process requirements.

4. The memorandum was circulated five days after the academic event in question and contained no factual account or specific policy citation supporting disciplinary action. The timing and absence of evidence support a reasonable inference that the memorandum was retaliatory rather than academic in nature.

5. Dr. Holmes knew or should have known that Plaintiff's remarks were professional and academic in scope, yet she mischaracterized his protected scholarly expression as misconduct. Such conduct violated clearly established *First Amendment* principles protecting academic speech.

6. Upon information and belief, Dr. Holmes's actions were motivated by retaliation for Plaintiff's prior protected activities, including written complaints concerning procedural irregularities and disability accommodation requests, in violation of the First Amendment, Section 504, and Title II of the ADA.

7. Dr. Holmes also ratified or participated in subsequent retaliatory measures, including:

   i)  Plaintiff's assistantship termination without cause or hearing; and

   ii) The August 21, 2025 recommendation to downgrade Plaintiff's academic status to "provisional," contrary to University policy requiring documented academic deficiencies and committee review.

8. Dr. Holmes's actions were undertaken knowingly and in coordination with other departmental officials, despite actual awareness that the underlying allegations lacked factual foundation or procedural compliance. Her conduct directly deprived Plaintiff of his protected interests in academic standing, employment, and reputation, forming a material basis for his claims under the First and Fourteenth Amendments, the ADA, and the Rehabilitation Act.

9. Dr. Holmes's business address is 233 Faser Hall, Oxford, Mississippi 38677, and she may be contacted at erholmes@olemiss.edu.

**Defendant 5 – Dr. Meagen Rosenthal**

1. Defendant Dr. Meagen Rosenthal is an Associate Professor of Pharmacy Administration at the University of Mississippi and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Rosenthal exercised faculty authority over graduate-student evaluation, discipline, and assistantship continuation, and actively participated in departmental decisions affecting Plaintiff's academic standing.

3. Acting under color of state law, Dr. Rosenthal co-authored and signed the June 30, 2025 disciplinary memorandum, with Drs. Erin Holmes and Marie Barnard, which labeled Plaintiff's academic remarks during a thesis defense as "disruptive" and recommended probation. The memorandum contained no factual basis or notice to Plaintiff and was issued in direct violation of University policy and the Fourteenth Amendment's due-process protections.

4. Dr. Rosenthal knew or should have known that Plaintiff's June 25, 2025 comments were professional and academic in scope. Despite this knowledge, she endorsed a disciplinary record

8

mischaracterizing protected academic speech as misconduct, thereby participating in a retaliatory action against constitutionally protected expression.

5. Upon information and belief, Dr. Rosenthal's participation was motivated by retaliation for Plaintiff's protected activities, including written procedural complaints and disability-accommodation requests, in violation of the First Amendment, Title II of the ADA, and Section 504 of the Rehabilitation Act.

6. Dr. Rosenthal also ratified or participated in subsequent retaliatory measures, including:

    i) Plaintiff's assistantship termination without academic or professional cause; and

    ii) The August 21, 2025 memorandum recommending his downgrade to "provisional" status without evidence of deficiency or required committee review, contrary to University policy.

7. Dr. Rosenthal acted knowingly and in coordination with other departmental officials while aware of Plaintiff's pending accommodation requests and procedural objections. Her conduct directly deprived Plaintiff of his protected interests in academic standing, employment, and reputation, forming a material basis for his First Amendment retaliation, Fourteenth Amendment due-process, and ADA/Section 504 discrimination claims.

8. Dr. Rosenthal's business address is 233A Faser Hall, Oxford, Mississippi 38677, and she may be contacted at mmrosent@olemiss.edu.

**Defendant 6 – Dr. Annette Kluck**

1. Defendant Dr. Annette Kluck is the Dean of the Graduate School at the University of Mississippi and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Kluck exercised institutional oversight and appellate authority over graduate programs, including review of departmental disciplinary actions, interpretation of Graduate School policy, and approval of assistantship-related appeals. She possessed both the authority and the duty to correct procedural irregularities raised by graduate students.

3. Acting under color of state law, Dr. Kluck reinterpreted Graduate School policy on June 2, 2025, to allow "post hoc" review of comprehensive examination questions rather than the questions being developed by three faculty members familiar with the student's research interests, contrary to the policy's plain text and purpose. This reinterpretation ratified a prior procedural violation and deprived Plaintiff of a fair and informed examination process guaranteed by University policy and the Fourteenth Amendment's procedural due process protections.

4. Despite Plaintiff's written objections and appeals documenting these irregularities, Dr. Kluck affirmed the Department's noncompliant process and authorized the same procedure for Plaintiff's second examination attempt, thereby institutionalizing the violation rather than remedying it.

5. Following the June 30, 2025 disciplinary memorandum authored by Defendants Drs. Holmes, Barnard, and Rosenthal, Dr. Kluck received Plaintiff's rebuttal explaining that the sanction lacked notice, evidence, or hearing. Despite this, she approved and permitted enforcement of the probation recommendation, even though the underlying conduct—academic discussion during a thesis defense—was clearly protected speech under the First Amendment.

6. Dr. Kluck acted with actual or constructive knowledge that the disciplinary process violated University policy and constitutional due-process guarantees. Her approval thus constituted deliberate ratification of a retaliatory and procedurally defective action.

10

7. In addition, Dr. Kluck failed to ensure compliance with federal disability law under the ADA and Section 504 despite notice of Plaintiff's accommodation requests and reports of procedural barriers. She neither engaged in nor directed the required interactive process, demonstrating deliberate indifference to federally protected rights.

8. Dr. Kluck's conduct—including the policy reinterpretation, probation ratification, status downgrade ratification, and ADA noncompliance—directly deprived Plaintiff of protected interests in fair academic evaluation, continued employment, and equal access to University programs, forming a material basis for his due process, retaliation, and disability-discrimination claims.

9. Dr. Kluck's business address is the Graduate School, University of Mississippi, Oxford, Mississippi 38677, and she may be contacted at askluck@olemiss.edu.

### Defendant 7 – Dr. Jennifer Simmons

1. Defendant Dr. Jennifer Simmons is the Assistant Provost of the University of Mississippi and is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief.

2. At all relevant times, Dr. Simmons exercised institutional oversight over student discipline, procedural compliance, and graduate-level appeals, including authority to review and approve departmental sanctions. She was responsible for ensuring that disciplinary and academic-standing determinations complied with University policy and constitutional due-process requirements.

11

3. Acting under color of state law, Dr. Simmons approved and ratified the disciplinary actions challenged here, including the imposition and escalation of Plaintiff's disciplinary probation and the subsequent downgrade to "provisional" status.

4. After receiving Plaintiff's July 7, 2025 rebuttal disputing the June 30, 2025 memorandum, Dr. Simmons replied on July 10, 2025, instructing him to "proceed with an appeal" despite the absence of formal notice, and later directed that his rebuttal be treated as an "appeal." This post-hoc designation failed to cure the lack of notice or opportunity to respond, creating only the appearance of process where none had existed.

5. During this period, Dr. Simmons issued prejudicial statements— including that "repeating the offense could result in increased punishment" — which presumed guilt, discouraged protected advocacy, and reinforced a retaliatory climate.

6. On July 22, 2025, Dr. Simmons reaffirmed the defective appeal process and shortly thereafter endorsed the escalation of probation from one semester to "the duration of enrollment," as reflected in the August 5, 2025 decision letter.

7. Dr. Simmons knew or should have known that the underlying "disruption" allegation arose from Plaintiff's academic remarks during a thesis defense, which were scholarly in nature and protected by the First Amendment, and that the disciplinary process had been initiated without notice or evidence. Nevertheless, she ratified and enforced the sanction, thereby converting a procedurally void departmental action into an institution-wide penalty.

8. Through these acts and omissions, Dr. Simmons knowingly perpetuated a disciplinary process that violated Plaintiff's rights under the First Amendment, and Fourteenth Amendment, directly depriving him of protected interests in academic standing, employment, and reputation.

9. Dr. Simmons's business address is 141 Lyceum, University of Mississippi, Oxford, MS 38677, and she may be contacted at jasimmon@olemiss.edu.

## II. BASIS FOR JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including the *First* and *Fourteenth Amendments*, the *Americans with Disabilities Act of 1990* (Title II), *Section 504 of the Rehabilitation Act of 1973*, and *42 U.S.C. § 1983*, which provides a cause of action against persons acting under color of state law who deprive others of rights secured by the Constitution and federal statutes.

2. This Court has federal-question jurisdiction pursuant to *28 U.S.C. §§ 1331* and *1343(a)(3)* because the action seeks redress for deprivations of federally protected rights under color of state law.

3. Venue is proper in the Northern District of Mississippi, Oxford Division, under *28 U.S.C. § 1391(b)* because all events giving rise to the claims occurred within this District, and all Defendants reside or are employed at the University of Mississippi in Oxford, Lafayette County, Mississippi.

4. Plaintiff's claims arise under the following provisions:

    i) **First Amendment** — protecting freedom of speech, academic expression, and petition, and prohibiting retaliation for protected activity;

    ii) **Fourteenth Amendment** (Due Process Clause)—guaranteeing procedural and substantive due process in disciplinary and administrative proceedings at public universities;

iii) **Title II of the ADA,** *42 U.S.C. §§ 12131–12165* — prohibiting disability-based exclusion, retaliation, and unequal treatment by public entities;

iv) **Section 504 of the Rehabilitation Act,** *29 U.S.C. § 794* — prohibiting disability discrimination and retaliation by recipients of federal financial assistance; and

v) **42 U.S.C. § 1983** — authorizing relief against individuals who, acting under color of state law, violate federally protected rights.

5. Plaintiff also asserts a state-law claim for breach of contract under Mississippi law based on the University's failure to comply with its published academic, disciplinary, and assistantship policies, including the Graduate School Handbook, Departmental Policies and Procedures Guide, M Book, and official assistantship appointment letters.

6. This Court has supplemental jurisdiction over the state-law claim pursuant to *28 U.S.C. § 1367(a)* because it arises from the same nucleus of operative facts as the federal claims. *See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).*

## III. FACTUAL BACKGROUND

1. **Personal Knowledge and Evidentiary Basis.**

All factual statements herein are based on Plaintiff's personal knowledge and supported by contemporaneous documentary evidence. True and correct copies of relevant correspondence and University records are attached as exhibits and incorporated by reference.

### A. Academic and Assistantship Record

2. **Academic Enrollment and Legal Status.**

14

Plaintiff Omokhodion Alfred Eriakha is a doctoral student in the Department of Pharmacy Administration at the University of Mississippi, lawfully enrolled under F-1 visa status. At all relevant times, he maintained full-time enrollment, satisfactory academic progress, and compliance with all institutional and federal requirements.

3. **Graduate Research Assistantship (GRA)**.

From **August 2021** through **August 2025**, Plaintiff held a Graduate Research Assistantship providing a stipend, tuition remission, and health insurance—benefits essential to his degree progress and lawful immigration status.

4. **Record of Academic Good Standing**.

Plaintiff consistently remained in good academic and professional standing, with no history of probation or disciplinary action prior to **June 30, 2025**. His official transcript confirms full completion of required coursework and absence of deficiencies (*Exhibit Z6*).

5. **Positive Faculty Evaluations**

Throughout four years of assistantship service, Plaintiff received strong evaluations and expressions of appreciation from supervising faculty. No concerns regarding performance or professionalism were ever raised. In **April 2025**, faculty correspondence commended his initiative and research contributions (*Exhibit Z7*).

6. **Sudden and Unexplained Deviation**.

This consistent record of performance and conduct underscores the abrupt and unjustified nature of the disciplinary sanctions imposed beginning **June 30, 2025**. Until that date, no administrator or faculty member had documented any concern or complaint against Plaintiff.

B. **Documented Disability and Initial Disclosure**

7. **Documented Disability**

Plaintiff has a medically documented mental-health disability that substantially limits major life activities, including concentration, sleep, and emotional regulation, qualifying as a disability under *Section 504* and *Title II* of the ADA.

8. **Disclosure and Institutional Notice**

In **2022**, Plaintiff disclosed his disability to Dr. Erin Holmes (faculty advisor) and Dr. Marie Barnard (Graduate Program Coordinator), administrators with authority over graduate progress and assistantships, thereby placing the University on actual notice and triggering duties under *34 C.F.R. § 104.44(d)* and *28 C.F.R. § 35.130(b)(7)* to engage in the interactive process and ensure equal access.

9. **Offer of Proof Under Seal.**

Plaintiff intentionally omitted medical details from prior filings to protect confidential health information, and is prepared to provide verified documentation under seal or pursuant to any procedure directed by the Court, to confirm his status as a qualified individual with a disability under *42 U.S.C. § 12131(2)* and *29 U.S.C. § 705(20)*.

C. **First Reasonable Accommodation Request**

10. **Initial Written Request (November 2024)**

In **November 2024,** following his comprehensive-examination appeal, Plaintiff submitted a written request for reasonable accommodations to Department Chair Dr. Yi Yang, copying Graduate Program Coordinator Dr. Marie Barnard, both of whom had supervisory authority over his academic progress and compliance obligations under the *ADA* and *Section 504*.

11. **Nature of Requested Accommodations.**

Plaintiff requested (a) clarification of competencies faculty alleged were unmet, to alleviate disability-related cognitive distress, and (b) permission for asynchronous remediation meetings (e.g., written format) to mitigate the psychological strain of in-person encounters.

(*See Exhibit Z – November 2024 Accommodation Request.*)

12. **Reasonableness and Relation to Disability**.

These requests were narrow, directly related to Plaintiff's mental-health limitations, and academically neutral, requiring no lowering of academic standards. They sought only to ensure equal access to the remediation process as required under *34 C.F.R. § 104.44(a)* and *28 C.F.R. § 35.130(b)(7)*.

D. **Denial of First Accommodation Request — No Interactive Process**

13. **Notice and Acknowledgment**

Plaintiff's **November 2024** accommodation request was acknowledged by Department Chair Dr. Yi Yang, with Graduate Program Coordinator Dr. Marie Barnard copied. Both were therefore on actual notice of Plaintiff's disability-related request and the University's duty to engage in the interactive process under the *ADA* and *Section 504*.

14. **Improper Denial**.

Between **November 12** and **18, 2024**, Dr. Yang denied the requested modifications, asserting they "*would not be equitable*" because prior students were not given similar adjustments. This reasoning ignored the individualized assessment required by federal law. Dr. Barnard, though copied, took no corrective action.

15. **Failure to Engage or Refer**

No University official initiated the required interactive process or referred the matter to Student Disability Services (SDS) as mandated by federal law. The categorical refusal to discuss or consider alternatives constituted a per se violation of *ADA* and *Section 504* obligations.

16. **Resulting Harm**

As a result, Plaintiff was forced to proceed through remediation under unmodified, high-stress conditions, which exacerbated his disability-related symptoms and denied him equal access to academic participation.

*(See Exhibit Z – November 12–18, 2024 Correspondence.)*

E. **Second Reasonable Request for Accommodation**

17. **Renewed Request and Good-Faith Effort.**

After completing the unmodified remediation process and still lacking clarification on the alleged competency deficiencies, Plaintiff renewed his accommodation request in preparation for his **June 2025** exam retake, reflecting a continued good-faith effort to secure equal access through reasonable, not preferential, adjustments.

18. **Independent Contact with Student Disability Services.**

On **April 25, 2025**, Plaintiff contacted SDS directly, explaining the Department's prior refusals and seeking guidance on proper procedure. SDS confirmed that the Department bore responsibility for reviewing, implementing, or forwarding accommodation requests and was required to engage in the interactive process once notified.

*(See Exhibit Z10 – April 25, 2025 SDS Correspondence.)*

19. **Renewed Request to Department Leadership**

Relying on SDS's guidance, between **April 28** and **May 9, 2025**, Plaintiff submitted written accommodation requests to Chair Dr. Yi Yang, with Dr. Marie Barnard copied, proposing two narrowly tailored safeguards for the oral comprehensive exam:

   i)   the presence of a neutral observer, or

   ii)  an open-format session comparable to dissertation defenses.

20. **Reasonableness and Academic Neutrality**

Both proposed safeguards were standard academic practices already used in the department and University, imposed no alteration of academic standards, and were directly related to Plaintiff's anxiety-related disability, seeking only to mitigate disabling environmental triggers from his prior closed-door exam.

21. **Disability Impact and Justification**

The lack of transparency and procedural safeguards during Plaintiff's first oral exam caused acute anxiety and impaired concentration—recognized manifestations of his documented disability—demonstrating a clear nexus between his condition and the need for the requested modifications.


F.  **Denial of Second Request — No Interactive Process**

22. **Categorical Denial Without Engagement**

Despite the clear disability-related basis and reasonableness of Plaintiff's proposed safeguards, the Department categorically denied all accommodation requests without meeting, discussion, or referral to Student Disability Services (SDS), violating the interactive process requirements of *28 C.F.R. § 35.130(b)(7)* and *34 C.F.R. § 104.44(d)*.

23. **Express Refusal by Department Chair**

Between **May 5** and **May 9, 2025,** Department Chair Dr. Yi Yang, copying Graduate Program Coordinator Dr. Marie Barnard, stated that the comprehensive examination would proceed "*strictly under the Department's established procedures,*" thereby foreclosing any modification or coordination with SDS.

(*See Exhibit B – May 2025 Correspondence.*)

24. **Failure to Consider Alternatives**

Even if Defendants disagreed with Plaintiff's specific proposals, they remained obligated to engage in an individualized interactive process to identify alternative accommodations. Instead, Drs. Yang and Barnard took no action, displaying willful disregard of federal disability mandates and University policy.

25. **Continuing Pattern of Noncompliance.**

The Department's **May 2025** refusal mirrored its earlier **November 2024** denials, evidencing a pattern of repeated noncompliance with *ADA* and *Section 504* obligations and deliberate administrative inflexibility toward disability accommodation.

26. **Resulting Harm**

These refusals deprived Plaintiff of a fair and informed opportunity to prepare for his comprehensive exam, aggravated his disability-related symptoms, and caused academic delay, psychological distress, and reputational injury due solely to Defendants' failure to engage in the required process.

G. **First Adverse Action — Threat, Coercion, and Retaliation**

27. **Conditional Funding as Coercive Leverage**

20

In **May 2025,** during the ongoing accommodation dispute, Department Chair Dr. Yi Yang informed Plaintiff that renewal of his Graduate Research Assistantship (GRA) would depend on faculty recommendation, effectively conditioning his funding and employment on faculty approval amid unresolved disability-related conflicts.

28. **Implicit Threat Against Protected Activity.**

This statement—made while Plaintiff was asserting rights under the *ADA* and *Section 504*—reasonably conveyed that continued pursuit of accommodations could jeopardize his assistantship and lawful F-1 visa status, thereby discouraging further protected advocacy.

*(See Exhibit B – May 2025 Correspondence.)*

29. **Retaliatory Effect and Resulting Harm**

By linking Plaintiff's financial and immigration stability to faculty discretion during a pending accommodation dispute, Defendants created a coercive and retaliatory environment that interfered with his exercise of federally protected rights, in violation of *28 C.F.R. § 35.134(a)* and *34 C.F.R. § 104.61*.

## H. Concurrent Petition Regarding Policy Safeguard Violation and Administrative Evasion

30. **Formal Complaint on Policy Noncompliance**

Alongside his **April 27, 2025** accommodation request, Plaintiff filed a formal complaint to Chair Dr. Yi Yang, copied to Graduate Program Coordinator Dr. Marie Barnard, documenting the Department's failure to follow its *2024–25 Policies and Procedures Guide*, which required that comprehensive examinations be developed by *three* faculty members familiar with the student's research interests.

*(See Exhibits A and Z8 – April 27, 2025 Letter and Policy Guide.)*

31. **Procedural Breach and Resulting Distress**.

Plaintiff explained that this deviation from required safeguards compromised the fairness of his first examination and heightened disability-related distress in preparing for the retake by removing the intended checks on objectivity, consistency, and fairness.

32. **Administrative Dismissal**

Instead of addressing the procedural complaint or accommodation request, Dr. Yang dismissed both without acknowledgment, while Dr. Barnard took no corrective action, reflecting deliberate administrative avoidance and a continued failure to follow required University procedures.

*(See Exhibit B – May 2025 Correspondence.)*

33. **Resulting Violations**

The Department's disregard for its written policies and refusal to engage in corrective action violated University standards, the *ADA*, and *Section 504*, denying Plaintiff both procedural fairness and equal access to academic evaluation.

I. **Escalation Beyond the Department**

34. **Good-Faith Institutional Escalation**

After repeated departmental refusals to honor disability and procedural protections, Plaintiff escalated his concerns in good faith to University oversight bodies, including Student Disability Services (SDS), the Office of Equal Opportunity and Regulatory Compliance (EORC), and senior academic administrators.

35. **Formal Notice to Senior Officials.**

22

On **May 9, 2025,** Plaintiff escalated his complaints to Provost Dr. Noel Wilkin, Graduate Dean Dr. Annette Kluck, SDS, and EORC, documenting the Department's failure to engage in the interactive process, denial of accommodations, and disregard of *ADA* and *Section 504* mandates.

(*See Exhibits C, D, Z10, and 01.*)

36. **Explicit Invocation of Federal Obligations.**

Plaintiff's correspondence expressly invoked the University's obligations under the *ADA* and *Section 504*, thereby placing senior leadership on clear notice of a continuing pattern of discrimination and triggering a duty to investigate and remediate.

37. **Follow-Up Complaint Detailing Retaliation**

On **May 13, 2025,** Plaintiff sent a follow-up complaint to Provost Dr. Noel Wilkin, documenting the Department's retaliatory linkage of assistantship renewal to accommodation requests and the chilling effect on further protected advocacy.

(*See Exhibit D.*)

38. **Protected Activity**

These written complaints—addressed to the University's highest officials and grounded in federal disability law—constituted protected activity under the *ADA, Section 504,* and University anti-retaliation policies.

J.  **Dean's Ratification of Department's Conduct and Deliberate Indifference**

39. **June 2, 2025 Ratification of Departmental Refusal**

On **June 2, 2025,** Graduate Dean Dr. Annette Kluck, acting in her official capacity, issued a written response upholding the Department's categorical denial of Plaintiff's disability-related

accommodation requests—including the presence of a neutral observer, an open-format examination, or other interactive alternatives. Despite acknowledging Plaintiff's concerns, Dean Kluck adopted the Department's position wholesale, thereby endorsing conduct that she knew or should have known violated *Title II of the ADA* and *Section 504*.

(*See Exhibit E.*)

40. **Deliberate Indifference to Federal Obligations**

By affirming the Department's refusal without initiating review or remedial action, Dean Kluck ratified noncompliance with the University's accommodation procedures and the federal requirement to engage in the interactive process under *28 C.F.R. § 35.130(b)(7)*, reflecting deliberate institutional indifference.

41. **June 25, 2025 Confirmation of Institutional Endorsement**

When Plaintiff later sought clarification regarding the *three-faculty* safeguard required by University policy, Dean Kluck replied, *"my conclusions stand,"* confirming the University's continued endorsement of policy and due process violations.

(*See Exhibit C; see also Exhibit Z8 – 2024–25 Policy Guide.*)

K. **Retroactive Policy Edit and Bad Faith**

42. **Timing of Policy Revision**

In **June 2025**, while Plaintiff's accommodation, due process, and policy violation complaints were pending before the Provost, and Graduate Dean, the Department of Pharmacy Administration revised its *Policies and Procedures Guide*, deleting the very procedural safeguard that Plaintiff had cited in his grievance.

43. **Content of Deleted Safeguard**

24

The **2024–25** Guide required that *"three faculty members familiar with a student's research interests"* develop comprehensive exam questions—an objective safeguard ensuring academic fairness. The **2025–26** Guide removed this requirement, replacing it with the vague phrase *"a committee of faculty members."*

(***See Exhibit Z8 – Side-by-Side Comparison.***)

44. **Effect and Intent**

The revision eliminated a concrete procedural protection, weakening accountability and fairness while undermining Plaintiff's pending grievance. Given its timing and context, the change appears retaliatory and pretextual, intended to erase evidence of procedural noncompliance rather than to improve academic standards.

45. **Consequences**

By ratifying this retroactive policy edit, the University institutionalized the original violation, depriving Plaintiff of due process and interfering with his protected rights under the ***ADA*** and ***Section 504***, while discouraging future protected complaints.

L. **Second, Third, and Fourth Adverse Actions**

46. **Coordinated June 30, 2025 Adverse Actions**

On **June 30, 2025**—five days after Plaintiff's follow-up communications to Dean Kluck, the Provost, and other senior officials regarding ADA and policy violations—Plaintiff was subjected to three coordinated adverse actions, each delivered within minutes of the others:

   i) A disciplinary memorandum accusing Plaintiff of "disruption" and recommending disciplinary probation, signed by Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal (***Exhibit H***);

ii) A notice of non-renewal terminating Plaintiff's Graduate Research Assistantship, effective August 15, 2025, issued by Department Chair Dr. Yi Yang (*Exhibit I*); and

iii) A status downgrade memorandum threatening to classify Plaintiff as "provisional" for alleged non-submission of an Abilities Transcript, also issued under the same leadership (*Exhibit J*).

47. **Unprecedented Scope and Timing**

These simultaneous disciplinary, financial, and academic sanctions were unprecedented in Plaintiff's experience as a graduate student and occurred immediately following protected complaints to University leadership.

48. **Retaliatory Coordination and Causal Nexus**

The temporal proximity and collective participation of Drs. Holmes, Barnard, Rosenthal, and Yang demonstrate a coordinated retaliatory effort under color of state law, intended to punish Plaintiff for asserting rights under the *ADA*, *Section 504*, *First*, and *Fourteenth Amendments*.

## M. Second Adverse Action – First Amendment Violation and Denial of Due Process

49. **Issuance of the Disciplinary Memorandum.**

On **June 30, 2025**, Defendants Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal, with Department Chair Dr. Yi Yang's concurrence, jointly authored and circulated a disciplinary memorandum accusing Plaintiff of "disruption" during another student's thesis defense. The memorandum, issued without notice or discussion, recommended that Plaintiff be placed on probation.

*(See Exhibits G–H.)*

50. **Allegation of Misconduct Without Prior Notice**

26

The memorandum alleged that Plaintiff's participation at the **June 25, 2025** thesis defense violated "collegial" standards. However, no complaint, concern, or discussion of misconduct had occurred at any time before this memorandum. The **June 30** correspondence marked the first notice Plaintiff received of any alleged issue.

51. **Plaintiff's Conduct at the Thesis Defense**

During the **June 25 defense**, Plaintiff's conduct was limited to posing academically relevant and professional questions during the open Q&A session—consistent with University norms encouraging scholarly dialogue. The memorandum offered no evidence that Plaintiff interrupted, disrupted, or otherwise interfered with the event.

52. **Vagueness and Lack of Factual Basis**

The memorandum cited only a general expectation of "collegiality," identifying no specific statements, gestures, or behaviors constituting disruption. It further asserted, without substantiation, that Plaintiff's participation *"undermined the integrity of the academic process."* No witnesses were identified, and no factual record supported this claim.

## N. University's Mandatory Disciplinary Procedures and Defendants' Noncompliance

53. **Mandatory Procedures Established by the M Book**

The University of Mississippi's official student conduct code—the M Book—establishes the exclusive and mandatory process for initiating and adjudicating any academic disciplinary action. It provides, in relevant part:

> *"Seek to discuss the alleged violation with the student as soon as possible and give the student an opportunity to explain.*
>
> *If the faculty member still believes the student committed an act of academic dishonesty after discussing the matter with the student, the faculty member may recommend an appropriate sanction...*

*Initiating an academic discipline case requires the person initiating the case to provide a written report of the alleged incident, including information regarding the communications with the student described above, as well as indicate the recommended sanction. The faculty member also is asked to indicate whether the student accepted the sanction...*

*The student may challenge the sanction recommended by a faculty member by submitting a written appeal within 14 calendar days, which shall be reviewed by the Academic Discipline Committee, composed of faculty, staff, and students." (**Exhibit Z11 – M Book disciplinary procedures**).*

## 54. Required Steps Prior to Any Sanction

Under these rules, no disciplinary sanction—such as probation—may be imposed unless:

i) the faculty member first discusses the alleged conduct with the student and provides an opportunity to respond;

ii) a written report is prepared detailing the incident and the recommended sanction;

iii) the student is advised whether they accept or contest the proposed sanction; and

iv) only then may the matter proceed to appeal before the Academic Discipline Committee.

These steps are mandatory procedural safeguards ensuring fairness and protecting students' due-process rights under University policy and the **Fourteenth Amendment**.

## 55. Defendants' Complete Departure from Required Procedures

Defendants Drs. Erin Holmes, Marie Barnard, Meagen Rosenthal, and Yi Yang disregarded each of these required steps. Plaintiff was never contacted for discussion, never provided a written report, and never asked to indicate whether he accepts or rejects the proposed sanction. Instead, he received an after-the-fact memorandum dated **June 30, 2025**, vaguely accusing him of "disruption" without identifying any specific conduct or evidence. This total departure from the M Book's mandatory procedures—and from basic notice and hearing requirements under the Due Process Clause—rendered the disciplinary action procedurally invalid and unconstitutional.

O. **Third Adverse Action – Pretextual and Retaliatory Non-Renewal**

56. **Issuance of Non-Renewal Memorandum**

On **June 30, 2025**, Defendant Dr. Yi Yang, in her capacity as Department Chair, issued a memorandum notifying Plaintiff that his Graduate Research Assistantship (GRA) would not be renewed for the **2025–2026** academic year. The notice was issued within minutes of two other adverse actions—disciplinary probation and a provisional-status warning—each dated the same day.

(*Exhibits F, I.*)

57. **Absence of Any Documented Basis.**

Dr. Yang's memorandum cited only an unspecified "faculty recommendation" as justification for non-renewal, providing no explanation, documentation, or evaluative record identifying the recommending faculty or their rationale. This lack of transparency rendered the action arbitrary and inconsistent with University policy governing graduate employment.

58. **Conflict with Plaintiff's Record of Performance**

At the time of non-renewal, Plaintiff had served as a Graduate Research Assistant for over four years with an unblemished record. He had received no warnings or negative evaluations, and had recently received commendation of his research contributions.

(*Exhibit Z7 – Faculty Commendations for Assistantship Performance*).

59. **Evidence of Pretext and Retaliation**

The abrupt reversal—from documented faculty praise to non-renewal—occurred without intervening events or cause, immediately following Plaintiff's protected complaints regarding disability accommodation and procedural violations. The timing and absence of justification indicate the decision was pretextual and retaliatory, not performance-based.

P. **Fourth Adverse Action – Retaliatory "Provisional Status" Warning**

60. **Issuance of the Third Same-Day Adverse Action.**

Also on **June 30, 2025**, Defendant Dr. Marie Barnard, acting in her capacity as Graduate Program Coordinator, issued a memorandum warning that Plaintiff would be reclassified as a "provisional student" for allegedly failing to submit an Abilities Transcript (AT). This notice was part of a coordinated series of three same-day adverse actions that also included the probation memorandum and assistantship non-renewal.

(*Exhibit J – June 30, 2025 Memorandum.*)

61. **Misrepresentation of the Abilities Transcript**

Dr. Barnard's memorandum mischaracterized the AT as a "non-coursework academic performance expectation," implying that its non-submission constituted an academic deficiency. In reality, the Department had formally designated the AT as a developmental and non-evaluative mentoring tool, not a condition of academic standing or progression.

62. **University Definition and Policy Context.**

According to University materials, the AT is a formative self-assessment and mentoring instrument, designed solely to guide professional reflection and faculty-student dialogue. It carries no evaluative or disciplinary function and is not linked to enrollment or progression decisions.

(*Exhibit Z9 – Abilities Transcript Guide and Form.*)

63. **Policy Misuse and Retaliatory Intent**

Defendants Drs. Barnard and Yi Yang nonetheless invoked the AT as a basis for punitive reclassification, converting a mentoring document into an unauthorized instrument of

discipline. This misuse contradicted University policy, lacked any procedural foundation, and occurred immediately following Plaintiff's protected complaints, evidencing retaliatory motive.

## Q. Deliberate Indifference, Administrative Barriers, and Coercive Enforcement of the Abilities Transcript

### 64. Plaintiff's Good-Faith Intent

Plaintiff consistently affirmed his willingness to complete the Abilities Transcript (AT). He acknowledged the AT's developmental purpose and sought to engage in it collaboratively and in good faith.

### 65. Administrative and Accommodation Barriers

By **June 30, 2025**, Plaintiff's ability to submit the AT was obstructed by unresolved procedural disputes and unimplemented disability accommodations. Defendants Drs. Yi Yang, and Marie Barnard failed to engage in the interactive process required by *Title II* of the ADA and *Section 504*, making any coerced completion inconsistent with both the AT's purpose and federal law.

### 66. Compounding Impact on Access and Progress

These same procedural and accommodation failures had already delayed Plaintiff's comprehensive examination. The **June 30** provisional-status warning compounded the harm by penalizing Plaintiff for barriers outside his control, thereby impairing his academic progression and equal access to education.

### 67. Defendants' Knowledge of Barriers.

Department Chair Dr. Yi Yang and Graduate Dean Dr. Annette Kluck were copied on correspondence between **April** and **June 2025** documenting these ongoing barriers. They were

31

on actual notice that Plaintiff's non-submission resulted from unresolved accommodation and procedural disputes, not neglect.

(*Exhibits B and C – Departmental and Graduate School Correspondence.*)

68. **Retaliatory and Coercive Issuance of the June 30 Memorandum**

Despite this knowledge, Defendants Drs. Barnard and Yang, with Dean Kluck's acquiescence, issued a memorandum threatening to downgrade Plaintiff's status to "provisional." The memorandum ignored exculpatory facts, misrepresented the AT as an academic requirement, and functioned as a retaliatory sanction.

R. **Plaintiff's Formal Rebuttals to the June 30 Sanctions**

69. **Immediate Objections to Sanctions**

After receiving the **June 30, 2025** sanctions, Plaintiff promptly objected, citing lack of notice, absence of factual basis, and the Department's failure to follow the mandatory disciplinary procedures required by the M Book and related University policies.

70. **Written Rebuttals to the Provost**

On **July 7** and **July 15, 2025**, Plaintiff submitted detailed rebuttal letters to Provost Dr. Noel Wilkin, disputing the sanctions as factually unsupported, procedurally defective, and retaliatory.

(*Exhibits L and N.*)

71. **Request for Procedural Compliance Before Appeal**

In both letters, Plaintiff stated his willingness to pursue a formal appeal only if the University first complied with its own due-process obligations by:

    i)   providing notice of the specific charges and underlying facts;

ii) identifying the specific University rule or policy allegedly violated; and

iii) disclosing the evidence or reports forming the basis of the sanctions.

## S.  Illusory Appeal Process and Denial of Fundamental Fairness

## 72.  Failure to Remedy Procedural Defects

After Plaintiff's **July 7, 2025** rebuttal, Assistant Provost Dr. Jennifer Simmons instructed him to proceed with the appeal immediately, without curing the procedural defects he had identified. This directive forced Plaintiff to defend himself against undefined allegations and effectively shifted the University's due-process obligations onto the student.

(*Exhibit M – July 7, 2025 Correspondence.*)

## 73.  Presumption of Guilt by Administrative Ratification

In the same message, Dr. Simmons wrote that "*the sanction is a warning not to repeat the behavior described,*" thereby presuming misconduct before any hearing or factual review. This language ratified the departmental finding and denied Plaintiff the minimum safeguards required by the M Book and the *Fourteenth Amendment*, including factual notice, identification of violated rules, and disclosure of supporting evidence.

## 74.  Compelled Appeal Without Notice or Evidence

Plaintiff was required to appeal "blind," without knowing the charges or evidence against him. By compelling an uninformed appeal and affirming the underlying sanction, Dr. Simmons— acting in her official capacity—perpetuated the Department's procedural violations at the Provost level, depriving Plaintiff of a meaningful opportunity to be heard.

## 75.  Burden Shifting and Inversion of Due Process

33

These actions effectively reversed the burden of proof, requiring Plaintiff to disprove vague accusations while relieving the Department of its duty to provide written notice or evidence. This inversion contravenes clearly established due-process principles governing academic discipline.

76. **Systemic Denial of Fair Process**

By withholding notice, evidence, and procedural clarity, the University rendered its appeal mechanism illusory and constitutionally inadequate. Plaintiff was denied a fair opportunity to defend his academic status and reputation, in violation of University policy and the *Fourteenth Amendment's* Due Process Clause.

77. **Retaliatory Context and Lack of Neutral Review**

On **July 15, 2025**, Plaintiff submitted a detailed rebuttal to the Office of the Provost outlining retaliatory motives behind the **June 30** sanctions, following his protected ADA and procedural complaints. Instead of ensuring an impartial review, Dr. Simmons referred the matter back to Department Chair Dr. Yi Yang—a directly implicated actor—guaranteeing a conflicted and biased review.

(*Exhibits N and O.*)

78. **Institutional Bias and Deliberate Indifference**

By referring the retaliation complaint to an involved official, the provost's office demonstrated deliberate indifference to Plaintiff's statutory and procedural rights, violating *Title II* of the ADA, *Section 504*, and the *Fourteenth Amendment*.


T. **Fifth Adverse Action — Escalation Without Due Process and Misrepresentation by Registrar's Office**

34

79. **Department's June 30, 2025 Probation Recommendation.**

On **June 30, 2025**, Defendants Drs. Holmes, Barnard, and Rosenthal recommended that Plaintiff be placed on one semester of probation based on an unsubstantiated allegation of "disruption" during a thesis defense. The memorandum identified no evidence, witnesses, or specific policy, violating the M Book and the *Fourteenth Amendment's* notice and response requirements.

(*Exhibit H.*)

80. **Arbitrary Escalation by Registrar's Office**

On **August 5, 2025**, the University Registrar's Office unilaterally escalated the probation from one semester to indefinite duration for the remainder of Plaintiff's enrollment. The escalation was issued without new evidence, explanation, or opportunity to respond, and directly contradicted the Department's original recommendation.

(*Exhibit R.*)

81. **Misrepresentation of Appeal Rights**

The Registrar's letter falsely claimed Plaintiff had "*failed to appeal within 14 days,*" despite his timely objections and repeated requests for basic due-process prerequisites—notice of charges, citation of specific rules, and disclosure of evidence.

(*Exhibits L, N, and M.*)

This misrepresentation rendered the appeal process illusory, as Plaintiff could not meaningfully contest a sanction never properly noticed or defined.

82. **University's Knowledge of Appeal Barriers**

On **July 10, 2025**, Assistant Provost Dr. Jennifer Simmons acknowledged that the administration was aware of Plaintiff's intent to appeal and the procedural barriers preventing him from doing so, yet no corrective action followed.

(***Exhibit M.***)

The University's inaction, despite actual notice, effectively blocked Plaintiff's access to a meaningful appeal.

## U. Sixth Adverse Action — Status Downgrade Pretextual, Retaliatory, and Lacking Due Process

83. **Issuance of New Sanction Without Process**

On **August 21, 2025**, just sixteen days after the University escalated Plaintiff's probation to an indefinite term, Graduate Program Coordinator Dr. Marie Barnard issued a new memorandum recommending that Plaintiff be downgraded from full to provisional academic status. The downgrade was imposed without legitimate cause, constituting a separate disciplinary sanction outside any established procedure.

(***Exhibit Z3 – August 21, 2025 Memorandum.***)

84. **Unprecedented and Unsubstantiated Conditions**

The memorandum imposed a series of new and unauthorized conditions, including:

    i)   submission of an Abilities Transcript by September 30, 2025;

    ii)  weekly advisor meetings;

    iii) submission of a draft dissertation; and

    iv) completion of professional development activities.

These requirements had never been documented as deficiencies and lacked academic basis.

85. **Lack of Supporting Academic Record**

Plaintiff had received no warnings indicating any academic or professional deficiencies that could justify such severe sanction. The memorandum therefore created the false appearance of deficiency and misrepresented the factual basis for the downgrade.

86. **Creation of a False Record of Deficiency.**

The new conditions were retrospective justifications for earlier unlawful actions—specifically, the memorandum threatening status downgrade based on a mentoring and non-evaluative document—designed to legitimize sanctions imposed without due process or evidentiary support. The timing and content of Dr. Barnard's memorandum confirm a continuing pattern of retaliation and procedural manipulation.

V. **Seventh Adverse Action — Ratification in Violation of Due Process and Policy**

87. **Ratification of Departmental Downgrade Without Procedural Compliance**

On **August 22, 2025**, Defendant Dr. Annette Kluck, Dean of the Graduate School, acting in her individual and official capacities, ratified the Department's recommendation to downgrade Plaintiff's academic status from full to provisional.

This decision, conveyed in a formal letter to Plaintiff, was taken without evidence of faculty review, or documented academic deficiency, and thereby bypassed the mandatory safeguards outlined in the University's Graduate Academic Status Policy.

(*Exhibit Z4 – August 22, 2025 Letter.*)

88. **Governing Graduate Academic Status Policy**

The University's published policy, incorporated by reference in Dean Kluck's letter, provides in relevant part:

37

*"In addition to graded courses, a graduate student is expected to pass examinations and perform research or other creative activities. A student may be dismissed from a graduate program if he or she fails to meet such expectations of the program.*

*Departments/programs may establish non-course related academic performance expectations, such as whether or not a comprehensive examination may be repeated or timelines for research accomplishment or the successful completion of examinations.*

*The advisor, graduate program coordinator, or department chair must provide reasonable warning to the student, in writing, about academic performance deficiencies. Typically, these warnings would occur as part of a periodic review process for students in the program.*

*An appropriate faculty group, which may be the student's advisory committee or the graduate education committee of a department/program, may recommend dismissal or change in the admission status of a student.*

*This recommendation shall be forwarded by the graduate program coordinator or department chair to the Graduate Dean and to the affected student with an indication whether the chair or program coordinator concurs with the faculty recommendation.*

*The Graduate Dean will act on the faculty recommendation and inform the student and the graduate program coordinator or department chair of the action taken.*

*Ordinarily, dismissal or change of status for failure to meet non-coursework academic performance expectations would take effect between semesters or enrollment periods."*

**(Exhibit AA** *– University Graduate Academic Status Policy.)*

## 89. Mandatory Preconditions Ignored

This policy establishes clear, sequential requirements for any status change:

i)   a written notice identifying a specific academic deficiency;

ii)  a formal recommendation from a faculty group (advisory or graduate committee);

iii) written concurrence by the department chair or coordinator; and

iv)  timing "between semesters" to avoid disruption of enrollment, funding, or visa compliance.

None of these requirements were met.

## 90. Violation of Timing Requirement

Despite policy language requiring such changes to occur between semesters, Dean Kluck ratified the downgrade on **August 22, 2025**, after the **Fall 2025** semester had begun.

38

The downgrade immediately affected Plaintiff's academic status, assistantship funding, and visa eligibility—constituting an arbitrary and procedurally defective action under both University policy and the *Fourteenth Amendment*.

91. **Selective Quotation and Omission of Safeguards**

In her **August 22** letter, Dean Kluck cited the same policy but selectively omitted its due-process protections. She wrote:

> *"Your academic program faculty, via the Graduate Program Coordinator, submitted a recommendation to change your admission status to provisional on August 21, 2025.*
>
> *The relevant policy can be found at*
>
> *https://policies.olemiss.edu/ShowDetails.jsp?istatPara=1&policyObjidPara=11142506.*
>
> *The policy states,*
>
> *'Departments/programs may establish non-course related academic performance expectations...,'*
>
> *'The advisor, graduate program coordinator, or department chair must provide reasonable warning to the student, in writing...,'*
>
> *and 'An appropriate faculty group, which may be the student's advisory committee or the graduate education committee of a department/program, may recommend dismissal or change in the admission status of a student."*
>
> *(Exhibit Z4 – August 22, 2025 Letter.)*

By selectively quoting the policy while omitting its mandatory academic performance deficiency warning, timing provisions, and evidence of faculty review, Dean Kluck demonstrated actual knowledge of the requirements and a willful decision not to follow them, constituting deliberate indifference to Plaintiff's due-process rights.

92. **Ratification Without Faculty Authorization or Evidence**

Rather than verifying compliance with required faculty review, Dean Kluck ratified a downgrade initiated solely by Defendants Dr. Barnard and Dr. Yang, with no documentation or supporting evidence.

This action converted a procedurally void departmental recommendation into an official Graduate School decision, compounding earlier due-process violations and institutionalizing the unlawful sanction.

93. **Adverse Impact and Retaliatory Context**

The downgrade immediately disrupted Plaintiff's academic standing, terminated assistantship funding eligibility, and placed his lawful F-1 visa status at risk.

Rather than addressing Plaintiff's pending accommodation and due-process concerns, Defendants escalated sanctions, demonstrating a continuing pattern of retaliation and disregard for procedural fairness.

## IV. CLAIMS FOR RELIEF

**COUNT I** — VIOLATION OF SECTION 504 OF THE REHABILITATION ACT AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT

**Against:**

The University of Mississippi; Dr. Yi Yang, Dr. Marie Barnard, and Dr. Annette Kluck

(*in their individual capacities for damages and in their official capacities for prospective injunctive relief under Ex parte Young, 209 U.S. 123 (1908)*).

**Legal Basis:**

*29 U.S.C. § 794; 42 U.S.C. § 12132.*

## A. Covered Entity and Responsible Officials

1. The University of Mississippi ("the University") is a public institution of higher education and a political subdivision of the State of Mississippi. It receives federal financial assistance within the meaning of *29 U.S.C. § 794(b)* and is therefore subject to the mandates of *Section 504 of*

*the Rehabilitation Act* and *Title II of the Americans with Disabilities Act*, together with their implementing regulations, *34 C.F.R. Part 104* and *28 C.F.R. Part 35*.

2. At all relevant times, the University acted through its authorized officers, employees, and agents, including the individually named Defendants, each of whom exercised administrative authority over the Plaintiff's academic progress, comprehensive examination process, and graduate assistantship employment.

3. Defendant Dr. Yi Yang, Chair of the Department of Pharmacy Administration, held supervisory and administrative responsibility for graduate student progress, program compliance, and assistantship continuation. Acting under color of state law, Dr. Yang possessed final authority within the Department to recommend, implement, or enforce disciplinary measures, academic status changes, and assistantship determinations directly affecting Plaintiff.

4. Defendant Dr. Marie Barnard, serving as Graduate Program Coordinator, shared administrative responsibility for implementing departmental policies, monitoring student performance, and serving as the primary point of communication regarding comprehensive examinations and accommodations. Acting under color of state law, Dr. Barnard directly participated in, approved, and communicated decisions materially affecting Plaintiff's academic and employment standing.

5. Defendant Dr. Annette Kluck, Dean of the Graduate School, exercised institutional oversight and appellate authority over graduate programs, including review of departmental disciplinary actions and enforcement of University policies related to academic fairness and disability compliance. She possessed both the authority and the obligation to correct procedural and statutory violations brought to her attention.

41

6. At all relevant times, Drs. Yang, Barnard, and Kluck were acting within the scope of their employment and under color of state law. Their conduct in denying accommodations, ratifying noncompliance, and approving retaliatory measures constitutes official action attributable to the University for purposes of liability under *Section 504* and *Title II*.

7. The University, through these officials, bore responsibility for ensuring compliance with federal disability statutes and for maintaining nondiscriminatory academic procedures. The failures and omissions of Defendants Drs. Yang, Barnard, and Kluck are therefore imputed to the University as the covered entity under *Section 504* and *Title II*.

B. **Qualified Individual with a Disability**

8. Plaintiff is a qualified individual with a disability within the meaning of *Section 504* and *Title II*. He has a documented mental-health condition that substantially limits major life activities, including concentration, emotional regulation, and sleep. Despite these limitations, Plaintiff has at all times remained academically qualified to continue in the University's Ph.D. program in Pharmacy Administration when provided an equal opportunity to participate.

C. **Failure to Engage in the Interactive Process**

9. On **April 27** and **April 28, 2025**, Plaintiff transmitted formal written requests for reasonable academic accommodations and procedural safeguards related to his upcoming **June 2025** comprehensive examination to Defendants Dr. Yi Yang and Dr. Marie Barnard (*Exhibits A–B*). Both Drs. Yang and Barnard failed to initiate any individualized evaluation or refer the matter to Student Disability Services ("SDS") as required by *34 C.F.R. § 104.44(d)* and *28 C.F.R. § 35.130(b)(7)*.

42

10. Despite being on actual notice of Plaintiff's mental-health-related disability and the specific accommodations requested, Defendants Drs. Yang and Barnard failed to initiate the mandatory interactive process. Instead, they informed Plaintiff that his examination would proceed "*in accordance with the department's established procedures*," effectively denying his request without discussion, or exploration of alternatives.

11. Between **April 27** and **May 9, 2025**, neither Defendant engaged SDS, consulted with a disability coordinator, nor coordinated with any qualified University personnel to assess or implement accommodations. This omission violated federal regulatory requirements mandating individualized assessment.

12. Federal law does not require a student to use "*magic words*" to invoke the right to accommodation. Plaintiff's detailed communications described the nature of his mental-health condition, identified the procedural context in which it impeded performance, and requested flexibility and policy-guided safeguards—language that plainly satisfied the legal threshold for notice under *Section 504* and *Title II*.

13. By failing to engage, or refer the matter for proper evaluation, Defendants Drs. Yang and Barnard acted with deliberate indifference to Plaintiff's federally protected rights, depriving him of equal access to the academic environment and necessary procedural protections.

D. **Deliberate Indifference and Ratification by Graduate School Leadership**

14. On **May 9, 2025**, following the Department's nonresponse, Plaintiff escalated his concerns to Dean Annette Kluck, seeking Graduate School review of the Department's refusal to comply with disability procedures (***Exhibit C – May 9, 2025 Escalation***). Plaintiff attached his prior

43

correspondence, providing the Dean with complete notice of his disability disclosure, accommodation requests, and the Department's inaction.

15. On **June 2, 2025**, Dean Kluck issued a formal letter expressly affirming the Department's approach without modification (***Exhibit E – June 2, 2025 Response***). Her letter adopted the Department's actions as "*appropriate,*" declined to require procedural safeguards, and instructed Plaintiff merely to contact SDS if he wished to pursue accommodations—without addressing the Department's failure to do so in **April**.

16. By **June 2, 2025**, Dean Kluck possessed actual knowledge that Plaintiff (a) had requested reasonable accommodations, and (b) had been denied access to the required process. Despite her authority to intervene, she took no corrective action or investigation.

17. This sequence constitutes deliberate indifference under ***Section 504*** and ***Title II***. Dean Kluck knowingly ratified departmental violations and permitted discriminatory inaction to persist, transforming an administrative omission into a University-endorsed denial of accommodation.

## E. **Retaliation for Protected Activity**

18. Beginning in **May 2025**—immediately after Plaintiff's escalation to Dean Kluck—and continuing through **June 2025**, Defendants Drs. Yi Yang and Marie Barnard, acting in concert with other University administrators, undertook a series of materially adverse actions in close temporal proximity to Plaintiff's protected activity. These included:

   i) The **June 30, 2025** "*Probation Memorandum,*" co-signed by Drs. Erin Holmes, Barnard, and Rosenthal, which falsely alleged "*disruptive behavior*" and recommended disciplinary sanction without notice or hearing;

44

ii) The termination of Plaintiff's Graduate Research Assistantship, effective **August 15, 2025**, resulting in loss of income, tuition remission, and health insurance; and

iii) A recommendation to downgrade Plaintiff to *"provisional status,"* further threatening his enrollment and visa eligibility.

19. Each action occurred within weeks of Plaintiff's disability-related advocacy—including his **April–May** accommodation requests, **May 9** escalation, and **June** follow-ups—creating a strong inference of causation under *28 C.F.R. § 35.134(a)* and *34 C.F.R. § 104.61*.

20. The cited disciplinary rationale (*"disruptive behavior"*) lacked factual foundation, contemporaneous documentation, or procedural review, evidencing pretext and retaliatory motive rather than legitimate academic evaluation.

21. The timing and coordination of these actions demonstrate that Defendants retaliated against Plaintiff for exercising rights protected by *Section 504* and *Title II*, causing tangible academic, financial, and emotional harm.

F. **Resulting Harm and Deliberate Indifference**

22. As a direct and proximate result of Defendants' conduct, Plaintiff was denied an equal opportunity to participate in and benefit from the University's academic programs and services. The refusal to engage in the interactive process and to implement reasonable accommodations caused Plaintiff to lose access to a required program milestone, forfeit assistantship funding and benefits, and sustain severe setbacks to academic progress and professional standing.

23. Defendants' conduct also caused non-economic harm, including reputational damage, emotional distress, and psychological strain from prolonged exclusion and uncertainty.

24. Each Defendant acted with actual knowledge of Plaintiff's disability and their obligations under *Section 504* and *Title II* yet failed to intervene or correct discriminatory practices. This conscious disregard constitutes deliberate indifference, satisfying the standard for intentional discrimination under federal disability law.

25. Collectively, these actions deprived Plaintiff of the full and equal benefit of his education and assistantship opportunities in violation of *Section 504* and *Title II*.

## G. PRAYER FOR RELIEF — COUNT I (Section 504 and Title II of the ADA)

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

### A. Declaratory Relief

Declare that the actions and omissions of the University of Mississippi and the individually named Defendants violated Plaintiff's rights under:

i) *Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794*; and

ii) *Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132*, including their implementing regulations.

### B. Injunctive Relief (*Ex parte Young* Doctrine)

Enjoin Defendants, in their official capacities, from maintaining or enforcing any policy or practice that discriminates or retaliates against students with disabilities, and order:

i) Immediate restoration of Plaintiff's academic standing and Graduate Research Assistantship with all attendant benefits;

ii) Expungement of all retaliatory or discriminatory records, including the **June 30, 2025** Probation Memorandum and any "*provisional status*" notations;

46

iii) Provision of reasonable accommodations consistent with *Section 504* and *Title II*, including formal coordination with Student Disability Services; and

iv) Implementation of mandatory *ADA/504* training for all departmental and Graduate School administrators.

## C. Compensatory Damages

Award compensatory damages in an amount to be determined at trial for:

i)  Loss of educational opportunity and academic progression;

ii)  Emotional distress, humiliation, and reputational injury; and

iii) Financial losses arising from the termination of Plaintiff's assistantship and related benefits.

## D. Attorneys' Fees and Costs

Award reasonable attorneys' fees, expert witness fees, and costs pursuant to *42 U.S.C. § 12205* and *29 U.S.C. § 794a(b)*.

## E. Further Relief

Grant such other and further equitable or legal relief as this Court deems just and proper to remedy violations of *Section 504* and *Title II*.

## COUNT II — FIRST AMENDMENT VIEWPOINT DISCRIMINATION (Free Speech Clause)

**Against:**

The University of Mississippi; Dr. Yi Yang; Dr. Erin Holmes; Dr. Marie Barnard; Dr. Meagen Rosenthal; Dr. Annette Kluck; and Dr. Jennifer Simmons

*(in their individual capacities for damages and in their official capacities for prospective injunctive relief)*

**Legal Basis:**

47

42 U.S.C. § 1983; U.S. Const. amend. I; *Papish v. Bd. of Curators of the Univ. of Mo., 410 U.S. 667 (1973)*; *Healy v. James, 408 U.S. 169 (1972)*; *Keyishian v. Bd. of Regents, 385 U.S. 589 (1967)*.

A. **Protected Academic Expression**

26. On **June 25, 2025,** during a graduate thesis defense held within the Department of Pharmacy Administration, Plaintiff participated in the question-and-answer session and offered academic comments addressing theoretical distinctions in structural-equation modeling and model-fit interpretation.

27. Plaintiff's remarks were relevant to the academic topic, and confined to the scholarly subject matter, consistent with graduate-level standards of professional discourse.

28. The exchange occurred in a public academic forum sponsored by a state university, where inquiry and scholarly debate are integral to the institution's educational mission and protected under the ***First Amendment.***

29. Plaintiff's expression constituted core academic speech on matters of scholarly interpretation and falls squarely within the ***First Amendment's*** protection for intellectual inquiry and debate in higher education.


B. **Punishment for Constitutionally Protected Speech**

30. On **June 30, 2025,** five days after the **June 25** academic exchange, Defendants Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal authored and issued a memorandum recommending that Plaintiff be placed on disciplinary probation, alleging "disruption" of a thesis defense (***Exhibit H – June 30, 2025 Memorandum***).

31. The memorandum, transmitted by Dr. Holmes and forwarded by Department Chair Dr. Yi Yang to Dean Annette Kluck for institutional enforcement, contained no factual description, witness

statement, or supporting documentation substantiating the alleged misconduct (***Exhibit G – June 30, 2025 Email Thread***; ***Exhibit H – June 30, 2025 Memorandum***).

32. The only reference was a vague citation to a general clause in the University's M Book concerning "collegiality" and "professional standards," without identifying any specific violation or explaining how Plaintiff's comment constituted a breach of those standards.

33. The temporal proximity between Plaintiff's protected academic expression and the disciplinary sanction, combined with the complete absence of factual or procedural support, establishes a strong inference of retaliatory motive under *42 U.S.C. § 1983*.

34. On its face, the **June 30** memorandum reveals that Plaintiff was disciplined for the content and viewpoint of his academic remarks, not for any legitimate behavioral or pedagogical concern.

## C. Intent to Suppress Viewpoint

35. Upon information and belief, Defendants Drs. Holmes, Barnard, and Rosenthal intentionally omitted contextual detail from the **June 30, 2025** memorandum to obscure the academic and constitutionally protected nature of Plaintiff's remarks.

36. Despite multiple opportunities to clarify—including Plaintiff's written request for factual explanation to the Provost's Office (copied to Dean Kluck and relevant officials) and Defendants' subsequent briefing in support of their Motion to Dismiss—no Defendant has ever identified specific conduct constituting "disruption."

37. This continuing omission, both contemporaneously and in subsequent litigation filings, supports an inference of intentional concealment to sustain an unlawful disciplinary rationale and avoid acknowledging Plaintiff's expression as protected speech.

38. Defendants' actions targeted Plaintiff's viewpoint because his comments reflected a respectful academic disagreement with a faculty member—precisely the type of scholarly exchange safeguarded by *Papish, Healy,* and *Keyishian.*

39. The use of vague *"disruption"* and *"collegiality"* terminology to punish dissenting academic views constitutes content- and viewpoint-based discrimination, devoid of any legitimate educational justification.

## D. Ratification by Supervisory Officials

40. Defendant Dr. Yi Yang, as Department Chair, approved and transmitted the **June 30** probation memorandum and concurrently terminated Plaintiff's Graduate Research Assistantship, converting the recommendation into enforceable discipline (***Exhibit G – June 30, 2025 Email Thread; Exhibit H – June 30, 2025 Memorandum***).

41. After Plaintiff submitted written objections raising constitutional and procedural concerns, Dean Annette Kluck (Graduate School Dean) and Dr. Jennifer Simmons (Assistant Provost) took no corrective or investigatory action despite clear supervisory authority to review the sanction.

42. Neither Drs. Kluck nor Simmons required factual substantiation, requested documentation, or initiated any review to assess compliance with University or constitutional standards.

43. Their affirmative inaction—despite notice of the lack of factual support and ongoing harm— constituted ratification of the unconstitutional conduct and allowed the probation to remain in Plaintiff's academic file.

44. This administrative ratification transformed a departmental act of retaliation into institutional endorsement of viewpoint-based discrimination.

## E. Absence of Legitimate Pedagogical Purpose

45. At no point did any Defendant—including Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, or Simmons—identify a legitimate educational or pedagogical justification for labeling Plaintiff's academic comment as "disruptive."

46. The disciplinary measure was therefore purely punitive, imposed to deter academic dissent rather than to advance any legitimate academic function.

47. The selective invocation of vague "*professionalism*" and "*collegiality*" provisions to suppress scholarly disagreement underscores that the sanction was content- and viewpoint-motivated.

48. Established Supreme Court precedent makes clear that public-university officials may not discipline students for the content of protected academic expression, see *Keyishian*, *Papish*, and *Healy*.

49. The absence of legitimate pedagogical justification confirms that Defendants' actions were retaliatory, unreasonable, and constitutionally impermissible.


## F. Clearly Established Law and Qualified Immunity

50. At all relevant times, it was clearly established law that students at public universities enjoy full First Amendment protection for academic discourse and cannot be sanctioned for dissenting scholarly opinions.

51. Decisions such as *Keyishian*, *Healy*, and *Papish* had long provided fair warning that such conduct violates the Constitution.

52. Each Defendant—by virtue of their senior administrative roles—was presumed to be familiar with these constitutional principles and bound to uphold them.

51

53. No reasonable official in **2025** could have believed that disciplining a student for expressing a professional, scholarly viewpoint during an academic defense was lawful under the *First Amendment*.

54. The timing, lack of evidence, and absence of procedural safeguards underscore the objective unreasonableness of Defendants' actions, precluding qualified immunity.

## G. Resulting Injury

55. As a direct and proximate result of Defendants' conduct, Plaintiff's Graduate Research Assistantship was terminated effective **August 15, 2025**, causing loss of stipend, tuition remission, and health insurance—benefits essential to academic enrollment and visa maintenance.

56. The probation sanction, dated **June 30, 2025**, remains in Plaintiff's academic record, inflicting reputational harm and stigmatizing him as unprofessional without factual justification.

57. Plaintiff suffered emotional distress, anxiety, and withdrawal from academic engagement, stemming from uncertainty and stigmatization associated with the baseless discipline.

58. The retaliation produced a chilling effect on Plaintiff's willingness to engage in academic discourse, deterring participation in scholarly discussions and undermining his educational experience.

59. These harms were foreseeable and flowed directly from Defendants' coordinated suppression of protected academic expression.

## H. Constitutional Violation

60. By imposing disciplinary sanctions in direct response to the content and viewpoint of Plaintiff's academic remarks, Defendants Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, and Simmons, acting under color of state law, violated the Free Speech Clause of the First Amendment.

61. The **June 30, 2025** memorandum and its enforcement targeted Plaintiff not for disruption or misconduct, but for expressing an alternative scholarly interpretation during a public academic defense—speech central to the *First Amendment's* protection of academic discourse.

62. Defendants' actions suppressed intellectual inquiry, punished dissent, and chilled future academic expression, undermining the foundational principle of academic freedom.

63. By approving, transmitting, and enforcing the discipline without factual justification, each Defendant participated in an act of state-sponsored viewpoint discrimination.


I. **PRAYER FOR RELIEF — COUNT II (First Amendment – Viewpoint Discrimination)**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

A. **Declaratory Relief**

Declare that the actions of the University of Mississippi and Defendants Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, and Simmons, acting under color of state law, violated Plaintiff's *First Amendment* rights by imposing disciplinary sanctions based on the content and viewpoint of protected academic expression.

B. **Injunctive Relief (Official Capacity – *Ex parte Young*)**

Enjoin Defendants, in their official capacities, from maintaining or enforcing any disciplinary record or sanction arising from the **June 30, 2025** memorandum, and order:

i) Immediate expungement of all references to the alleged "disruption" or related disciplinary findings;

ii) Restoration of Plaintiff's full academic standing and Graduate Research Assistantship with all associated compensation and benefits; and

iii) Implementation of written safeguards prohibiting disciplinary action for protected academic expression, consistent with the *First Amendment* and binding precedent.

## C. Compensatory and Punitive Damages (Individual Capacities)

i) Award compensatory damages for loss of educational and professional opportunities, emotional distress, and reputational harm;

ii) Award punitive damages against the individual-capacity Defendants to deter future constitutional violations.

## D. Attorneys' Fees and Costs

Award reasonable attorneys' fees, expert witness fees, and litigation costs pursuant to *42 U.S.C. § 1988*.

## E. Further Relief

Grant such other and further equitable or legal relief as this Court deems just, proper, and necessary to vindicate Plaintiff's constitutional rights.

## COUNT III — RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES

**Against:**

The University of Mississippi; Dr. Yi Yang; Dr. Erin Holmes; Dr. Marie Barnard; Dr. Meagen Rosenthal; Dr. Annette Kluck; and Dr. Jennifer Simmons

(*in their individual capacities for damages and in their official capacities for prospective injunctive relief*)

**Legal Basis**:

*42 U.S.C. § 1983 (First Amendment – Speech and Petition Clauses); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; 34 C.F.R. § 104.61; 28 C.F.R. § 35.134(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).*

## A. Protected Activity and Defendants' Knowledge

64. Plaintiff incorporates by reference *Exhibit N – July 15, 2025 Formal Response to Assistantship Non-Renewal and Retaliation*, as though fully set forth herein.

65. Between **April** and **June 2025**, Plaintiff engaged in protected activity under the *ADA, Section 504*, and the *First Amendment* by:

    i) Submitting written accommodation requests to Defendants Drs. Yi Yang and Marie Barnard on **April 27–28, 2025**, detailing disability-related adjustments needed for equal participation;

    ii) Objecting in writing to procedural irregularities in his comprehensive exam, asserting violations of University policy and due-process safeguards; and

    iii) Filing formal complaints with Dean Annette Kluck and the Provost's Office on **May 9** and **June 2, 2025** (*Exhibits C and E*), alleging disability discrimination and procedural misconduct and requesting corrective review.

66. Each communication was distributed to or copied to Defendants Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, and Simmons, placing them on actual and constructive notice of Plaintiff's protected activity.

67. On **July 15, 2025**, Plaintiff submitted a formal response to the Provost (*Exhibit N*), copied to Defendants Drs. Kluck, Simmons, Yang, and Barnard, reiterating his accommodation requests

and procedural objections and identifying the **June 30** probation memorandum and assistantship termination as retaliatory.

68. By **mid-July 2025**, all Defendants had direct notice of Plaintiff's protected conduct under federal law but continued to enforce and ratify the disciplinary actions at issue.

69. Plaintiff's accommodation requests, grievances, and formal complaints constitute protected activity under *Title II*, *Section 504*, and the *First Amendment* because they sought redress for disability discrimination and violations of constitutional rights.

## B. Adverse Actions and Causation

70. On **June 30, 2025**—less than two months after Plaintiff's accommodation requests and five days after his formal complaints—Defendants Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal jointly issued a memorandum labeling Plaintiff "disruptive" and recommending probation (*Exhibit H*).

71. That same day, Defendant Dr. Yi Yang, as Department Chair, terminated Plaintiff's Graduate Research Assistantship effective **August 15, 2025**, revoking his stipend, tuition remission, and health insurance benefits essential to maintaining enrollment and visa status. The termination, issued without cause, reflected a coordinated response to Plaintiff's protected activity.

72. Also on **June 30**, Plaintiff received a memorandum threatening that his academic status would be downgraded to "provisional" for alleged non-submission of a non-evaluative mentoring form—further evidencing pretext and retaliatory escalation.

73. Following Plaintiff's written objections, Defendants Dean Annette Kluck and Assistant Provost Jennifer Simmons ratified the sanctions. Dr. Simmons compounded the harm by

directing Plaintiff back to the same individuals implicated in the retaliation, reflecting deliberate indifference to ongoing violations.

74. The temporal proximity between Plaintiff's protected conduct (**April–June 2025**) and the **June 30** disciplinary actions, coupled with the absence of any academic justification, establishes a strong inference of causation and retaliatory motive under *42 U.S.C. § 1983, 34 C.F.R. § 104.61*, and *28 C.F.R. § 35.134(a)*.

## C. Retaliatory Motive and Material Adversity

75. Defendants' actions had no legitimate academic or professional basis and were taken in direct response to Plaintiff's protected activities, including his requests for accommodations and objections to procedural irregularities. The close temporal sequence—from formal complaints in **May** and **June 2025** to sanctions on **June 30**—demonstrates coordinated retaliatory intent.

76. Under *Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)*, the stigmatizing "disruptive" label, threat of academic status downgrade, and termination of Plaintiff's Graduate Research Assistantship with loss of stipend, tuition remission, and health insurance constitute materially adverse actions that would deter a reasonable student from engaging in protected activity.

77. Indicators of pretext include: (a) Plaintiff's consistent academic excellence and positive evaluations weeks before the sanctions; (b) the absence of any documented misconduct or specific policy citation; and (c) Defendants' refusal to provide factual explanation when requested (*Exhibit N*).

78. Collectively, these facts establish that Defendants acted with retaliatory motive and without legitimate cause, violating Plaintiff's rights under the *First Amendment*, *Section 504*, and *Title II* of the ADA.

## D. Clearly Established Rights and Qualified Immunity

79. At all relevant times, it was clearly established that public university officials may not retaliate against individuals for exercising *First Amendment* rights or for requesting disability-related accommodations under federal law.

80. Federal regulations, including *34 C.F.R. § 104.61* and *28 C.F.R. § 35.134(a)*, expressly prohibit retaliation or interference with the exercise of rights secured by *Section 504* of the Rehabilitation Act and *Title II* of the ADA.

81. Longstanding First Amendment precedent—*Pickering v. Board of Education, 391 U.S. 563 (1968)*; *Papish v. Board of Curators, 410 U.S. 667 (1973)*; *and Healy v. James, 408 U.S. 169 (1972)*—clearly establishes that public institutions may not impose discipline or adverse actions in response to protected expression or petitioning activity.

82. Given their positions of authority, professional training, and statutory obligations, no reasonable administrator could have believed that disciplining a student for requesting accommodations, filing grievances, or challenging procedural irregularities was consistent with federal law.

83. Defendants' coordinated actions were objectively unreasonable and undertaken with deliberate or reckless disregard for Plaintiff's clearly established constitutional and statutory rights, thereby precluding qualified immunity.

### E. Resulting Harm and Statutory Violations

84. As a direct and foreseeable consequence of Defendants' retaliatory and coordinated actions, Plaintiff suffered:

    i) Termination of his Graduate Research Assistantship, resulting in the loss of income, tuition remission, and health-insurance coverage essential to maintaining enrollment and visa status;

    ii) Loss of good academic standing and professional advancement opportunities, including delayed research progress and exclusion from collaborative projects;

    iii) Reputational injury from the false and stigmatizing "disruptive" label, which remains in University records and continues to impair Plaintiff's credibility; and

    iv) Severe emotional distress, anxiety, and deterrence from engaging in future protected activity.

85. These injuries were directly caused by actions initiated by Defendants Drs. Holmes, Barnard, Rosenthal, and Yang and ratified by Defendants Drs. Kluck and Simmons, constituting unlawful retaliation in violation of *Section 504 of the Rehabilitation Act, Title II of the ADA,* and the *First Amendment*.

### F. PRAYER FOR RELIEF — COUNT III (Retaliation under the First Amendment, ADA Title II, and Section 504

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

### A. Declaratory Relief

Declare that the actions of the University of Mississippi and Defendants Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, and Simmons constituted unlawful retaliation in violation of the *First Amendment, Title II of the ADA*, and *Section 504 of the Rehabilitation Act*.

B. **Injunctive Relief (Official Capacity –** *Ex parte Young***)**

Order Defendants, in their official capacities, to:

    i) Expunge all references to the **June 30, 2025** probation memorandum and any related disciplinary notations from Plaintiff's academic and employment records;

    ii) Reinstate Plaintiff's Graduate Research Assistantship and academic standing, including restoration of stipend, tuition remission, health insurance, and all associated institutional benefits;

    iii) Implement and enforce institutional safeguards against retaliation, including mandatory *ADA/504* training and independent review of future disciplinary actions involving accommodation requests or protected expression; and

    iv) Establish appropriate monitoring mechanisms to ensure ongoing compliance with federal law.

C. **Compensatory and Punitive Damages (Individual Capacities)**

Award compensatory damages against the individual-capacity Defendants for loss of income, tuition remission, professional opportunities, and for emotional and reputational harm; and award punitive damages for their willful and reckless disregard of clearly established constitutional and statutory rights, to deter similar future misconduct.

D. **Attorneys' Fees and Costs**

Award Plaintiff reasonable attorneys' fees, expert-witness fees, and litigation costs pursuant to *42 U.S.C. §§ 12205* and *1988*.

### E. Further Relief

Grant such additional equitable or legal relief as this Court deems just and proper to fully remedy and redress the retaliation established herein.

## COUNT IV — VIOLATION OF PROCEDURAL DUE PROCESS

**Against**:

The University of Mississippi; Dr. Yi Yang, Dr. Erin Holmes, Dr. Marie Barnard, Dr. Meagen Rosenthal, Dr. Annette Kluck, and Dr. Jennifer Simmons

*(in their individual capacities for damages and in their official capacities for prospective injunctive relief)*

**Legal Basis**:

*42 U.S.C. § 1983 – Fourteenth Amendment* to the U.S. Constitution

### A. Protected Interests and State Action

86. The University of Mississippi is a public institution created under Mississippi law. Its officials—Defendants Drs. Yi Yang, Erin Holmes, Marie Barnard, Meagen Rosenthal, Annette Kluck, and Jennifer Simmons—acted under color of state law in administering graduate-program policies, imposing disciplinary measures, and terminating Plaintiff's Graduate Research Assistantship.

87. At all relevant times, Plaintiff possessed constitutionally protected property and liberty interests, including:

    i) Continued enrollment and good academic standing, which could not be altered without written notice and an opportunity to be heard before a neutral decisionmaker (*Goss v. Lopez, 419 U.S. 565, 579 (1975)*);

ii) Graduate Research Assistantship funding, encompassing stipend, tuition remission, and health-insurance benefits—interests creating a legitimate claim of entitlement protected by *Bd. of Regents v. Roth, 408 U.S. 564 (1972)*, and *Perry v. Sindermann, 408 U.S. 593 (1972)*; and

iii) Professional reputation and academic integrity, impaired when Defendants formally labeled Plaintiff "disruptive" in institutional records, constituting a stigma-plus deprivation under *Paul v. Davis, 424 U.S. 693 (1976)*.

88. These actions were taken pursuant to Defendants' official authority and therefore constitute state action within the meaning of the *Fourteenth Amendment*.

89. Having initiated actions that deprived Plaintiff of these protected interests, Defendants were required to provide prior notice, disclosure of evidence, and a meaningful opportunity to respond before an impartial decisionmaker.

90. By proceeding without those safeguards, Defendants—acting individually and jointly— deprived Plaintiff of rights secured by the *Fourteenth Amendment's* Due-Process Clause.

## B. Deprivation Without Notice or Hearing

91. On **June 30, 2025**, Defendants Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal jointly issued a memorandum labeling Plaintiff "disruptive" during a thesis defense and recommending probation (*Exhibit H*). The document cited no factual basis, witness statement, or specific University policy authority.

92. That same day, Defendant Dr. Yi Yang, as Department Chair, terminated Plaintiff's Graduate Research Assistantship effective **August 15, 2025**, revoking his stipend, tuition remission, and health insurance without any performance-related justification.

93. On **August 5, 2025,** University administrators—including Dr. Simmons—escalated the sanction from one semester to indefinite probation and attempted to retroactively validate a process already void for lack of due process by recharacterizing Plaintiff's written rebuttal as an "appeal."

94. These acts collectively deprived Plaintiff of property and liberty interests without notice, evidence disclosure, or a meaningful opportunity to be heard, in violation of clearly established procedural safeguards under *Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961),* and *Goss v. Lopez, 419 U.S. 565 (1975).*

## C. Ratification and Clearly Established Law

95. Between **July 1** and **July 15, 2025,** Defendants Drs. Annette Kluck, Jennifer Simmons, and Yi Yang—each holding supervisory or administrative authority—received Plaintiff's written complaints identifying the lack of notice, evidence, and impartial review in the disciplinary process (*Exhibits L–O*).

96. Despite actual notice of these procedural defects, Defendant Dr. Kluck, as Dean of the Graduate School, and Defendant Dr. Simmons, as Assistant Provost, ratified the sanctions rather than directing corrective action or reinstating Plaintiff's status.

97. Defendant Dr. Yang separately approved the reclassification of Plaintiff's academic standing to "provisional," and Defendant Dr. Kluck endorsed that decision, despite its departure from University policy.

98. By endorsing and implementing actions known to violate basic procedural safeguards, Defendants elevated departmental misconduct to institutionally sanctioned constitutional deprivation under color of state law.

99. Given their professional experience and official responsibilities, no reasonable administrator could have believed that upholding sanctions imposed in violation of procedural safeguards was consistent with the *Fourteenth Amendment's* Due Process Clause.

### D. Resulting Harm

100. As a direct and foreseeable consequence of the actions taken by Defendants Drs. Erin Holmes, Marie Barnard, Meagen Rosenthal, Yi Yang, Annette Kluck, and Jennifer Simmons, Plaintiff sustained the following injuries:

   i) Loss of Graduate Research Assistantship stipend, tuition remission, and health insurance—benefits essential to maintaining enrollment and lawful F-1 visa status;

   ii) Loss of good academic standing, resulting in delayed progress and exclusion from professional opportunities;

   iii) Reputational stigma from the unsupported "disruptive" label, which remains in University records and continues to impair Plaintiff's credibility within the academic and professional community; and

   iv) Emotional and psychological harm, including anxiety and deterrence from engaging in protected academic or petitioning activity.

101. These injuries were the direct and proximate result of Defendants' coordinated actions in imposing and ratifying sanctions without notice, evidence, or impartial hearing—conduct that deprived Plaintiff of protected property and liberty interests in violation of the *Fourteenth Amendment* and *42 U.S.C. § 1983*.

### E. PRAYER FOR RELIEF — COUNT IV (Procedural Due Process)

64

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

A. **Declaratory Relief**

Declare that Defendants Drs. Erin Holmes, Marie Barnard, Meagen Rosenthal, Yi Yang, Annette Kluck, and Jennifer Simmons, acting under color of state law, violated Plaintiff's *Fourteenth Amendment* right to procedural due process by imposing and ratifying disciplinary and employment sanctions without prior notice, disclosure of evidence, or a meaningful opportunity to be heard before a neutral decisionmaker.

B. **Injunctive Relief (Official Capacity – *Ex parte Young*)**

Order Defendants, in their official capacities, to:

i) Rescind and expunge the **June 30, 2025** probation memorandum, the "disruptive" designation, and all related disciplinary or evaluative records from Plaintiff's academic and employment files;

ii) Reinstate Plaintiff's Graduate Research Assistantship and academic standing, including full restoration of stipend, tuition remission, health insurance, and other institutional benefits; and

iii) Adopt and implement procedural safeguards ensuring that future disciplinary or employment actions against graduate students include:

(1) Written notice of specific allegations;

(2) Disclosure of all evidence relied upon; and

(3) A fair hearing before an impartial decisionmaker.

C. **Compensatory and Punitive Damages (Individual Capacities)**

Award Plaintiff:

    i) Compensatory damages for loss of income, tuition remission, and health benefits;

    ii) Damages for reputational injury, lost professional opportunities, and emotional distress; and

    iii) Punitive damages against the individual-capacity Defendants for their willful and reckless disregard of clearly established constitutional and policy-based rights.

D. **Attorneys' Fees and Costs**

Award Plaintiff reasonable attorneys' fees, expert witness fees, and litigation costs pursuant to *42 U.S.C. § 1988* and other applicable statutory authority.

E. **Further Relief**

Grant such additional legal or equitable relief as the Court deems just, proper, and necessary to fully remedy the procedural due-process violations alleged herein.

## COUNT V — VIOLATION OF SUBSTANTIVE DUE PROCESS

**Against**:

The University of Mississippi; Dr. Yi Yang; Dr. Erin Holmes; Dr. Marie Barnard; Dr. Meagen Rosenthal; Dr. Annette Kluck; and Dr. Jennifer Simmons

(*in their individual capacities for damages and in their official capacities for prospective injunctive relief*)

**Legal Basis**:

*42 U.S.C. § 1983 – Fourteenth Amendment*, Substantive Due Process Clause

A. **Arbitrary and Conscience-Shocking Conduct**

102. On **June 30, 2025**, Defendants Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal jointly issued a departmental memorandum labeling Plaintiff "disruptive" during a thesis

defense and recommending disciplinary probation (***Exhibit H***). The memorandum contained no factual description of the alleged conduct, identified no witnesses, and cited no specific policy violation.

103. That same day, Defendant Dr. Yi Yang, acting as Department Chair, issued written notice terminating Plaintiff's Graduate Research Assistantship ("GRA") effective **August 15, 2025**. All Defendants knew the GRA was Plaintiff's sole lawful means of financial support and the foundation of his F-1 visa compliance. Its termination—without cause, or documented performance deficiency—foreseeably resulted in loss of stipend, tuition remission, and health insurance, thereby jeopardizing Plaintiff's enrollment, immigration status, and academic continuity.

104. Also on **June 30, 2025,** Plaintiff received a separate departmental notice indicating that his academic standing would be downgraded to "provisional" based on alleged non-submission of the "Abilities Transcript," a mentoring document expressly designated by University policy as non-evaluative and developmental in nature.

105. On **August 5, 2025**, University administrators, including Defendant Dr. Jennifer Simmons, extended Plaintiff's probation from one semester to the entirety of his enrollment and attempted to retroactively validate a process that was void from the outset by classifying his written rebuttal as an "appeal."

106. On **August 21–22, 2025,** Defendants Drs. Barnard, Yang, and Kluck implemented the threatened downgrade by formally reclassifying Plaintiff's standing to "provisional" and converting the Abilities Transcript into a disciplinary instrument—contrary to its stated purpose and in direct violation of University policy.

107. The cumulative imposition of probation, its unauthorized extension, assistantship termination, threatened and actual status downgrade, and the stigmatizing "disruptive" label all occurred without process. These actions collectively represented an extreme departure from established academic norms and the University's mandatory procedural safeguards.

108. For over sixty years, it has been clearly established that public universities must follow their own procedures before depriving students of constitutionally protected interests. *Dixon v. Ala. State Bd. of Educ., 294 F.2d 150 (5th Cir. 1961)*. Defendants' deliberate failure to comply with those safeguards constitutes arbitrary state action.

109. This pattern of abrupt discipline, post hoc justification, and administrative ratification by upper-level officials—including Defendants Drs. Yang, Kluck, and Simmons—reflects a willful abuse of authority that deprived Plaintiff of the property and liberty interests recognized in *Bd. of Regents v. Roth, 408 U.S. 564 (1972)*.

110. The simultaneity, severity, and cumulative effect of these sanctions—executed without factual foundation or procedural compliance—were so arbitrary, disproportionate, and punitive as to "*shock the conscience*" within the meaning of *County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998)*.

## B. Resulting Harms

111. As a direct and foreseeable consequence of Defendants' arbitrary and retaliatory actions, Plaintiff suffered multiple concrete harms affecting his academic, financial, professional, and personal well-being, including:

i) Loss of financial and institutional support, including termination of his Graduate Research Assistantship, stipend, tuition remission, and health insurance—benefits essential to continued enrollment and lawful F-1 visa compliance;

ii) Loss of academic standing and reputational injury, resulting from the false "disruptive" designation and downgraded status, which stigmatized Plaintiff's record and impaired future academic and professional opportunities;

iii) Severe emotional and psychological distress, including anxiety, sleeplessness, and diminished mental health; and

iv) Chilling of protected expression and disability-related advocacy, as the retaliatory nature of the sanctions deterred Plaintiff from pursuing further protected speech, accommodation requests, or grievance filings.

112. These injuries were the direct and proximate result of Defendants' coordinated misconduct, which bore no rational relationship to any legitimate academic or institutional objective and instead reflected an abuse of official authority that violated Plaintiff's substantive due-process rights under the *Fourteenth Amendment* and *42 U.S.C. § 1983*.

## C. PRAYER FOR RELIEF — COUNT V (Substantive Due Process)

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

### A. Declaratory Relief

Declare that Defendants Drs. Erin Holmes, Marie Barnard, Meagen Rosenthal, Yi Yang, Annette Kluck, and Jennifer Simmons, acting under color of state law, violated Plaintiff's substantive due-process rights under the *Fourteenth Amendment* by imposing and ratifying

69

arbitrary, retaliatory, and conscience-shocking sanctions unsupported by any legitimate academic or institutional justification.

## B. Injunctive Relief (Official Capacity – *Ex parte Young*)

Order Defendants, in their official capacities, to:

i) Rescind and expunge the **June 30, 2025** probation memorandum, the "disruptive" designation, and all associated disciplinary or evaluative records from Plaintiff's academic and employment files;

ii) Reinstate Plaintiff's Graduate Research Assistantship and academic standing, including full restoration of stipend, tuition remission, health insurance, and related institutional benefits; and

iii) Adopt and implement institutional safeguards to ensure that disciplinary or employment actions against graduate students are not imposed arbitrarily, vindictively, or in retaliation for protected expression or disability-related advocacy, including the establishment of written review procedures and impartial oversight consistent with constitutional due-process standards.

## C. Compensatory and Punitive Damages (Individual Capacities)

Award Plaintiff compensatory damages against the individual-capacity Defendants for:

i) Loss of income, tuition remission, and health-insurance benefits;

ii) Reputational harm, loss of professional opportunities, and interruption of academic progress; and

iii) Emotional distress, humiliation, and harm to mental and physical well-being directly resulting from Defendants' arbitrary and retaliatory conduct.

Further, award punitive damages against the individual-capacity Defendants for their willful, knowing, and reckless disregard of Plaintiff's clearly established constitutional rights, to deter similar misconduct by University officials acting under color of state law.

D. **Attorneys' Fees and Costs**

Award Plaintiff reasonable attorneys' fees, expert-witness fees, and litigation costs pursuant to *42 U.S.C. § 1988* and any other applicable statutory authority.

E. **Further Relief**

Grant such additional equitable and legal relief as this Court deems just, proper, and necessary to fully restore Plaintiff's protected interests and to redress the substantive-due-process violations established herein.

## COUNT VI — BREACH OF CONTRACT

**Against**:

The University of Mississippi

**Legal Basis**:

Supplemental State-Law Claim (*28 U.S.C. § 1367*)

113. Under Mississippi law, the student–university relationship is contractual. *Univ. of Miss. Med. Ctr. v. Hughes, 765 So. 2d 528, 534 (Miss. 2000)*. Plaintiff's contract with the University arose from its official publications and appointment letters—including the Graduate School Handbook, M Book, Department of Pharmacy Administration Policies and Procedures Guide, and Graduate Research Assistantship (GRA) letters—which together governed examinations, discipline, and assistantship terms.

71

114. At all relevant times, Defendants Drs. Yi Yang, Marie Barnard, Erin Holmes, Meagen Rosenthal, Annette Kluck, and Jennifer Simmons acted as authorized agents of the University within the scope of their employment. Their actions—including initiating, approving, and ratifying probation, assistantship termination, status downgrade, and policy changes—are attributable to the University for purposes of contractual breach. Contractual liability under this count lies solely with the University.

115. Plaintiff maintained excellent academic standing, completed all Graduate Research Assistantship duties, and complied with University policy. He acted in good faith by submitting formal accommodation requests (**Apr. 27–28, 2025**), procedural objections (**May 2025**), and written rebuttals (**June–July 2025**), relying on the University's published assurances of fairness and due process.

116. Acting through its administrators, the University committed multiple, material breaches of its contractual and policy obligations:

    i) **Comprehensive Exam Safeguard**. Department policy required a three-faculty committee familiar with the student's research interests to develop exam questions. Defendants bypassed this safeguard, relegating familiar faculty to after-the-fact review, and later deleted the safeguard from the **2025–26** Guide while Plaintiff's grievance was pending—retroactively erasing evidence of noncompliance. (*Exhibits A–C, Z8.*)

    ii) **Disciplinary Probation**. On **June 30, 2025**, Defendants Drs. Holmes, Barnard, Rosenthal, Yang, Kluck, and Simmons issued and ratified a probation memorandum in violation of University policy. (*Exhibit H.*)

iii) **Provisional Status Downgrade**. On **August 21–22, 2025**, Defendants Drs. Barnard, Yang, and Kluck imposed and ratified Plaintiff's downgrade to "provisional" status in further violation of governing policies. (*Exhibits Z2–Z4.*)

iv) **Assistantship Termination**. Defendants terminated Plaintiff's GRA effective **August 15, 2025**, without citing any valid cause such as performance deficiency, funding limitation, or programmatic need—offering only the vague phrase "faculty decision" and disregarding renewal protections. (*Exhibit I.*)

v) **Misuse of the Abilities Transcript**. The Abilities Transcript (AT) is a developmental mentoring tool, not an evaluative or disciplinary instrument. Defendants nevertheless weaponized it as a punitive device—conditioning standing and enrollment on "submission". (*Exhibits Z3 and Z9.*)

117. By altering established policies after the fact, ignoring mandatory procedures, and exercising discretionary authority to justify retaliatory outcomes, the University acted in bad faith and frustrated Plaintiff's legitimate contractual expectations. See *Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992)*.

118. These breaches foreseeably caused:

i) loss of stipend, tuition remission, and health-insurance coverage;

ii) interruption of degree progress and reputational harm; and

iii) severe financial and immigration jeopardy resulting from the termination of Plaintiff's sole lawful basis for F-1 visa maintenance.

119. Plaintiff seeks reinstatement of his Graduate Research Assistantship and academic standing; expungement of all disciplinary and "provisional" designations; and equitable and monetary

relief compelling compliance with the University's Graduate Handbook, M Book, and departmental policies.

## V. IMMEDIATE AND IRREPARABLE HARM

1. The termination of Plaintiff's Graduate Research Assistantship eliminated the financial sponsorship required to maintain lawful F-1 visa status under *8 C.F.R. § 214.2(f)*. Without reinstatement of funding, Plaintiff's SEVIS record will terminate, resulting in loss of lawful immigration status, exposure to removal proceedings, and interruption of his graduate education—injuries not compensable by monetary relief.

2. Following the **June 30, 2025** sanctions, Plaintiff's classification was downgraded to "provisional" status, which eliminated tuition remission and produced a Bursar balance of $16,953.80 (*Exhibit Z13*). University policy mandates registration holds for unpaid balances of this magnitude, preventing course enrollment and triggering automatic SEVIS termination for failure to maintain full-time status. These cascading consequences constitute imminent and irreparable educational and immigration harm absent restoration of the **pre-June 30** conditions.

3. The assistantship termination also eliminated Plaintiff's only lawful source of income, causing an acute financial emergency. He is now more than two months behind on rent, faces imminent eviction, and lacks funds for basic living expenses. This financial collapse jeopardizes his housing, health, and ability to continue studies, constituting ongoing, irreparable harm under *Fed. R. Civ. P. 65*.

4. The University's disciplinary designations—*"disruption," "indefinite probation,"* and *"provisional status"*—have been entered in Plaintiff's official record, stigmatizing his

reputation and impairing future academic and employment opportunities. These reputational injuries and associated psychological distress are ongoing and not remediable by damages.

5. If forced to withdraw or depart the United States due to loss of status, tuition access, or housing, Plaintiff would lose standing to pursue this action and be unable to participate in proceedings, effectively mooting his claims and depriving the Court of jurisdiction to grant meaningful relief.

6. Plaintiff's indigence is confirmed by the Court's grant of *in forma pauperis* status and a verified GoFundMe campaign (available at *https://shorturl.at/Qzkr0*) documenting his financial hardship, further evidencing the severity and immediacy of the threatened harm.

7. Collectively, these facts demonstrate that Plaintiff faces immediate, concrete, and irreparable injury to his lawful status, education, livelihood, and access to judicial review. Restoration of his **pre–June 30, 2025** assistantship, tuition remission, and academic standing is therefore necessary to preserve his rights pending adjudication of this action.

## VI. DEMAND FOR RELIEF

Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief:

### A. Injunctive Relief (*Fed. R. Civ. P. 65; Ex parte Young, 209 U.S. 123 (1908)*)

1. **Reinstatement of Assistantship and Compensation** — Enjoin any termination, non-renewal, or suspension of Plaintiff's Graduate Research Assistantship and order full reinstatement of compensation, benefits, and assigned research duties, restoring the **pre–June 30, 2025** status quo.

2. **Expungement of Retaliatory Records** — Order permanent removal of all retaliatory or procedurally deficient disciplinary notations, including the **June 30, 2025** *"probation"* memorandum and any *"provisional"* or *"disruptive"* classifications, from Plaintiff's academic and employment files.

3. **Restoration of Academic Standing** — Direct the University to reinstate Plaintiff's full academic standing and tuition remission, rescind probationary and provisional designations, and restore assistantship privileges and research participation rights.

4. **Implementation of Reasonable Accommodations** — Require the University to comply with *Title II* of the ADA and *Section 504* by:

    i) Referring Plaintiff for registration with Student Disability Services;

    ii) Retroactively acknowledging **April–June 2025** accommodation requests; and

    iii) Providing ongoing academic and procedural supports ensuring equal access to University programs.

## B. Declaratory Relief (*28 U.S.C. § 2201*)

5. Declare that the University of Mississippi and the individual Defendants, acting under color of state law, violated Plaintiff's rights under:

    i) *Section 504* of the Rehabilitation Act, by denying equal access and failing to engage in the interactive process;

    ii) *Title II* of the ADA, by discriminating and retaliating on the basis of disability;

    iii) *42 U.S.C. § 1983*, by depriving Plaintiff of rights secured by the Constitution; and

    iv) The *Fourteenth Amendment* Due Process Clause, by imposing sanctions and altering employment status without notice, evidence, or hearing.

76

## C. Compensatory Damages

6. Award compensatory damages, including:

   i) $30,000 for lost wages, tuition remission, and benefits;

   ii) $50,000 for emotional distress, reputational injury, and psychological harm; and

   iii) $10,000 for out-of-pocket medical, therapeutic, and educational costs proximately caused by Defendants' conduct.

## D. Punitive Damages (Individual Capacities Only)

7. Award $250,000 in punitive damages against the individual Defendants for willful, malicious, and reckless disregard of Plaintiff's clearly established constitutional and statutory rights, including:

   i) Retaliation for protected ADA and First Amendment activity;

   ii) Fabrication and dissemination of false disciplinary records; and

   iii) Deliberate indifference to documented accommodation and mental-health needs.

## E. Breach of Contract Relief

8. Award damages for the University's failure to comply with its published academic, disciplinary, and assistantship procedures, which form a binding contractual relationship under Mississippi law, compensating Plaintiff for all financial and reputational losses resulting therefrom.

## F. Costs, Fees, and Further Relief

9. Award all court filing fees, litigation costs, and other allowable expenses.

10. Award reasonable attorneys' fees under *42 U.S.C. §§ 1988* and *12205*.

11. Grant such additional equitable, declaratory, or monetary relief as the Court deems just, proper, and necessary to prevent continuing harm and restore Plaintiff's academic status, financial stability, and professional trajectory.

## VII. DEMAND FOR JURY TRIAL

Pursuant to *Federal Rule of Civil Procedure 38(b)*, and to the extent permitted by the *Seventh Amendment* to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

## VIII. CLOSING AND CERTIFICATION

I, Omokhodion Alfred Eriakha, pursuant to *28 U.S.C. § 1746*, hereby declare under penalty of perjury that the factual allegations set forth in this Amended Complaint and Request for Injunctive Relief are true and correct to the best of my knowledge, information, and belief. This verification is submitted to ensure that this pleading is treated as a verified complaint for all purposes, including consideration under *Federal Rule of Civil Procedure 65* for temporary and preliminary injunctive relief.

Executed this 15th day of October 2025, in Oxford, Mississippi.

Omokhodion Alfred Eriakha

Plaintiff, Pro Se

78

Pursuant to *Federal Rule of Civil Procedure 11*, I certify that, to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. This pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2. The claims, defenses, and other legal contentions herein are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3. The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The pleading otherwise complies with the requirements of *Rule 11* and all applicable procedural rules.

I agree to notify the Clerk's Office of any change to my mailing address or contact information so that I may receive all case-related correspondence. I understand that failure to maintain a current address on file with the Court may result in dismissal of this action.

Date of Signing: October 15th, 2025

Signature of Plaintiff: _____

Printed Name: Omokhodion Alfred Eriakha

## CERTIFICATE OF SERVICE

I hereby certify that on October 15th, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:


**Paul B. Watkins, Esq.**

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)


Executed this 15th day of October, 2025, in Oxford, Mississippi.

Omokhodion Alfred Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com

# UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division



OCT 1 5 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| Omokhodion Alfred Eriakha | | Case No.   3:25-cv-00226 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Erin Holmes; Dr. Meagen | ) | |
| Rosenthal; Dr. Annette Kluck; Dr. Jennifer | ) | |
| Simmons | | |
| *Defendant(s)* | | |

## NOTICE OF FILING AMENDED COMPLAINT

1

Plaintiff gives notice, pursuant to *Fed. R. Civ. P. 15(a)(1)(B)* and *L.U. Civ. R. 7(b)(4)*, that he files the attached Amended Complaint and Request for Injunction within twenty-one (21) days after Defendants filed their *Rule 12(b)* Motion to Dismiss (*docket 22*).

This amendment is filed as a matter of right and in lieu of a response brief. The Amended Complaint supersedes the original complaint (*docket 1*) in its entirety and therefore renders Defendants' pending motion to dismiss moot. A supporting Declaration of Omokhodion Alfred Eriakha in Support of the Amended Complaint is filed contemporaneously.


Respectfully submitted this 15th day of October, 2025.

Omokhodion Alfred Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, I delivered the foregoing to the Clerk of Court for filing

and served a true and correct copy by email upon:


**Paul B. Watkins, Esq.**

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)



Executed this 15th day of October, 2025, in Oxford, Mississippi.

Omokhodion Alfred Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com

3