# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**OMOKHODION ALFRED ERIAKHA**                                         **PLAINTIFF**

**v.**                                            **NO. 3:25-cv-226-MPM-JMV**

**UNIVERSITY OF MISSISSIPPI, et al.**                               **DEFENDANTS**

**AND**

**EHIREMEN BENNARD ERIAKHA**                                     **PLAINTIFF**

**v.**                                            **NO. 3:25-cv-250-DMB-RP**

**UNIVERSITY OF MISSISSIPPI, et al.**                               **DEFENDANTS**

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO CONSOLIDATE

Omokhodion Alfred Eriakha ("Alfred") and Ehiremen Bennard Eriakha ("Bennard") are twin brothers who are both graduate students in the University of Mississippi's Department of Pharmacy Administration. Alfred and Bennard have each filed a lawsuit in this Court against the University and several of its employees related, at least in part, to a change in their enrollment status caused by their failure to complete the same assignment by the same deadline. The lawsuits share four common Defendants, similar facts, and several of the same causes of action. Bennard's lawsuit even alleges a First Amendment "familial association" claim based on alleged actions giving rise to *Alfred's* claims. These matters necessarily involve common questions of fact and law. Defendants respectfully request the Court to consolidate matters 3:25-cv-226 and 3:25-cv-250 for all purposes, including trial. [1]

---

[1] Local Rule 42 provides that "the action bearing the lower or lowest docket number will control the designation of the district or magistrate judge before whom the motion to consolidate is noticed; the docket number will also determine the judge before whom the case or cases will be

FACTS

**1.      *Alfred's allegations***

Alfred failed his comprehensive examination in the fall 2024 semester. *See Eriakha v. Univ. of Miss.*, No. 3:25-cv-226-MPM-JMV ("Alfred's Lawsuit" or the "226 Matter"), at [Doc. 23] (Defs.' Brf. in Supp. of Mot. to Dismiss), at 1-2. After Dr. Yi Yang, the Department Chair, asked him about his plans for re-taking the test, Alfred asked for an extension of time in which to take the exam again. *Id*. He also demanded written explanations for his deficiencies from faculty members, as opposed to the in-person meetings that Dr. Yang proposed. *Id*. at 2-3. Dr. Yang informed him that faculty members could not provide one-on-feedback and that meeting with them personally was an important part of his remediation process. *Id*.

Before his scheduled re-take in June 2025, Alfred sent Dr. Yang a memo criticizing the methodologies used for his 2024 exam and demanding changes for the new test. Among other things, he requested that the questions be "pilot tested" with his fellow graduate students before the test was administered to him, that only the faculty members who were most familiar with his work be allowed to develop exam questions, and that the exam be conducted in public in the presence of an "external, neutral observer." *Id*. at 3. Dr. Yang, and later Dr. Annette Kluck, the Dean of the Graduate School, told Plaintiff these changes would not be appropriate and that his exam would be given according to Department procedures. *Id*. at 3-4.

In June 2025, The Department recommended that Alfred be placed on academic probation for disrupting a fellow student's thesis defense session. He did not appeal that recommendation as allowed by University policy, and it was upheld in August 2025. *Id*. at 4-5.

---

tried." Case No. 3:25-cv-226-MPM-JMV, filed by Plaintiff Omokhodion Alfred Eriakha on August 8, 2025, bears the lower docket number in this action.

Around the same time, the Department notified him it would not recommend his reappointment to be a graduate assistant during the 2025-2026 academic year. *Id*. at 5. In August 2025, Alfred was informed that the Department was recommending his enrollment status be changed to "provisional" because he failed to complete an Abilities Transcript, a non-coursework academic requirement for his program. *Id*.

Alfred filed the 226 Matter in this Court on August 8, 2025, alleging violations of the ADA, the Rehabilitation Act, the Due Process Clause of the Fourteenth Amendment, and breach of contract. *Id*. at [Doc. 1]. The named Defendants in that matter were Dr. Yang, Dr. Kluck Dr. Marie Barnard (the Graduate Program Coordinator), Dr. Jennifer Simmons (the Assistant Provost), Dr. Erin Holmes (a faculty member in the Department), and Dr. Meagen Rosenthal (another faculty member in the Department). *Id*. Defendants filed a Motion to Dismiss raising immunity and jurisdictional arguments, and the Court stayed discovery pending resolution of that Motion. [Doc. 24]. Instead of responding to the Motion to Dismiss, Alfred filed an Amended Complaint adding claims for alleged violations of his First Amendment rights. Am. Compl., at pp. 47-59 [Doc. 25].

### 2. *Bennard's allegations*

Dr. Yinan Huang was assigned to Bennard as a faculty mentor in 2024. *Eriakha v. Univ. of Miss.*, No. 3:25-cv-250-DMB-RP, Compl., at p. 5 [Doc. 1]. In June 2025, Bennard emailed Dr. Huang and told her they needed to meet so he could complete his Abilities Transcript. [Doc. 29] (Defs.' Brf. in Supp. of Mot. to Dismiss), at 2. Dr. Yang (the Department Chair) emailed Bennard to tell him she would participate in this meeting as a co-mentor. *Id*. at 2-3. Bennard told Dr. Yang he did not want her to participate in the meeting and that he preferred a virtual meeting rather than an in-person meeting. *Id*. at 3. Bennard refused to participate in a mentoring meeting and

3

did not complete his Abilities Transcript, despite more than one extension and at least two express warnings that failure to complete the assignment could result in a change to provisional status. *Id*. at 3-5. When he failed to complete the assignment, the Graduate Dean accepted the Department's recommendation to change his status to provisional, which made him ineligible for a graduate assistantship during the Fall 2025 semester. *Id*. at 5.

Bennard filed the 250 Matter in this Court on August 25, 2025, alleging violations of the First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and breach of contract. *Id*. at [Doc. 1]. The named Defendants in that matter were Dr. Yang, Dr. Kluck, Dr. Barnard, and Dr. Huang. *Id*. Defendants have filed a Motion to Dismiss raising immunity and jurisdictional defenses, and the Court has stayed discovery pending resolution of that Motion. [Doc. 30].

**STANDARD**

FED. R. CIV. P. 42 allows for consolidation of actions that "involve a common question of law or fact." Consolidation under Rule 42 is "the proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court." *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018) (*citing Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984)).

Trial courts have "broad discretion" in determining whether to consolidate a case pending before it. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989) (*citing Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985)). District Courts in the Fifth Circuit consider the following factors in addressing a motion to consolidate:

> (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent

adjudications of factual and legal issues if the cases are tried separately, (5) whether consolidation will conserve judicial resources, (6) whether consolidation will result in an unfair advantage, (7) whether consolidation will reduce the time for resolving the cases, and (8) whether consolidation will reduce the cost of trying the cases separately.

*Kodaco Co. v. Valley Tool, Inc.*, No. 3:23-cv-211-GHD-JMV, 2023 U.S. Dist. LEXIS 204747, at *3-4 (N.D. Miss. Nov. 13, 2023) (*citing Hawkins v. Cypress Point Apartments*, 2021 U.S. Dist. LEXIS 252885, 2021 WL 6773591 at *1 (S.D. Miss., Feb. 10, 2021)). The Court may also consider whether the cases "are at different stages of preparedness for trial." *Mills*, 886 F.2d at 762. (*citing St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc.*, 712 F.2d 978, 990 (5th Cir. 1983).

## ARGUMENT

These matters should be consolidated because they present common issues of law and fact. First, both Plaintiffs have raised constitutional claims alleging that the respective Defendants retaliated against them because Alfred engaged in speech protected by the First Amendment. Alfred's Amended Complaint alleges he engaged in constitutionally protected speech when he participated in a "question-and-answer session" during his fellow student's thesis defense and objected to the format of his comprehensive oral examination. 226 Am. Compl., at 48; 55-56 [Doc. 25].

Bennard's Complaint not only references Alfred's alleged protected speech – it specifically invokes that alleged speech as the basis of Bennard's own First Amendment claims:

> These adverse actions occurred in close temporal proximity to the protected activity of Plaintiffs twin brother, Omokhodion (Alfred) Eriakha, who in Spring 2025 filed multiple formal complaints alleging breach of contract, retaliation, due process violations, and denial of disability accommodations, the most recent of which was filed on June 3, 2025.

> The Department was fully aware of Alfred's protected activities, and the close temporal proximity between his complaints and Dr. Yang's intrusive interventions

5

establishes a strong inference that Plaintiff was targeted not for any academic deficiency but in retaliation for his association with Alfred's protected advocacy - conduct squarely prohibited by the First Amendment's protections against retaliation by association (*see Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999)).

250 Compl., at p. 7 [Doc. 1]. Alfred's First Amendment retaliation claim and Bennard's claim for "familial association" both raise the legal question of whether Alfred engaged in protected activity. *See Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985) ("The question of whether speech is entitled to First Amendment protection is a question of law."). Both cases also necessarily raise the factual question of what Alfred actually said or did in his interactions with the 226 Defendants.[2]

These matters also raise common issues of fact because both Plaintiffs allege the Department acted improperly by placing him on "provisional" enrollment status because he failed to complete an Abilities Transcript. *See* 226 Am. Compl., at pp. 30-32; 250 Compl., at pp. 9, 17, 22, 24. In fact, the Plaintiffs' allegations about the Abilities Transcript are nearly identical. *Compare* 226 Am. Compl., at 73 ("The Abilities Transcript (AT) is a developmental mentoring tool, not an evaluative or disciplinary instrument. Defendants nevertheless weaponized it as a punitive device - conditioning standing and enrollment on 'submission.'"), *with* 250 Compl., at 22 (alleging Defendants "[d]eliberately repurpose[ed] the Abilities Transcript - a developmental, non-evaluative tool - into a punitive device to fabricate a false narrative of 'academic performance deficiency'"). Both Plaintiffs allege the Department's "Abilities Transcript Student Manual" supports their claim. *See* 226 Am. Compl., at p. 30, [Doc. 25]; 250 Brf. in Supp. of Mot.

---

[2] To be clear, the Defendants in both actions maintain the Plaintiffs have failed to state a claim upon which relief can be granted and/or have failed to properly invoke this Court's jurisdiction. All Defendants reserve the right to raise and pursue all appropriate defenses. However, if this matter proceeds beyond the motion to dismiss stage, it is clear that the issues of law and fact raised in these matters are intertwined.

to Dismiss, at 8 (*citing* [Doc. 9-17]). Both Plaintiffs' claims purport to raise factual issues about the purpose and importance of the Abilities Transcript, as well as the Department's use of that tool.

The other pertinent factors also favor consolidation. These actions are pending in the same District, so consolidation would cause the Court little or no administrative burden. These matters are at the same stage of preparedness for trial – no discovery has been conducted, and the Court has stayed both matters pending resolution of the Defendants' Motions to Dismiss. Because the cases are both at an early stage, consolidation will not work an unfair advantage on any party. Bennard currently has a Motion for a TRO [250 Doc. 15] and a Motion for a Preliminary Injunction [250 Doc. 16] pending, but consolidation will not affect the Court's ability to timely resolve these motions.

Also, the Plaintiffs have named four common Defendants – the University, Dr. Yang, Dr. Kluck, and Dr. Barnard. There is no appreciable risk of prejudice or confusion if these matters are consolidated, and, even if there was such a risk, it would be outweighed by the risk of inconsistent adjudications of the issues discussed above. The four common Defendants have an interest in consistent adjudication of any legal and factual disputes.

Consolidation will conserve judicial resources, reduce the time for resolving the cases, and reduce the costs of proceeding separately. Discovery for these matters will overlap substantially. Consolidation will allow for efficient discovery procedures without wasted time or expenses for Defendants or non-party witnesses. Any discovery issues that arise in one case could very well affect the other, and the Court can address them together. A consolidated trial date will keep the Court's docket open for other matters.

Finally, working together to litigate their respective claims will not prejudice the

Plaintiffs, as they are apparently already coordinating their efforts. *See* Ex. "1" (Email from Alfred to Watkins, Oct. 15, 2025) ("To ensure full compliance with Fed. R. Civ. P. 5(b)(2)(E) and L.U. Civ. R. 5, please confirm whether you consent to receive filings and other papers in this case by email."), Ex. "2" (Email from Bennard to Watkins, Oct. 15, 2025) ("To ensure compliance with **Fed. R. Civ. P. 5(b)(2)(E)** and **L.U. Civ. R. 5**, please confirm whether you consent to receive filings and other papers in this case by email.") (copying Bennard); Ex. "3" (Email from Alfred to Watkins, Oct. 15, 2025) (transmitting Amended Complaint and copying Bennard).

CONCLUSION

The two above-styled matters involve common parties and issues. Resolution of legal and factual issues raised in one case would necessarily impact the other. The Court should consolidate these matters for all purposes.

Respectfully submitted, this the 22d day of October 2025.

> **THE UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ERIN HOLMES, DR. MEAGAN ROSENTHAL, DR. ANNETTE KLUCK, AND DR. JENNIFER SIMMONS**
>
> **and**
>
> **THE UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ANNETTE KLUCK, AND DR. YINAN HUANG**
>
> */s/ Paul B. Watkins, Jr.*
> PAUL B. WATKINS, JR. (MB No. 102348)
> *Their Attorney*

8

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

9

**CERTIFICATE OF SERVICE**

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Erin Holmes, Dr. Meagan Rosenthal, Dr. Annette Kluck, Dr. Jennifer Simmons, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document to:

> Omokhodion Alfred Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE
> *Via U.S. Mail and E-mail*
>
> Ehiremen Bennard Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE
> *Via E-mail*

THIS, the 22d day of October 2025.

> */s/ Paul B. Watkins, Jr.*
> PAUL B. WATKINS, JR. (MB NO. 102348)

10