**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**OMOKHODION ALFRED ERIAKHA**                    **PLAINTIFF**

**v.**                                                                    **NO. 3:25-CV-226-MPM-JMV**

**UNIVERSITY OF MISSISSIPPI, et al.**                    **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Omokhoion Alfred Eriakha, a graduate student in the University of Mississippi's

Department of Pharmacy Administration, failed his comprehensive examination and demanded

extensive and unreasonable changes to the examination process before his second attempt. He

was also recommended for probation after disrupting a fellow student's thesis presentation and

placed on provisional status when he failed to complete a required self-assessment instrument.

While his graduate assistantship was not renewed for a new year, he was not removed from his

program of study. Plaintiff has now sued the University and six of its employees for disability

discrimination, alleged violations of his constitutional rights, and breach of contract. Plaintiff has

failed to plausibly state a claim, and the Court lacks jurisdiction over certain of his claims.

**FACTS**[1]

Plaintiff is a doctoral student in the University's Department of Pharmacy Administration.

---

[1] Plaintiff's Amended Complaint attaches some documents and references others that appear elsewhere on the docket. Documents referenced in support of Defendants' Motion to Dismiss are either "proper attachments, 'documents incorporated into the complaint by reference, [or] matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (*citing Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008)). *See also Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) ("[W]hen an 'allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" (*citing U.S.* ex rel. *Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

Am. Compl., at p. 14-15 [Doc. 25]. During the fall 2024 semester, Plaintiff failed his comprehensive exam. *Id*. Plaintiff exhausted the University's appeals process related to that failure in November 2024. [Doc. 9-24]. Dr. Yi Yang, the Department Chair, emailed Plaintiff several days later to ask about his plans moving forward. [Doc. 9-25]. Plaintiff told Dr. Yang he intended to re-take the comprehensive exam in the spring 2025 semester. *Id*. When Dr. Yang told him he could re-take the exam in January 2025, Plaintiff responded that he was "currently not in a suitable psychological state and uncertain about [his] ability to retake the exam in January 2025" and asked for an extension of time in which to take it. *Id*. Plaintiff also told Dr. Yang that that "receiving detailed feedback on the specific abilities and competencies that were identified as deficient and contributed to [his] failing grade on the initial exam would be very helpful for [him], both psychologically and in terms of preparing to move forward." *Id*.

In response, Dr. Yang: (1) provided contact information for the University's counseling center, (2) confirmed that Plaintiff could re-take the exam in June 2025 instead of January 2025, and (3) recommended that Plaintiff schedule meetings with the faculty members who were at his oral comprehensive exam to discuss his performance and receive detailed feedback. *Id*. Plaintiff responded that he was "not in the best psychological state for individual interactions" and told Dr. Yang he "would *prefer* to receive these clarifications asynchronously" in writing. *Id*. (emphasis added). Dr. Yang told him that, while the faculty could not provide written feedback, Plaintiff could postpone individual meetings with them until the spring semester. *Id*. at 5.

Plaintiff responded that "not knowing the specific abilities and competencies where I was deemed deficient has significantly hindered my ability to fully heal, recover and move forward mentally and psychologically" and that receiving written information about his deficiencies would have "significant benefits for [his] well-being." *Id*. at 6. Dr. Yang explained:

> Our comprehensive exam questions are not designed to assess specific competencies in a direct one-to-one manner. Additionally, our comprehensive exam process includes an oral component, so it is important for you to meet with individual faculty members to receive feedback that will help you improve. This is why the remediation plan includes this step. Our faculty intentionally developed the plan to support your development.

*Id.* at 7.

Plaintiff continued his demands and stated he was "currently unable to break the cycle of introspection and distress due to a lack of understanding of the specific competencies that were identified as deficient and for which the faculty developed a remediation plan." *Id.* at 8. Dr. Yang again explained that meeting with the faculty was a necessary component of Plaintiff's program, of study:

> As communicated with you in previous emails, our comprehensive exams are comprehensive by design, and exam questions are not designed to assess specific competencies in a direct one-to-one manner. The faculty have developed a plan to prepare you for retaking the exam and this plan included meetings with individual faculty. No students in our department have been given written feedback to help them prepare for retaking their comprehensive exams, so it would not be equitable to do so just for one student. Further, the students who have had to retake their comprehensive exams in the past have had to meet with faculty, as this is a key component of the remediation process to support our students' success.

*Id.*

In April 2025, Plaintiff sent Dr. Yang a thirteen-page memorandum criticizing the manner in which his 2024 oral comprehensive examination was conducted and demanding multiple changes for his re-take. [Doc. 9-1]. Among other things, Plaintiff requested control over the wording of the questions for the exam, that the questions be "pilot tested" with his fellow graduate students (one of whom happens to be his twin brother) before it was administered to him, that only the faculty members who were most familiar with his work be allowed to develop exam questions, and that the exam be conducted in public in the presence of an "external, neutral observer." *Id.* at 6, 12.

3

Dr. Yang told Plaintiff the Department's faculty had met and decided that his re-take would be administered using the Department's established procedures, and that he would be given a new set of questions. [Doc. 9-2]. After Plaintiff again challenged the way his 2024 exam was administered and Dr. Yang again confirmed his re-test would be administered according to Department procedures, Plaintiff requested – and was granted – an additional extension of time in which to take the exam, through September 2025. *Id*. at 2-8.

In May 2025, Plaintiff escalated his demands to the Dean of the Graduate School and the Provost. [Docs. 9-3; 9-4]. The Provost responded that "the faculty within your academic program have the authority and expertise to draft a comprehensive exam, passage of which can be required for progression" and that, under applicable University policies, the Provost "would not have a role in the drafting of a comprehensive examination or the examination format." [Doc. 9-4].

Dr. Annette Kluck, the Dean of the Graduate School, responded to Plaintiff on June 2 after consulting with Department administrators. [Doc. 9-5]. Dr. Kluck responded to the issues Plaintiff had raised. For example, she noted that faculty members most familiar with Plaintiff's work could recommend changes to his exam questions, that departmental guidelines did not provide for independent observers during oral examinations, and that "piloting" exam questions with other graduate students would risk the integrity of the exam. *Id*.

Plaintiff received three communications from the Department on June 30, 2025. First, he received notice from Drs. Erin Holmes, Marie Barnard, and Meagen Rosenthal, that a thesis committee was recommending Plaintiff be placed on academic probation for disrupting another student's thesis defense question and answer session on June 25. [Doc. 9-7]. Plaintiff was sent a letter from the Registrar the next day that provided instructions for accessing information about

the recommendation and appealing the recommendation. [Doc. 9-10].

Plaintiff did not follow those instructions and instead sent a "rebuttal" of the recommendation to the Provost on July 7. [Doc. 9-11]. Dr. Jennifer Simmons, the Assistant Provost, corresponded with Plaintiff between July 16 and July 22 and offered to treat his "rebuttal" to the Provost as an official appeal of the departmental recommendation under the University's Academic Discipline Policy. [Doc. 9-14]. Plaintiff did not respond to that offer or otherwise appeal as allowed by the Policy, [Doc. 9-31], at 12-13, and the Academic Discipline Committee upheld the recommendation to place Plaintiff on Probation. [Doc. 9-17].

Also on June 30, Dr. Yang notified Plaintiff that the faculty was not recommending his reappointment as a graduate research assistant for the coming year. [Docs. 9-6, 9-8]. Dr. Yang's memo noted that graduate assistantship renewals were not automatic but rather were "contingent upon availability of funds, satisfactory academic progression by the student, satisfactory involvement and performance in research and teaching activities, program needs, and recommendation by the Department Faculty." [Doc. 9-8].

Finally, Plaintiff received a memorandum from Dr. Barnard informing him that he had not completed his Abilities Transcript, a non-coursework academic requirement for his program, and would be moved to a provisional enrollment status if he did not submit that assignment by August 15. [Doc. 9-9]. Dr. Barnard later notified Plaintiff that the Department was recommending changing his status to provisional because he did not meet that deadline. [Doc. 9-29]. Plaintiff's Complaint does not dispute that the Abilities Transcript was a program requirement nor allege that he completed it.

### LEGAL STANDARD

A Rule 12(b)(1) motion challenges the plaintiff's invocation of federal subject matter

5

jurisdiction. *See Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). When one party challenges subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011).

Rule 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). While the Court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), it does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion, the Court must decide whether the plaintiff's "pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Patterson v. Off. Of the AG Child Supp. Div.*, 2024 U.S. Dist. LEXIS 111639, *9 (W.D. Tex. Jun. 25, 2024) (citation omitted). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Backe v. LeBlanc*, 691

F.3d 645, 648 (5th Cir. 2012)).

**ARGUMENT**

Plaintiff has sued the University, Dr. Yang (the Department Chair), Dr. Barnard (the Graduate Program Coordinator), Dr. Kluck (the Dean of the Graduate School), Dr. Holmes (a faculty member in the Department), Dr. Rosenthal (another faculty member in the Department, and Dr. Simmons (the Assistant Provost). Plaintiff attempts to state claims against the University and Dr. Yang for disability discrimination and retaliation, against the University and all the Individual Defendants (in their individual and official capacities) for due process and First Amendment violations, and against the University for breach of contract. The Individual Defendants are entitled to qualified immunity, and the official-capacity claims and the claims against the University fail to state a claim. The Court lacks jurisdiction over Plaintiff's breach of contract claim. This action should be dismissed in its entirety, with prejudice.

**1.** ***The Individual Defendants are entitled to qualified immunity from Plaintiff's constitutional claims.***

Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity defense "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343).

The Fifth Circuit asks a "standard two-part qualified immunity question: whether the conduct was unconstitutional and whether the unconstitutionality was 'clearly established' at the time the challenged conduct occurred." *Doe v. Jewell*, No. 24-50480, 2025 U.S. App. LEXIS 20941, at *7 (5th Cir. Aug. 15, 2025). "Plaintiffs carry the burden of demonstrating that qualified

7

immunity is inappropriate." *Id*. at \*8. *See also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (holding that "the plaintiff has the burden to negate the assertion of qualified immunity once properly raised.").

The question of qualified immunity is to be determined as a matter of law and requires a conduct-based inquiry, not an abstract legal or factual inquiry. *E.g., Elder v. Holloway*, 510 U.S. 510, 515-16 (1994). A Section 1983 plaintiff "must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). The plaintiff must point to controlling authority or a robust consensus of persuasive authority that placed his rights beyond debate. *See Wigginton v. Jones*, 964 F.3d 329, 337 (5th Cir. 2020) (*citing Morgan v. Swanson*, 659 F.3d 359, 371-72, 382 (5th Cir. 2011)). The Fifth Circuit has held that "educators are entitled to qualified immunity unless no 'reasonable official' would have deemed the disputed conduct constitutional." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017) (*citing Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

### a. *Plaintiff has not stated a due process claim.*

#### 1. *Plaintiff has identified no protected property interest.*

Plaintiff allege his due process rights were violated when he was placed on academic probation for disruptive behavior, when his graduate assistantship was not renewed, and when the Department recommended his enrollment status be changed to "provisional" after he failed to complete his Abilities Transcript. Am. Compl., at pp. 61-69 [Doc. 25].

The threshold question in reviewing a due process claim is whether a protected property interest exists. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020); *see also Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992) ("If there is no protected property interest, there is no process due."). The U.S. Supreme Court "has not held college academic decisions implicate property or

8

liberty interests, entitling a student to constitutional due-process protections." *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013). Rather, "a student who is not denied access to public education does not have a property or liberty interest implicated," and the "common practice" in reviewing such academic decisions is to avoid constitutional questions by focusing on whether the law was clearly established at the time of the decision. *Id*. at 362-63.

Here, the Individual Defendants are entitled to qualified immunity because there is no clearly established law creating a property interest in avoiding academic probation or maintaining non-provisional status. The Fifth Circuit has held that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (*citing Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)); *see also Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, No. 24-10304, 2024 U.S. App. LEXIS 30592, at *3 (5th Cir. Dec. 4, 2024) (rejecting dismissed graduate student's due process claim cased on an academic dismissal because "continued enrollment in that program is not a protected interest"). Here, though, Plaintiff has not alleged he was removed – even temporarily – from his graduate program.

Plaintiff also does not have a property interest in the renewal of his graduate assistantship because he has not alleged a "legitimate claim of entitlement" to it. *Wigginton*, 964 F.3d at 336 (*citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see also id* (rejecting *de facto* right to tenure for non-tenured university instructors based on positive performance reviews or informal expectations). Because there is no clearly established law establishing a protected property interest for purposes of a due process claim, the Individual Defendants are entitled to qualified immunity.

2.      *Plaintiff has failed to identify a deprivation without due process.*

Even if Plaintiff had identified a protected property interest, he has failed to allege that

"the personal involvement of each defendant" rose to the level of a constitutional violation.

*Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Plaintiff's Complaint does not identify any

act by any Individual Defendant which even arguably deprived him of due process. While it is

difficult to tell which alleged acts Plaintiff claims are associated with his due process claims in

particular, his due process allegations against the Individual Defendants appear to amount to the

following:

- **Dr. Yang** – Informed Plaintiff that his graduate assistantship would not be renewed, "approved" the change of his enrollment status to "provisional" because he did not complete an Abilities Transcript, and was copied on Plaintiff's complaints about the academic probation recommendation. Am. Compl., at pp. 62-63.

- **Dr. Holmes** – "Jointly issued" a memorandum with Dr. Barnard and Dr. Rosenthal informing Plaintiff that a thesis committee would recommend probation because he disrupted a fellow student's thesis presentation. *Id*. at pp. 62, 66.

- **Dr. Rosenthal** – "Jointly issued" a memorandum with Dr. Holmes and Dr. Barnard informing Plaintiff that a thesis committee would recommend probation because he disrupted a fellow student's thesis presentation. *Id*. at pp. 62, 66.

- **Dr. Barnard** – "Jointly issued" a memorandum with Dr. Holmes and Dr. Rosenthal informing Plaintiff that a thesis committee would recommend probation because he disrupted a fellow student's thesis presentation, "implemented" a change in Plaintiff's enrollment status after previously warning him about the pending change. *Id*. at pp. 62, 66-67.

- **Dr. Kluck** – "Endorsed" the change of Plaintiff's status to provisional, affirmed the decision of the Discipline Committee to place Plaintiff on probation after he did not appeal the recommendation. *Id*. at p. 50 [Docs. 9-27; 9-30].

- **Dr. Simmons** – Sent Plaintiff an email asking if he would like to use his "rebuttal" letter to the Provost as an appeal under the University's Academic Misconduct Policy. [Doc. 9-14].

There is no clearly established law holding that any of these alleged acts violated

Plaintiff's due process rights. Plaintiff identifies no legal impediment to the non-renewal of his

10

graduate assistantship. The act of "jointly issuing" a memorandum informing Plaintiff that the department would *recommend* academic probation did not deprive him of any right; rather, it put him on *notice* of potential action. Plaintiff alleges his "ability to submit the [Abilities Transcript] was obstructed by unresolved procedural disputes and unimplemented disability accommodations," Am. Compl., at p. 31 [Doc. 25], but he does not identify any such disputes, plausibly allege that the Abilities Transcript was not a program requirement, or plausibly allege that a reclassification to provisional status violated his constitutional rights. Nor can Plaintiff state a claim against any of the Individual Defendants related to the imposition of probation when he failed to appeal the Committee's recommendation.

Nor do Plaintiff's pleadings plausibly charge any of the Individual Defendants with a substantive due process violation. "Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Jones v. Bd. of Supervisors*, 809 F.3d 231, 240 (5th Cir. 2015); *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562-63 (5th Cir. 2003). Plaintiff must show that the challenged decision "'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Id*. (*citing Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)). In context, none of the Individual Defendants' alleged acts can be said to have been made without professional judgment. Plaintiff cannot state a substantive due process claim.

More broadly, the actions of which Plaintiff complains did not violate his due process rights. The University's Academic Misconduct policy, which addresses among other actions "Disruptive Behavior," provides a procedure through which a student may challenge a recommended sanction and seek a hearing. [Doc. 9-31]. Plaintiff did not appeal the recommendation of the department's thesis committee, or even log into the University's website to access additional information about the recommendation.

11

Moreover, "[a] public university is not required to afford significant process before dismissing a student on academic grounds; the university need only provide notice explaining the reasons for the 'faculty's dissatisfaction'" and the danger it posed to the student's continued enrollment. *Doe v. Harrell*, 841 F. App'x 663, 670 (5th Cir. 2021) (*citing Bd. of Curators v. Horowitz*, 435 U.S. 78, 85 (1978)). Again, Plaintiff was not dismissed from his program, but he was (1) warned that his failure to complete the Academic Transcript could result in probationary status and (2) informed that this failure was the reason for his change in status. Plaintiff cannot maintain a due process claim, and the Individual Defendants are entitled to qualified immunity.

### b. Plaintiff has failed to state a First Amendment claim.

Plaintiff contends Defendants violated his First Amendment rights by engaging in impermissible "viewpoint discrimination" and retaliating against him for complaints. Plaintiff has failed to plausibly allege any Defendant violated his clearly established First Amendment rights.

Plaintiff first alleges that, during a fellow student's thesis defense in June 2025, he "participated in the question-and-answer session and offered academic comments addressing theoretical distinctions in structural-equation modeling and model-fit interpretation." Am. Compl., at 48 [Doc. 25]. He claims that the thesis committee's recommendation to recommend probation for disrupting the thesis defense was based on the "content and viewpoint of his academic remarks, not for any legitimate behavioral or pedagogical concern." *Id*. at p. 29. Even assuming the thesis defense referenced in Plaintiff's Amended Complaint was a limited public forum opened for expression from graduate students like Plaintiff, he cannot show that any of the Individual Defendants engaged in viewpoint discrimination. "Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the

12

speaker is the rationale for the restriction.'" *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) (*citing Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)).

Plaintiff's pleadings offer only the most general description of the *content* of his alleged comments. He cannot "show that [any] defendant acted with a viewpoint-discriminatory purpose," *id*. (*citing Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013)), because he *does not identify the disfavored viewpoint he claims to have expressed*. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 342 (5th Cir. 2003) (holding that plaintiff "cannot overcome the defense of qualified immunity" without "precise identification of the speech as to which First Amendment protection is claimed, which would permit consideration of its content, context, and form as required by the Supreme Court").

Plaintiff also alleges Defendants retaliated against him because he demanded changes to his comprehensive exam in April 2024 and complained to the Dean and the Provost in May and June when those demands were not met. Am Compl., at p. 55 [Doc. 25]. A university student alleging First Amendment retaliation by school staff must plausibly allege that he engaged in constitutionally protected speech and that his speech was a substantial or motivating factor in decision to subject him to an adverse action. *See Doe v. Harrell*, 841 Fed. App'x 663, 669 (5th Cir. 2021) (*citing Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985)).

A plaintiff suing individual state officials for First Amendment retaliation must provide the Court with authority to show his speech was protected under clearly established law. *See Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (holding that plaintiff failed to overcome defendant's qualified immunity because he "put forward no authority relevant to the question whether his refusal was protected speech"). Plaintiff now bears the burden to come forward with

13

such authority.[2]

Moreover, while courts have found that "[e]xpulsion from a Ph.D. program is injury that would 'chill a person of ordinary firmness from continuing to engage' in criticism of faculty," *Babinski v. Queen*, No. 20-426-SDD-EWD, 2021 U.S. Dist. LEXIS 187150, at *28 (M.D. La. Sep. 29, 2021), Plaintiff has not been expelled. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (noting that "some retaliatory actions -- even if they actually have the effect of chilling the plaintiff's speech -- are too trivial or minor to be actionable as a violation of the First Amendment"). Plaintiff must present caselaw establishing "beyond debate" that he experienced a sufficiently adverse action.

"A plaintiff alleging First Amendment retaliation must also allege a plausible causal connection between the defendants' retaliatory animus and the plaintiff's subsequent injury." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). A plaintiff may meet this burden through direct evidence or "a chronology of events from which retaliation may plausibly be inferred." *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (*citing Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)). If a plaintiff meets this burden, the burden shifts to the defendant to show that it would have taken the same action even in the absence of the protected speech. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed. App'x 447, 455 (5th Cir. 2013). Plaintiff has failed to sufficiently allege causation with respect to the Individual Defendants. Plaintiff has

---

[2] To the extent Plaintiff alleges he engaged in speech protected by the First Amendment because he claims he complained about requests for disability accommodations, this claim also fails against the Individual Defendants because the Rehabilitation Act and the ADA do not provide for individual liability. *See infra* Section 2; *see generally Owens v. La. State Univ.*, No. 21-242-WBV-SDJ, 2023 U.S. Dist. LEXIS 27956, at *34 (M.D. La. Feb. 17, 2023) (finding that plaintiff's claim "alleging First Amendment retaliation based upon an underlying Title IX violation appears to be an end run around Title IX's explicit language limiting liability to funding recipients") (internal citations omitted).

not even alleged that all the Defendants were aware of his demands for changes to the comprehensive exam. For example, he does not identify any such communication that was sent to Drs. Holmes or Rosenthal.

The Individual Defendants are entitled to qualified immunity with respect to Plaintiff's First Amendment claims.

**2.     *Plaintiff fails to state a claim for disability discrimination.***

Plaintiff also alleges the University, Dr. Yang, Dr. Barnard, and Dr. Kluck discriminated against him by failing to accommodate a disability and that all Defendants retaliated against him for requesting accommodations. Am. Compl., at pp. 40-46; 54-61, 7 [Doc. 25]. These claims cannot stand against Individual Defendants because neither the Rehabilitation Act nor the ADA provides a cause against individuals. *See Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999) (finding no individual cause of action under Rehabilitation Act); *Hoskins v. Droder*, 2018 U.S. Dist. LEXIS 188588, No. 3:17-cv-224-M, 2018 U.S. Dist. LEXIS 188588, at *3 (N.D. Miss. Nov. 5, 2018) (noting "consensus view" that there is no individual liability under the ADA). Plaintiff also fails to state a claim of disability discrimination against the University.

**a.     *The University did not fail to accommodate a disability.***

A plaintiff alleging failure to accommodate in violation of the ADA must allege (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations. *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (*citing Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). The same elements apply to a failure-to-accommodate claim under the Rehabilitation Act. *Id*. (*citing Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir.

2005)).

A covered institution is required to provide "reasonable accommodations that give 'meaningful access to the benefit that the grantee offers' without posing an undue burden" to the program. *Cadena v. El Paso Cty.*, 946 F.3d 717, 725 (5th Cir. 2020) (*citing Alexander v. Choate*, 469 U.S. 287, 301 (1985)). However, it is not "duty bound to acquiesce in and implement every accommodation a disabled student demands." *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016). The institution is not "required to lower or effect substantial modifications of standards to accommodate a handicapped person, if its standards are reasonable." *Id*. (*citing Southestern Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979) (cleaned up). The institution need not "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Critically, "***a disabled student does not have a right to his accommodation of preference***." *Id*. (*citing E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009)) (emphasis added); *see also Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, No. 24-10304, 2024 U.S. App. LEXIS 30592, at *5 (5th Cir. Dec. 4, 2024) (dismissing student's failure-to-accommodate claim where she "received all lecture notes, just not in her preferred format"). Plaintiff has failed to state a claim of disabililty discrimination.

First, Plaintiff has failed to allege the Department had knowledge of a disability and its consequential limitations on his ability to take the same comprehensive examination as his classmates. Plaintiff alleges he has a "documented mental-health disability that substantially limits major life activities, including concentration, sleep, and emotional regulation, qualifying as a disability under Section 504 and Title II of the ADA." Am. Compl., at p. 16 [Doc. 25]. These conclusory assertions, which identify neither the disability nor any consequential limitations, fall short of plausible factual allegations.

16

Plaintiff claims he "disclosed his disability" to Drs. Holmes and Barnard in 2022. *Id.* at p. 16. However, he does not explain what he told those faculty members, much less allege that he asked those faculty members for any accommodation.

Plaintiff did *not* tell Dr. Yang in 2024 that a disability limited his ability to take his comprehensive exam or speak with faculty members about his examination, and he did not provide her with any documentation of such a disability. Plaintiff's comment to Dr. Yang that he was "not in a suitable psychological state" to immediately re-take the test after failing was not sufficient to confer knowledge about a disability and any attendant limitations. [Doc. 9-25]. Nevertheless, Dr. Yang allowed him to delay his re-take, first until June 2025, and then again until September 2025. [Docs. 9-2; 9-25]. She also recommended he meet with the faculty members who were at his oral comprehensive exam to learn more about his deficiencies and provided contact information for the University's counseling center. [Doc. 9-25].

When Plaintiff responded that he "would prefer to receive these clarifications asynchronously" from those faculty members and would "appreciate if the faculty could accommodate this preference," Dr. Chan explained that the comprehensive evaluation process was not designed to assess specific competencies as implied by Plaintiff's request and that meeting with faculty members who participated in his oral examination was a "key component" of the remediation process. [Doc. 9-25], at 6-8.

Plaintiff's November 2024 correspondence to Dr. Yang did not reflect that his request for changes to the examination process were based on "consequential limitations" of a disability. At best, he told her that these changes would be "psychologically helpful" to him. This does not rise to the level of a request for a disability accommodation. Dr. Yang allowed Plaintiff an extension of the testing time and explained in detail why his request for "asynchronous" written feedback

17

from faculty members was not consistent with the fundamental nature of the examination process. Plaintiff's allegations do not plausibly challenge that explanation.

Nor does Plaintiff state a claim for disability discrimination with respect to his demands in April and May of 2025. His April 26 memo to Dr. Yang mentioned his "mental health" in passing, but it contained no meaningful discussion of a disability or the limitations such a disability imposed on his ability to re-take the comprehensive examination. [Doc. 9-1]. Instead, that document was a laundry list of complaints about the way the first examination was structured and a list of demands (styled by Plaintiff as "procedural safeguards") that would have fundamentally changed the administration of the exam. [Doc. 9-1]. During his correspondence with Dr. Yang about those demands, Plaintiff sought – and was granted – an additional extension of time in which to re-take his exam. [Doc. 9-2]. After Dr. Yang informed Plaintiff that the Department faculty had decided not to allow the other changes he requested to the testing process, Dr. Kluck (the Graduate Dean) provided a detailed written explanation of the reasons those changes would fundamentally alter the examination process. [Doc. 9-5]. Again, Plaintiff's pleadings do not plausibly challenge her rationale.

Plaintiff's allegation that "[n]o University official initiated the required interactive process or referred the matter to Student Disability Services (SDS) as mandated by federal law" rings hollow, as the record is clear that he *did* contact SDS and did not take the necessary action to proceed with an accommodation request. University policy provides that "the Office of Student Disability Services (SDS) is the designated office that receives and files disability-related documents, verifies eligibility for services, assesses reasonable accommodations, and develops plans for the provision of such accommodations." Policy for Students with Disabilities, at https://policies.olemiss.edu/ShowDetails.jsp?istatPara=1&policyObjidPara=10881938 (last

18

accessed Oct. 29, 2025).

Plaintiff was clearly aware of this policy, as he told Dr. Yang in November 2024 that he intended to contact SDS and provide that office with documentation from his health care providers. [Doc. 9-25], at 8. Despite having actual knowledge of the appropriate procedures, though, Plaintiff did not contact SDS until April 2025. Am. Compl., at p. 18 [Doc. 25]; Ex. "Z10" (Emails from SDS) [Doc. 25-7].

In fact, once Plaintiff did contact SDS in April 2025, that office *repeatedly* contacted him to offer support and try to determine whether accommodations were appropriate and necessary:

> Hi Alfred,
>
> Can you share the policy and procedures your academic department has for the oral comprehensive exam or the name of a specific person with whom I could speak about the exam? If the policy doesn't explicitly prohibit other people from sitting in, you may be able ask about having a guest and the process for do so.
>
> I am unsure at this time, if this request would fall under my office as an academic accommodation based on the impact of a disability. Having additional information would be helpful. Could we schedule a meeting to discuss further after May 9th. My calendar is full until after finals week.

*Id.* at 1 (April 25, 2025);

> Alfred,
>
> The last time we communicated you stated that you wanted to have an additional person in the room during while you answer the oral comprehensive examination in September. I believe that the department's faculty were meeting to discus if this is an option for students in general. I wanted to know if the faculty will allow an additional person in that space.
>
> We haven't had a chance to discuss in detail how you are impact by the diagnosis you disclosed. Disability accommodations must be reasonable and directly related to how a student is impacted, not diagnosis alone. Please schedule an initial interview with me to discuss how you are impacted and what specific accommodation you believe you need for equal access. The initial interview can be done in person or over Zoom. Additionally, documentation from your healthcare professional will be needed to support a specific accommodation request.

*Id.* at 4 (June 4, 2025);

> Hi Alfred,
>
> I am following up from the email I sent on June 4. Can you send me an update on what the faculty decided? If you still want to pursue an accommodation related to the impact of a disability, please contact me to schedule an initial interview and submit documentation from your healthcare professional describing the nature and impact of the disability that connects directly with the possible accommodation request.
>
> To submit **required documentation**, please use the following link: **Upload Documentation.**

*Id.* at 5 (June 18, 2025). Plaintiff does not allege that he ever provided SDS with the information

19

and documentation it requested about the impact of a disability. What's more, Plaintiff continued to tell SDS, at least through mid-July 2025, that he did not want to proceed with the accommodation process until other University officials responded to his numerous complaints. *Id*. at 5-8.

Plaintiff has failed to plausibly allege that the University failed to provide reasonable accommodations that would provide him meaningful access to his program of study, much less that it engaged in the type of intentional discrimination necessary to sustain a claim under the ADA or the Rehabilitation Act. *See Campbell*, 842 F.3d at 380. This claim should be dismissed with prejudice.

### b. *Plaintiff has failed to plausibly allege disability retaliation.*

Plaintiff also alleges the University unlawfully retaliated against him because he sought accommodations. A retaliation claim requires that the plaintiff engaged in protected activity, an adverse action, and causal connection between the protected act and the adverse action. *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 298 (5th Cir. 2012). A request for a reasonable accommodation may constitute protected activity for purposes of a retaliation claim. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). However, while a plaintiff need not show he suffers from an actual disability to state a retaliation claim, he must have a "reasonable, good faith belief that the statute has been violated." *Id.* (*citing Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)). For the reasons discussed above, Plaintiff cannot establish that he had a "reasonable, good faith belief" that he was entitled to the examination changes he requested.

First, as discussed above, Plaintiff does not plausibly allege that he engaged in protected activity. His correspondence with Dr. Yang cannot plausibly be read to be seeking a disability

20

accommodation – only that he would "prefer" different procedures. He specifically told the Office of Student Disability Services that he did not want to pursue accommodations, and he has not even alleged that the Defendants who were responsible for the alleged adverse actions against him were aware that he had contacted SDS.

Second, the accommodations Plaintiff requested were facially unreasonable. He demanded that he be excused from normal remediation procedures, that only his preferred faculty members be allowed to participate in his examination procedures, and that his fellow students be allowed to vet his questions before they were given to him. No reasonable graduate student could have a "good faith belief" that these accommodations were reasonable, particularly where that student had not provided the University with any information that their participation in the examination process was constrained by a disability. Plaintiff's retaliation claim should be dismissed.[3]

### 3. *Plaintiff's remaining claims against the University are barred by the Eleventh Amendment.*

The University is immune from Plaintiff's Section 1983 and breach of contract claims. The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. The Amendment "grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613,

---

[3] It is unclear whether Plaintiff contends the decision not to renew his graduate assistantship was an employment decision, as opposed to an academic decision. To the extent he does, any ADA discrimination and retaliation claims for that decision are also barred because he did not exhaust his administrative remedies by filing a charge of discrimination with EEOC. *See Owens v. Dall. Cty. Cmty. Coll. Dist.*, 793 F. App'x 298, 300 (5th Cir. 2019).

616 (2002) (citation omitted). The University is an arm of the State of Mississippi and is immune from Plaintiff's claims in federal court. *See Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 604-06 (S.D. Miss. 2019) (dismissing Section 1983 and breach of contract claims against University of Mississippi due to Eleventh Amendment). Moreover, "[t]he Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought."). *Id*. at 604. Plaintiff's due process and breach of contract claims against the University should be dismissed for lack of jurisdiction.[4]

### 4. The University is not a "person" for purposes of Section 1983.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

---

[4] The University may also be entitled to immunity from Plaintiff's ADA claims if Congress has not validly abrogated that immunity. *See Rollins v. Kiffin*, No. 3:23-cv-00356-MPM-RP, 2024 U.S. Dist. LEXIS 16864, at *11 (N.D. Miss. Jan. 31, 2024). Generally, courts need not consider the issue of Title II abrogation when there is also a Rehabilitation Act claim "because the rights and remedies under either are the same for purposes of this case." *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). However, the two causes of action do not share a causation standard – Section 504 of the Rehabilitation Act prohibits exclusion from federally-funded programs "solely by reason of [a] disability," whereas "discrimination need not be the sole reason" for such exclusion under Title II of the ADA. *See Soledad v. Dep't of Treasury*, 304 F.3d 500 (5th Cir. 2002). Thus, the sovereign immunity analysis is not immaterial if causation is at issue. *See Crowe v. Miss. Div. of Medicaid*, 615 F. App'x 181, 182 n.1 (5th Cir. 2015) (remanding disability discrimination case for abrogation analysis where causation was likely to be at issue). Here, it is unclear whether the difference between causation standards would be relevant at trial. *See Bennett-Nelson*, 431 F.3d at 455 n.13 ("While the standard of causation is not material in this appeal, we do not foreclose the possibility that, as discovery proceeds, it may become a disputed issue."). The University maintains that Plaintiff's disability discrimination and retaliation claims should be dismissed on the merits for the reasons discussed above. However, the University reserves the right to assert an ADA immunity defense if this matter proceeds and causation becomes a disputed issue.

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Neither a State, an arm of the State, nor an individual employed by such entity acting in his or her official capacity is considered a "person" acting under color of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *McNair v. Mississippi*, 43 F. Supp. 3d 679, 685 (N.D. Miss. 2014). Plaintiff's Section 1983 claims against the University, and the official-capacity claims for money damages against the Individual Defendants, fail.

**5.      *Plaintiff's official capacity claims under Section 1983 fail.***

The Eleventh Amendment bars Plaintiff's claims under Section 1983 for money damages against the Individual Defendants in their official capacities. *Chaney v. La. Work Force Comm'n*, 560 F. App'x 417, 418 (5th Cir. 2014) (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Under *Ex parte Young*, though, Plaintiffs may pursue claims alleging ongoing violations of federal law that seek relief properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

However, for a state officer to face liability under *Ex parte Young*, that officer must have "some connection" to the requested relief. *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). A defendant who "is not in a position to provide the requested relief" is not a proper party under *Ex parte Young*. *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008). Plaintiff's pleadings do not clearly spell out which of the Defendants he believes can provide injunctive relief. For example, while Dr. Yang *informed* Plaintiff his graduate assistantship would not be renewed, he does not allege she is able to reverse that action. He certainly does not allege that Drs. Holmes, Barnard, Rosenthal, Kluck, or Simmons has any such authority.

Regardless of which Defendants remain in their official capacities, though, Plaintiff has

23

not pleaded sufficient facts to support a claim for declaratory or injunctive relief under Section 1983 for the reasons discussed above. He has failed to plausibly allege that he had any protected property interest, that any Defendant deprived him of such an interest without appropriate process, or that he engaged in constitutionally protected speech.

## CONCLUSION

Plaintiff's complaints about his failed examination do not rise to the level of disability discrimination or statutorily protected activity, and he cannot establish a First Amendment or due process violation. The Court lacks jurisdiction over his remaining claims. The Court should dismiss this matter in its entirety.

Respectfully submitted, this the 29th day of October 2025.

**UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ERIN HOLMES, DR. MEAGAN ROSENTHAL, DR. ANNETTE KLUCK, AND DR. JENNIFER SIMMONS**

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB No. 102348)
*Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

24

## CERTIFICATE OF SERVICE

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Erin Holmes, Dr. Meagan Rosenthal, Dr. Annette Kluck, and Dr. Jennifer Simmons, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via U.S. Mail and E-mail to the following:

Omokhodion Alfred Eriakha
1802 Jackson Avenue West, Apt. 83
Oxford, MS 38655
662-281-4676
PRO SE

THIS, the 29th day of October 2025.

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB NO. 102348)