#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
#### OXFORD DIVISION

**OMOKHODION ALFRED ERIAKHA**                                                          **PLAINTIFF**

**v.**                                                        **No. 3:25-cv-00226-MPM-JMV**

**UNIVERSITY OF MISSISSIPPI,** *et al.*                                           **DEFENDANTS**

*Consolidated With*

**EHIREMEN BENNARD ERIAKHA**                                                        **PLAINTIFF**

**v.**                                                        **No. 3:25-cv-00250-MPM-JMV**

**UNIVERSITY OF MISSISSIPPI,** *et al.*                                           **DEFENDANTS**

#### MEMORANDUM OPINION

This matter comes before the Court on Defendants', The University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang (collectively, "Defendants"), Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [28]. *Pro se* Plaintiff Ehiremen Bennard Eriakha ("Mr. Bennard") has responded in opposition. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

#### RELEVANT BACKGROUND

Mr. Bennard is a Black African international graduate student pursuing his doctorate at the University of Mississippi. Who is currently in the United States on a F-1 visa. He claims that the following acts by the Defendants threaten his ability to stay within the country. On July 19, 2024, he executed a Mentor-Mentee Agreement to encourage his professional development and was assigned to Dr. Yinan Huang, a faculty member in the University's Department of Pharmacy Administration, which allowed a continuous one-on-one mentoring relationship.

On June 13, 2025, Dr. Yi Yang, the Department Chair, informed Mr. Bennard that she would serve as his co-mentor with Dr. Huang. Mr. Bennard claims that this unilateral change to his

1

mentorship agreement was retaliation for his familial association with his twin brother Omokhodion Alfred Eriakha. Dr. Yang informed Mr. Bennard that her involvement was to encourage Dr. Huang's professional development, and to ease Mr. Bennard's mentorship transition following Dr. Huang's upcoming departure from the University.

Mr. Bennard alleges that this interference was retaliation because, prior to Dr. Yang's interference, his brother, Mr. Alfred, raised complaints with the University and the Department of Pharmacy for failure to accommodate his disability. Mr. Alfred's complaints eventually culminated in disciplinary action, and a lawsuit that has been consolidated with this matter.

Dr. Yang scheduled an in-person meeting between herself, Mr. Bennard, and Dr. Huang for June 18 to discuss Mr. Bennard's Abilities Transcript, a non-coursework requirement to his graduate program, the deadline of which was set for June 19. Mr. Bennard refused to attend the meeting as he requested that it be held on Zoom with Dr. Huang only, and he complained that the mentor agreement was altered in violation of departmental policy. Dr. Yang confirmed that the mentorship change was approved by all tenured faculty. Mr. Bennard did not attend the meeting, nor did he submit his Abilities Transcript. Dr. Annette Kluck, Dean of the Graduate School, later confirmed with Mr. Bennard that the change in mentorship was appropriate.

On June 30, Dr. Marie Barnard, the Graduate Program Coordinator, sent a formal warning to Mr. Bennard, informing him that further failure to submit his Abilities Transcript would result in a recommendation that he be downgraded to provisional student status. Mr. Bennard's deadline was extended to August 15, 2025. Instead of completing the Abilities Transcript, Mr. Bennard continued to complain about his mentorship arrangement and the in-person meeting required to discuss the Abilities Transcript. Dr. Kluck informed Mr. Bennard that no policies prohibit faculty

2

from changing mentoring assignments, and that a student's concerns with aspects of their program does not excuse them from completing program requirements such as the Abilities Transcript.

On August 21, after Mr. Bennard again failed to submit his Abilities Transcript, he was informed by Dr. Barnard that the Department recommended that he be placed on provisional status. Mr. Bennard could regain full standing by Spring 2026 if he submitted his Abilities Transcript, met with his thesis advisor weekly, and completed his Fall 2025 classes successfully. Dr. Kluck accepted the recommendation and Dr. Yang informed Mr. Bennard that he was not eligible for a Graduate Research Assistantship, a paid position, during the Fall 2025 semester due to his provisional status.

On December 15, 2025, after failing to meet the requirements given by the University to regain full standing, Mr. Bennard and Mr. Alfred were further downgraded to the status of non-degree seeking students. This limited the number of credits they would be able to earn and classified them as no longer students in the Ph.D. program in the Department of Pharmacy Administration. They still may apply for another degree program in the University.

On December 29, Mr. Bennard filed a notice of appeal [42] on his pending motions for temporary restraining order [15] and preliminary injunction [16]. On December 31, the Fifth Circuit dismissed Mr. Bennard's appeal for lack of subject matter jurisdiction, and, to the extent subject-matter jurisdiction existed, for failure to show a likelihood of success on the merits. *Eriakha v. Univ. of Miss.*, No. 25-60708, 2025 WL 3772150 (5th Cir. Dec. 31, 2025). On January 5, 2026, Mr. Bennard filed a motion for immediate adjudication of the pending Rule 65 motions [44] and Mr. Alfred filed a motion to join the Rule 65 motions [45] because the University requires financial documentation by January 5, 2026, to meet the reporting requirements necessary to avoid termination of their F-1 visa status.

3

Mr. Bennard asserts that the downgrade in his status was wrongful. He claims that this downgrade is constructive expulsion because his F-1 visa requires him to maintain a source of income. As a result, his provisional, and now non-degree seeking status, endangers his ability to comply with his visa, stay in the country and to continue his education. He sued the Defendants for First Amendment retaliation, violations of his right to equal protection, violations of his procedural and substantive due process rights, and for breach of contract. He requests reinstatement of his full standing status and his Graduate Research Assistantship so that he may stay in the United States and continue his doctoral studies. Defendants filed this motion to dismiss for failure to state a claim.

## STANDARD OF REVIEW

### A. Rule 12(b)(1) Motion to Dismiss

The defendants raise Eleventh Amendment sovereign immunity as to some claims, thus questioning this Court's subject-matter jurisdiction under Rule 12(b)(1). The party seeking the forum bears the burden of proving that jurisdiction exists. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). In assessing whether there is jurisdiction, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (citation omitted).

### B. Rule 12(b)(6) Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint and raises an issue of law. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

It is the duty of the trial judge to hold pro se complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). The Fifth Circuit has held that "[g]enerally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, "[t]he district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Id.* In *Bazrowx*, the Fifth Circuit found that "the district court erred in failing to give Appellant notice of the court's intention to dismiss his suit or an opportunity to amend his complaint[,]" but held that "[s]uch error may be ameliorated ... if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id.* (footnote omitted). The Fifth Circuit has clarified that a court can

5

consider a plaintiff to have asserted his best case when the plaintiff has had a "fair opportunity to make out [his] case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

## ANALYSIS

### I.   Claims against the University

Defendants assert that Mr. Bennard's claims against the University of Mississippi and the named Defendants in their official capacity are barred by the Eleventh Amendment under sovereign immunity. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because an official capacity claim is "a suit against the official's office," it is "no different from a suit against the State itself." *Id.* at 71.

As a result of this immunity, federal courts lack jurisdiction over suits against a state, state agency, or state official in his or her official capacity "unless that state has waived sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). Mr. Bennard does not dispute that the Eleventh Amendment bars his claims against the University of Mississippi, but he argues that *Ex parte Young* provides him an avenue for prospective relief.

A third exception under *Ex parte Young* allows suit against a state official acting in his official capacity "as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). In determining whether the *Ex parte Young* exception applies, the district court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729,

736 (5th Cir. 2020). Furthermore, "a plaintiff must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

The *Ex parte Young* exception to sovereign immunity does not apply to state law claims in federal court against the State or state officials sued in their official capacities. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 274-75 (5th Cir. 2020). Mr. Bennard's state law breach of contract claim against the University of Mississippi and the named Defendants in their official capacities is barred by sovereign immunity.

Under *Ex parte Young*, Mr. Bennard's § 1983 claims against the University of Mississippi are barred under sovereign immunity because the University is not a state official responsible for enforcing the alleged acts. *See K.P. v. LeBlanc*, 627 F.3d at 124. The claims against the University of Mississippi are barred. The Court will now turn to whether Mr. Bennard's § 1983 claims may be asserted against the individually named defendants in their official capacities.

42 U.S.C. § 1983 allows individuals to seek redress when someone acting under the authority of state law "subjects" them to a deprivation of rights or "causes" them "to be subjected" to a deprivation of rights. Generally, a plaintiff asserting a claim under 42 U.S.C. § 1983 must (1) allege the deprivation of a right secured by the Constitution or federal law and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Mr. Bennard alleges that the named Defendants deprived him of his First Amendment rights, his right to equal protection, and both procedural and substantive due process. While Mr. Bennard raises these allegations against all four named defendants, Dr. Yinan Huang had no connection to the enforcement of the disputed acts. *See K.P. v. LeBlanc*, 627 F.3d at 124. She is a non-administrative faculty member, so she would

7

have no ability to grant Mr. Bennard his requested relief nor did she initiate, approve or ratify his provisional status. *Ex parte Young* does not allow claims against Dr. Huang in her official capacity.

He asserted that his downgrade in status and the non-renewal of his Graduate Research Assistantship was unlawful and he seeks injunctive relief from the same named officials. This meets the standard for alleging prospective relief for ongoing violations of federal law against the named Defendants. *See Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir.2008) (former state university employee's request for reinstatement of employment in his suit for FMLA and constitutional violations was "a claim for prospective relief designed to end a continuing violation of federal law" and thus within the *Ex parte Young* exception to Eleventh Amendment immunity). Mr. Bennard's § 1983 claims for prospective relief against Dr. Barnard, Dr. Yang, and Dr. Kluck in their official capacities is allowed under *Ex parte Young*.

## II. Individual Capacity Claims

Mr. Bennard alleges that Defendants violated his First and Fourteenth Amendment rights. His 42 U.S.C. § 1983 claim is based upon alleged retaliation that he faced for his familial association with Mr. Alfred, who is suing the University for failure to accommodate his disability, which allegedly led to increased scrutiny of his Abilities Transcript submission and an alleged departure from academic norms in how he was treated, leading to his new state as a non-degree seeking student and non-renewal of his Graduate Research Assistantship position. Defendants Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang (collectively "The named Defendants") raised a qualified immunity defense in response to Mr. Bennard's claims against them in their individual capacities.

Qualified immunity is a judicially created legal doctrine which "shields federal and state officials from money damages." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion," the burden shifts to the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001)). The plaintiff, not the defendant, must do the majority of the work in the qualified immunity context.

In this case, Defendants Dr. Yang, Dr. Barnard, Dr. Kluck, and Dr. Huang are all officials working for the University of Mississippi, a state agency. All of the named defendants are government officials whose positions involve the exercise of discretion, so they are able to raise a good faith qualified immunity defense. *See e.g. Babinski v. Sosnowsky*, 79 F.4th 515 (5th Cir. 2023) (allowing a university professor to raise qualified immunity in a § 1983 action); *see also Dudley v. Angel*, 209 F.3d 460 (5th Cir. 2000) (holding that university officials were entitled to qualified immunity from § 1983 liability). The burden has shifted to the plaintiff, Mr. Bennard, who has responded to Defendants' qualified immunity motion.

To rebut a qualified immunity defense, the plaintiff must have "alleged a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court stated that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.

9

Mr. Bennard has alleged violations of his constitutional rights, which form the basis for his § 1983 claim against Defendants. At this motion to dismiss stage, the Court will accept the allegations that Defendants violated his rights as he claims in his complaint, so long as it does not contradict the record. *See id.* at 678. Even assuming the allegations in his complaint are sufficient to meet the first element, he has not cited sufficient case law to show that the rights violated were clearly established. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (The burden of proof to show that an officer violated a clearly established law is "heavy.").

Regarding the clearly-established-right prong, "[a] right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope*, 3 F.4th at 204 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

Mr. Bennard alleged that the named Defendants placed him on provisional status because he complained about the handling of his mentorship agreement and that he maintained his familial relationship with his brother Alfred. He also contends that he was treated harshly because he was a Black African student rather than because his actions merited such a sanction. The named Defendants assert that their actions did not violate Mr. Bennard's constitutional rights. They placed him on provisional status and did not renew his Graduate Research Assistantship because he failed to submit his Abilities Transcript and not due to his relation to his brother, his race, his national origin or his complaints about the department. They contend that a failure to complete the Abilities Transcript would result in any graduate student's classification as provisional and the non-renewal of their Assistantship position.

The named Defendants argue that Mr. Bennard has not cited a factually analogous case holding that the named Defendants' specific conduct was unconstitutional. The Court agrees with this assertion. Mr. Bennard cited some case law, but none of it "squarely governs" Defendants' conduct at issue. *See Cope*, 3 F.4th at 204. Mr. Bennard claims that his rights of "freedom from retaliation (**Pickering**), procedural due process in disciplinary actions (**Dixon; Goss**), and equal protection from arbitrary treatment (**Olech**) were long and clearly established." [36].[1] There is no clear indication on his part showing how the case law he cites classifies the named Defendants' particular actions as violations beyond debate. *See Morrow*, 917 F.3d at 874. Clearly established law must not be defined at a high level of generality. *See City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if clearly established law can simply be defined as the right to be free from unreasonable searches and seizures.").

The majority of Mr. Bennard's response to the Defendants' qualified immunity defense pertained to issues he had with how Defendants portrayed the record and facts he presented. The manner the facts are presented are not relevant to the Court's qualified immunity analysis. As a result, the Court will limit its analysis to Mr. Bennard's response to the case law he cited to indicate that his violated rights were clearly established.

Mr. Bennard asserts his First Amendment right was violated and cites *Adler v. Pataki* to argue that he has a clearly established cause of action for retaliation due to maintaining his relationship with his brother Alfred. 185 F.3d 35 (2d Cir. 1999). In *Adler*, the Second Circuit recognized that retaliation for action taken by a spouse is a violation of the First Amendment's

---

[1] Mr. Bennard is citing the following cases to show that his allegedly violated rights were clearly established, but he does so at a high level of generality: *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968); *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150 (5th Cir. 1961); *Goss v. Lopez*, 419 U.S. 565 (1975); *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000).

right of intimate association. *Id.* at 44. *Adler* is a Second Circuit opinion which is not binding on this Court. Without any citation to an analogous Fifth Circuit or Supreme Court case on the matter, Mr. Bennard's First Amendment allegations fail to overcome the named Defendants' qualified immunity defense.

Mr. Bennard also claims his procedural and substantive due process rights were purposefully violated. He cites *Dixon v. Alabama State Board of Education* to argue that the named Defendants violated his due process rights because the University allegedly placed him in provisional status and altered his mentorship agreement in spite of the University's procedural safeguards. 294 F.2d 150 (5th Cir. 1961). The *Dixon* Court held that some form of notice and a hearing is required to expel or suspend a student from a state university when charged with misconduct. *Id.* at 158-59. Mr. Bennard's situation differs enough from the *Dixon* decision. Mr. Bennard was not expelled or suspended, he was merely placed into provisional status, still giving him access to the University and its courses.

Additionally, Mr. Bennard's downgrade in status and nonrenewal of his Graduate Research Assistant position were due to his failure to complete his Abilities Transcript, a non-coursework requirement for his program, rather than for any disciplinary reasons. *Dixon* explicitly emphasizes the hearing requirement for expulsions based on misconduct rather than a failure to meet scholastic standards. Mr. Bennard's assertions that the Abilities Transcript is merely a tool for reflection does not negate that it is also a requirement for the completion of his program. The record also indicates that Mr. Bennard was given ample notice by the Defendants that his failure to complete his Abilities Transcript would have a negative effect on his Graduate Research Assistant position. His subsequent removal from the Ph.D. program was in response to his failure to meet scholastic standards and not for misconduct.

Mr. Bennard failed to meet his burden of showing that existing precedent squarely governs Defendants' conduct. Additionally, many of his arguments to support his claims, such as his equal protection claims, are not supported with any case law as required to rebut qualified immunity. The named Defendants are entitled to qualified immunity and all of Mr. Bennard's claims against them in their individual capacities are dismissed. See *Cope*, 3 F.4th at 204.

### III. Official Capacity Claims

Moving to the official capacity claims against the three non-barred Defendants, they argue that any remaining claims must be dismissed for failure to state a claim. The Court finds this argument well taken.

The Fifth Circuit has recognized that Section 1983 claims against public officials are subject to a heightened pleading requirement; a plaintiff "must do more than allege conclusions;" they must assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (en banc). The Court will evaluate whether Mr. Bennard sufficiently stated a claim under this heightened standard.

#### A. First Amendment Claims

Defendants argue that Mr. Bennard did not adequately raise a First Amendment retaliation claim because he did not plausibly allege that he was placed on provisional status due to activity protected by the First Amendment. "To prove a retaliation claim cognizable under the First Amendment, the plaintiff must show that her speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the defendant's decision." *Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985) (quoting *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). The plaintiff may meet this burden with direct evidence

or through "a chronology of events from which retaliation may be plausibly inferred." *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). If a plaintiff meets this burden, the burden shifts to the defendant to show "that it would have taken the same adverse employment action against" the plaintiff "even in the absence of the" plaintiff's "protected conduct" *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 455 (5th Cir. 2013) (citing *Charles v. Grief*, 522 F.3d 508, 516 n. 28 (5th Cir. 2008)).

"Whether speech is entitled to First Amendment protection is a question of law." *Kelleher*, 761 F.2d at 1084. The Defendants argue that there is no case law establishing a student's refusal to accept department instructions related to his academic program, such as Mr. Bennard's refusal to submit the Abilities Transcript, as protected activity under the First Amendment. They even argue that, in the public employment context, the First Amendment does not shield speech and conduct amounting to insubordination directed at school officials. [29] (quoting *Kelleher*, 761 F.2d at 1084). Mr. Bennard argues that his downgrade in status occurred because he complained about the unilateral alteration of his mentorship agreement and that his complaints were merely legitimate requests to force the faculty to adhere to University policy, rather than acts of insubordination. [36].

Mr. Bennard did not cite to any law establishing this communication as protected, and how it differs from insubordination. He characterizes his communications as "professional" and 'evidence-based," but does not refute that he refused to submit his Abilities Transcript despite requests from faculty. Mr. Bennard's communications are not protected speech because he failed to cooperate with the Defendants' requirement to submit his Abilities Transcript. *See Kelleher*, 761 F.2d at 1084. The actions taken by Defendants in response to this unprotected speech are not actionable.

As to Mr. Bennard's claims that his familial association with Mr. Alfred formed the basis for retaliation against him, the Defendants argue that his downgrade in status was not caused by his familial association. Mr. Bennard asserts that he faced retaliation due to his association with his brother, who made complaints of his own to the department around the time that his mentorship agreement was changed.

Assuming this Court would recognize a cause of action for retaliation for associating with a sibling, as Mr. Bennard argues by citing *Adler v. Pataki*, a second circuit opinion, Mr. Bennard has not adequately alleged that his downgrade in status was caused by his brother's complaints rather than his own failure to submit the Abilities Transcript. 185 F.3d 35 (2d. Cir. 1999); *see Kelleher*, 761 F.2d at 1083. Mr. Bennard claims that his brother's complaints lead to him facing increased faculty scrutiny. Even if this is the case, the Defendants assert that Mr. Bennard would have faced the same downgrade in status for not completing the Abilities Transcript program requirement. The Court finds that Mr. Bennard's failure to submit the Abilities Transcript is the motivating factor for his provisional status, and the record supports the Defendants' contention that even if Mr. Alfred never made complaints about the graduate program, they still would have assigned Mr. Bennard provisional student status for failing to complete his Abilities Transcript. *See Mooney*, 538 F. App'x at 455. None of Mr. Bennard's protected speech and associations were the primary motivation for his downgrade in status, so Mr. Bennard's retaliation claims against Dr. Barnard, Dr. Yang, and Dr. Kluck in their official capacities fail.

B. **Equal Protection Claims**

Mr. Bennard claims that the actions taken against him were due to discrimination based on his race as a Black man, and his national origin as an African in violation of his right to equal protection. The Defendants state that Mr. Bennard's equal protection claims must fail because

while he claims to have been treated differently than similarly situated White or U.S.-born students, he fails to point to any specific person or make any factual allegations about their circumstances. Notably, he does not allege that any non-Black or non-African student who refused to complete the Abilities Transcript was treated differently than himself.

Put simply, the equal protection clause directs states to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). A state government can violate the Equal Protection Clause only by intentional discrimination. *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988). "Discriminatory purpose ... implies more than intent as violation or as awareness of consequences[.] ... It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in opinion). A violation of the equal protection clause can occur only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988).

Mr. Bennard's equal protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated. *See Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). His complaint alleges that other similarly situated students never faced changes to their mentoring agreements or reclassification as provisional students, but he points to no specific person in similar circumstances who is not within Mr. Bennard's protected class who was treated differently. Mr. Bennard's equal protection claims are "merely legal conclusions that we are not required to credit." *Id.* For this reason, the Mr. Bennard's equal protection claim shall be dismissed for failure to state a claim upon which relief could be granted.

C. **Due Process Claims**

Mr. Bennard claims that his procedural and substantive due process rights were violated when the Defendants placed him on provisional status and did not renew his Graduate Research Assistantship position without adequate notice, hearing, or impartial review. The Defendants posit that Mr. Bennard's due process claim fails as his affected interest is not a protected property interest meriting due process.

The threshold issue in a due process claim is whether a protected property interest exists. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020). "If there is no protected property interest, there is no process due." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992). The United States Supreme Court "has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections." *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013). The Fifth Circuit held that "a student who is not denied access to public education does not have a property or liberty interest implicated." *Id.* (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997). The Court determined above that the downgrade in status as a result of Mr. Bennard's refusal to submit his Abilities Transcript is an academic decision, so any associated interest is not protected so as to require due process. *See Id.* This includes his subsequent removal from the Ph.D. program for failing to meet the requirements given to him by the University to regain full standing by the spring semester.

Mr. Bennard claims that because his provisional status prevented the renewal of his Graduate Research Assistantship, he lost his sole means of income and is unable to comply with his F-1 visa and to stay in the country. As a result, he claims his downgrade in status is constructive expulsion because he will lose access to the University and its courses if he is deported. Mr. Bennard cites no case law establishing this as a protected interest. Fifth Circuit precedent instead

establishes that continued enrollment in a post-graduate or professional program is not a protected interest. *Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, No. 24-10304, 2024 WL 4973300, at *2-3 (5th Cir. Dec. 4, 2024) (citing *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995)). Mr. Bennard's due process claims fail, and his claims against Dr. Barnard, Dr. Yang, and Dr. Kluck in their official capacities are dismissed.

## IV. Breach of Contract Claims

Turning to Mr. Bennard's state breach of contract claim, in cases such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that courts should "decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this Court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Importantly, the four § 1367(c) factors are listed in the disjunctive, which means that only one of them needs to be met to grant a district court discretion to decline to exercise supplemental jurisdiction. Since the underlying federal claims are being dismissed, the Court will decline to exercise supplemental jurisdiction over Mr. Bennard's breach of contract claim against any defendants in their individual capacities.

V. **Other Motions**

Mr. Bennard has filed eight other pending motions before this Court. [14]; [15]; [16]; [19]; [20]; [26]; [46]; [44]. Mr. Alfred filed a motion to join his brother's Rule 65 motions. [45]. The dismissal of all of Mr. Bennard's underlying claims against every defendant has rendered all these other motions moot. As a result, all nine motions are denied.

## CONCLUSION

**ACCORDINGLY**, Defendants' Motion to Dismiss [28] is **GRANTED**. Mr. Bennard's eight pending motions [14], [15], [16], [19], [20], [26], [46], [44] and Mr. Alfred's pending motion to join [45] are **DENIED as moot**. Mr. Bennard's Federal Claims against Defendants are **DISMISSED WITH PREJUDICE** and Mr. Bennard's State Law Breach of Contract Claim is **DISMISSED WITH PREJUDICE** against the University of Mississippi and all other Defendants in their official capacities and is **DISMISSED WITHOUT PREJUDICE** against the named Defendants in their individual capacities.

**SO ORDERED** this 6th day of January, 2026.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI