**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

OMOKHODION ALFRED ERIAKHA        **PLAINTIFF**

v.        **No. 3:25-cv-00226-MPM-JMV**

UNIVERSITY OF MISSISSIPPI, *et al.*        **DEFENDANTS**

*Consolidated With*

EHIREMEN BENNARD ERIAKHA        **PLAINTIFF**

v.        **No. 3:25-cv-00250-MPM-JMV**

UNIVERSITY OF MISSISSIPPI, *et al.*        **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants', The University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Erin Holmes, Dr. Meagen Rosenthal, Dr. Annette Kluck, and Dr. Jennifer Simmons (collectively, "Defendants"), Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [31] and *pro se* Plaintiff Omokhodion Alfred Eriakha's ("Mr. Alfred") Motion for Recusal [48]. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

## RELEVANT BACKGROUND

Mr. Alfred is a graduate student at the University of Mississippi. He held a Graduate Research Assistantship, a paid position with the Department of Pharmacy Administration, and is in the United States on a F-1 visa. Mr. Alfred claims to suffer from a documented mental disability.

Mr. Alfred was preparing to take a Comprehensive Exam, a requirement for his doctorate. Seeking special accommodations for his disability, he was directed to go through the University's Student Disability Services. The faculty examiners refused to alter the exam format despite Mr. Alfred's request, and the record indicates he never completed the accommodation request process

with Student Disability Services. Believing his rights were violated, Mr. Alfred complained to the Dean of the Graduate School, Dr. Annette Kluck.

On June 30, 2025, Mr. Alfred received three notices: a disciplinary memorandum, a non-renewal of his Graduate Research Assistantship, and a notice of provisional student status. Mr. Alfred asserts the notices were sent to him in violation of University procedure. Mr. Alfred denies any wrongdoing, and he believes these actions are retaliation for his complaints to the Dean and the concerns he raised about how the Comprehensive Exam was created because they were all sent to him on the same day and only five days after his last complaint. Mr. Alfred claims retaliation was initiated to strip him of his F-1 visa and to damage his ability to stay within the United States, as he asserts that the downgrade in status served as a constructive expulsion because it limited his financial opportunities and harmed his ability to comply with his visa requirements.

The disciplinary memorandum is based on his conduct at another student's thesis defense. The only detail of the incident is Mr. Alfred's assertion that he disagreed with a faculty member. Dr. Holmes, Dr. Barnard, and Dr. Rosenthal, members of the University faculty who observed Mr. Alfred, signed the memorandum accusing him of misconduct. Mr. Alfred disputes the accusations.

Dr. Barnard, the Graduate program Coordinator, informed Mr. Alfred that the University will begin classifying him as a "provisional student" because he did not complete his Abilities Transcript, a non-coursework program requirement. Mr. Alfred informed Dr. Barnard of procedural barriers preventing him completing the Abilities Transcript, so he believes the provisional student status threat was also retaliation.

The non-renewal notice sent by Dr. Yang, the Chair of his Department, informed Mr. Alfred that the Department will terminate his Graduate Research Assistantship. According to Mr. Alfred, the notice was retaliation because Dr. Yang did not provide a valid reason for the non-renewal. The

record shows that Dr. Yang informed Mr. Alfred in the non-renewal memorandum that the Graduate Research Assistantship is not guaranteed and reappointment is not automatic. [25].

Mr. Alfred raised complaints about the notices, but Dr. Simmons, the assistant Provost, informed Mr. Alfred that he must use the University's formal appeal procedures. Despite his concerns with the faculty and their actions, Mr. Alfred never initiated a formal appeal to contest the notices, leading Dr. Kluck to ratify his provisional status and place him on academic probation as recommended by the faculty. Mr. Alfred was then provided with a set of requirements he must fulfill by the end of the Fall 2025 to regain his full standing status in the Spring 2026 semester.

Mr. Alfred subsequently filed this lawsuit against the Defendants for violations of the Rehabilitation Act, the Americans with Disabilities Act, 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, and breach of contract. The Defendants filed a Motion to Dismiss Mr. Alfred's Amended Complaint [25].

This case was consolidated with his twin brother, Ehiremen Bennard Eriakha's lawsuit against the University and some of its faculty, but the Court has already dismissed all of Mr. Bennard's claims [47], leaving only Mr. Alfred's claims before it. On December 15, 2025, after failing to meet the requirements to regain full standing, Mr. Bennard and Mr. Alfred were further downgraded to the status of non-degree seeking students. This limits the number of credits they can earn and classified them as no longer students in the Department of Pharmacy Administration's Ph.D. program. They still may apply for another degree program in the University. Additionally, Mr. Alfred filed a Motion for Recusal or Disqualification of the Presiding Judge [48] based on factual characterizations made in this Court's September 19, 2025, Opinion [16]. On January 6, 2026, Mr. Alfred filed a joint Notice of appeal with his brother Mr. Bennard for this Court's

dismissal of their requests for preliminary injunctions. [46]. On April 23, the Fifth Circuit dismissed Mr. Alfred's appeal for want of prosecution. [55].

## STANDARD OF REVIEW

### I.    Rule 12(b)(1) Motion to Dismiss

The defendants raise Eleventh Amendment sovereign immunity as to some claims, thus questioning this Court's subject-matter jurisdiction under Rule 12(b)(1). The party seeking the forum bears the burden of proving that jurisdiction exists. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). In assessing whether there is jurisdiction, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (citation omitted).

### II.    Rule 12(b)(6) Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint and raises an issue of law. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court

4

must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

It is the duty of the trial judge to hold pro se complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). The Fifth Circuit has held that "[g]enerally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, "[t]he district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Id.* In *Bazrowx*, the Fifth Circuit found that "the district court erred in failing to give Appellant notice of the court's intention to dismiss his suit or an opportunity to amend his complaint[,]" but held that "[s]uch error may be ameliorated ... if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id.* (footnote omitted). The Fifth Circuit has clarified that a court can consider a plaintiff to have asserted his best case when the plaintiff has had a "fair opportunity to make out [his] case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

## ANALYSIS

### I.  Motion for Recusal

Mr. Alfred filed a motion for recusal pursuant to 28 U.S.C. § 455(a). His motion also lists 28 U.S.C. § 455(b) and 28 U.S.C. § 144. Mr. Alfred raises no assertion that he invokes one of the specific disqualification grounds under § 455(b) based on the previous employment of the judge or his familial relations.  He also failed to file an affidavit as required to invoke § 144. As a result, the Court will limit its analysis on the motion to his claims pursuant to the general disqualification provision of 28 U.S.C. § 455(a).

The relevant section provides that any judge "of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

5

"[W]henever a judge's partiality might reasonably be questioned, recusal is required under § 455(a), irrespective whether the circumstance is covered by § 455(b). *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 n. 8 (1988)). "[T]he standard for bias is not subjective… but, rather, objective." *Id.* (citation omitted). The entire course of the judicial proceedings, and not isolated incidents should be considered. *Id.* (citations omitted). Finally, the origin of a judge's alleged bias is the most important factor in the analysis. *Id.* "[T]he Supreme Court applied a common-law doctrine … the 'extrajudicial source rule' to the interpretation of § 455. *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994). Under this rule, the Supreme Court essentially divided the events that occurred and the opinions expressed during the course of the judicial proceedings from those that take place outside of the litigation context. *Id.* (citing *Liteky*, 510 U.S. at 555). Particularly, the Supreme Court noted that recusal is rarely required for concerns relating to events within the judicial proceedings. *Id.* (citing *Liteky*, 510 U.S. at 555).

Mr. Alfred argues that the Court's past Opinion denying his motion for preliminary injunction [16] allegedly asserted multiple discrepancies in the record, that when observed cumulatively, creates a concern for the Court's appearance of impartiality. Mr. Alfred even asserts five separate "record-based clarifications" based on the Court's vocabulary and the factual narrative the Court outlined in its previous order. None of Mr. Alfred's concerns occurred outside of the judicial proceedings, and he makes no assertions of any impropriety outside of the litigation context. Under the extrajudicial source rule, Mr. Alfred's motion fails to raise sufficient concerns that would merit the judge to recuse himself from this case pursuant to 28 U.S.C. § 455(a). Mr. Alfred's motion for recusal is denied.

## II.    Claims against the University

### A.  Sovereign Immunity

Defendants assert that Mr. Alfred's § 1983 and Breach of Contract claims against the University of Mississippi and the named Defendants in their official capacity are barred by the Eleventh Amendment under sovereign immunity. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because an official capacity claim is "a suit against the official's office," it is "no different from a suit against the State itself." *Id.* at 71.

As a result of this immunity, federal courts lack jurisdiction over suits against a state, state agency, or state official in his or her official capacity "unless that state has waived sovereign immunity or Congress has clearly abrogated it*." NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). Mr. Alfred argues that *Ex parte Young* provides him an avenue for prospective relief.

A third exception under *Ex parte Young* allows suit against a state official acting in his official capacity "as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). In determining whether the *Ex parte Young* exception applies, the district court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). Furthermore, "a plaintiff must demonstrate that the state officer has 'some

7

connection' with the enforcement of the disputed act." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

The *Ex parte Young* exception to sovereign immunity does not apply to state law claims in federal court against the State or state officials sued in their official capacities. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 274-75 (5th Cir. 2020). Mr. Alfred's state law breach of contract claim against the University of Mississippi is barred by sovereign immunity.

Under *Ex parte Young*, Mr. Alfred's four § 1983 claims against the University of Mississippi are barred under sovereign immunity because the University is not a state official responsible for enforcing the alleged acts. *See K.P. v. LeBlanc*, 627 F.3d at 124. Only Mr. Alfred's failure to accommodate disability claims remain against the University of Mississippi. The Court will now turn to whether Mr. Alfred's § 1983 claims may be asserted against the individually named defendants in their official capacities.

42 U.S.C. § 1983 allows individuals to seek redress when someone acting under the authority of state law "subjects" them to a deprivation of rights or "causes" them "to be subjected" to a deprivation of rights. Generally, a plaintiff asserting a claim under 42 U.S.C. § 1983 must (1) allege the deprivation of a right secured by the Constitution or federal law and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Mr. Alfred alleges that the named Defendants deprived him of his First Amendment rights, both procedural and substantive due process, and retaliated against him for engaging in protected activities. While Mr. Alfred raises these allegations against all six named defendants, Dr. Erin Holmes and Dr. Meagan Rosenthal had no ability to enforce or ratify the disputed acts. *See K.P. v. LeBlanc*, 627 F.3d at 124. While they both authored the initial disciplinary memorandum against Mr. Alfred, nothing in the record

8

indicates that they have the ability to grant Mr. Alfred's requested relief nor did they approve or ratify his provisional status. They merely recommended a disciplinary measure that was accepted and enforced by the Academic Discipline Committee. *Ex parte Young* does not allow claims against Dr. Holmes and Dr. Rosenthal in their official capacities.

Mr. Alfred asserted that his downgrade in status and the non-renewal of his Graduate Research Assistantship was unlawful and he seeks injunctive relief from the same named officials. This meets the standard for alleging prospective relief for ongoing violations of federal law against the named Defendants. *See Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir.2008) (former state university employee's request for reinstatement of employment in his suit for FMLA and constitutional violations was "a claim for prospective relief designed to end a continuing violation of federal law" and thus within the *Ex parte Young* exception to Eleventh Amendment immunity). Mr. Alfred's § 1983 claims for prospective relief against Dr. Barnard, Dr. Yang, Dr. Simmons and Dr. Kluck ("non-barred Defendants") in their official capacities is allowed under *Ex parte Young*.

### B. Disability Claims

Defendants have not sought Eleventh Amendment dismissal of Mr. Alfred's Rehabilitation Act claim, and the Fifth Circuit held in *Miller v. Texas Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348 (5th Cir. 2005) that a state defendant's acceptance of federal funds serves to waive any Eleventh Amendment immunity as to a claim under § 504 of the Rehabilitation Act. Mr. Alfred's Americans with Disabilities Act ("ADA") and § 504 Rehabilitation Act claims against the University will be analyzed together because "[c]laims brought under § 504 or the ADA, or both, are subject to the same analysis." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416 (5th Cir. 2021).

"Official capacity suits are really suits against the governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). Mr. Alfred's ADA and § 504 Rehabilitation Act claim against Dr. Yang, Dr. Barnard, and Dr. Kluck in their official capacities is subsumed by his identical claim against the University. *See Id.* As a result, the Court's analysis of Mr. Alfred's disability claims against the University will also apply to his disability claims against the individually named defendants in their official capacities.

Mr. Alfred's complaint claims the University failed to provide reasonable accommodations for his Comprehensive Exam despite his requests. Mr. Alfred's claims do not raise a causation issue under the ADA or the Rehabilitation Act as the existence of Mr. Alfred's disability was not disputed nor does he claim that he was denied accommodations due to animosity from the Defendants. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). When causation is not an issue, courts need not consider the issue of Title II abrogation when there is also a Rehabilitation Act claim "because the rights and remedies under either are the same for purposes of this case." *See Id.*

Under the ADA, a claim for failure to accommodate must assert the following: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). Mr. Alfred asserts that he possesses a documented mental-health condition, which the University and the faculty were aware of, but that they failed to make reasonable accommodations for his Comprehensive Exam because they did not engage in the interactive accommodation process despite his requests.

10

The University argues that Mr. Alfred failed to state a claim for failure to accommodate his disability. If accommodations are required, the University must provide Mr. Alfred with reasonable accommodations that "give meaningful access to the benefit [offered] without posing an undue burden" to the University. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020). But while the accommodation must be reasonable, the University is not required to provide Mr. Alfred's accommodation of choice merely because he requested it. *See id.* A University's standards do not need to be lowered or modified substantially "to accommodate a handicapped person, if its standards are reasonable." *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016) (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 423 (1979)). The University will not be required to fundamentally alter its program to accommodate a disability. *See id.*

Accepting as true that Mr. Alfred is a qualified individual with a disability, the University states that Mr. Alfred failed to adequately allege that the University had knowledge of his disability and how the disability would affect his ability to take the same Comprehensive Exam as his colleagues, so as to require the University to provide accommodations. In his complaint, Mr. Alfred never identifies his disability or how its limitations would affect his test taking abilities besides his statement that it "substantially limits major life activities, including concentration, sleep and emotional regulation." [25]. Mr. Alfred asserts that he disclosed his disability to Dr. Holmes and Dr. Barnard in 2022, but he provides no further details on what he told them or that he requested accommodations at the time before his first Comprehensive exam.

Mr. Alfred raised procedural concerns to the faculty that he felt were present in his first Comprehensive Exam and requested certain safeguards from the faculty to protect his mental health. Dr. Kluck informed him of the University's policy that to request accommodations for his Comprehensive Exam he must contact Student Disability Services who would verify his eligibility

for and develop reasonable accommodations. Under the ADA, the University's knowledge of a disability must be distinguished from their knowledge of the student's limitations as a result of the disability. *See Jin Choi*, 633 F. App'x at 216. (citing *Taylor v. Principal Financial Group., Inc.*, 93 F.3d 155, 164 (5th Cir.1996). It is important that the plaintiff asserts "not only a disability, but also any limitation resulting therefrom." *Id.* As a result, the University and the faculty's knowledge of Alfred's disability and its ability to reasonably accommodate him depends on his communications with Student Disability Services.

Here, Mr. Alfred's complaint does not expand on his limitations arising from his disability outside of broad assertions that it affects his concentration, sleep and emotional regulation. The record shows that Mr. Alfred did contact Student Disability Services to obtain accommodations but he never provided requested documentation about his disability and he did not answer most of the questions asked of him about how he is being impacted by his disability regarding his Comprehensive Exam. In fact, Student Disability Services contacted Mr. Alfred multiple times to obtain the required information about his disability, the associated limitations, and his Comprehensive Exam to provide him with reasonable accommodations. The record indicates that Mr. Alfred did not provide the information requested.

After months without adequate follow ups, Student Disability Services archived Mr. Alfred's accommodation request until he provided more information about his Comprehensive Exam, so that they may develop reasonable accommodations. Mr. Alfred never completed the University's procedures to obtain accommodations for his Comprehensive Exam because he did not sufficiently inform Student Disability Services of his disability induced limitations preventing him from taking the Comprehensive Exam as designed. Mr. Alfred failed to state a claim for failure to accommodate his disability under the ADA or § 504 of the Rehabilitation Act because he failed

to assert that the University had adequate knowledge of his disability and its consequential limitations on his ability to take the Comprehensive Exam. *See Id.* Mr. Alfred's failure to accommodate claims against the University and the defendants in their official capacities are dismissed.

### III. Individual Capacity Claims

#### A. Individual Capacity ADA and Rehabilitation Act Claims

Mr. Alfred asserts that Dr. Yang, Dr. Barnard, and Dr. Kluck violated his rights under § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities acts in their individual capacities. Neither the Rehabilitation Act nor the ADA provides a cause of action against individuals so Mr. Alfred's failure to accommodate claims against Dr. Yang, Dr. Barnard, and Dr. Kluck in their individual capacities must be dismissed. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (holding that, under § 504 of the Rehabilitation Act, government officials cannot be sued in their individual capacities); *Hay v. Thaler*, 470 F. App'x 411, 417 n.19 (5th Cir. 2012) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir.2010)) (finding that jurisprudence for the Rehabilitation Act is applicable to the ADA and vice versa so there is no individual liability for ADA violation claims).

#### B. Qualified Immunity Defense

Mr. Alfred alleges that Defendants violated his First and Fourteenth Amendment rights. His 42 U.S.C. § 1983 claims are based upon punishments he faced for allegedly expressing his viewpoint during an academic question-and-answer session, asserting his rights to accommodations for his disability, which led to retaliation. The alleged retaliation consisted of academic probation for his comments and a downgrade in his student status and the non-renewal of his Graduate Research Assistantship without due process. Defendants, Dr. Yi Yang, Dr. Marie

13

Barnard, Dr. Erin Holmes, Dr, Meagan Rosenthal, Dr. Annette Kluck, and Dr. Jennifer Simmons (collectively "The named Defendants") raised a qualified immunity defense in response to Mr. Alfred's claims against them in their individual capacities.

Qualified immunity is a judicially created legal doctrine which "shields federal and state officials from money damages." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion," the burden shifts to the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo Cnty*, 246 F.3d 481, 489 (5th Cir.2001)). The plaintiff, not the defendant, must do the majority of the work in the qualified immunity context.

In this case, the named Defendants are all officials working for the University of Mississippi, a state agency. The named defendants are government officials whose positions involve the exercise of discretion, so they are able to raise a good faith qualified immunity defense. *See e.g. Babinski v. Sosnowsky*, 79 F.4th 515 (5th Cir. 2023) (allowing a university professor to raise qualified immunity in a § 1983 action); see also *Dudley v. Angel*, 209 F.3d 460 (5th Cir. 2000) (holding that university officials were entitled to qualified immunity from § 1983 liability). The burden has shifted to the plaintiff, Mr. Alfred.

To rebut a qualified immunity defense, the plaintiff must have "alleged a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of the alleged

14

violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court stated that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.

Mr. Alfred has alleged violations of his constitutional rights, which form the basis for his § 1983 claim against Defendants. At this motion to dismiss stage, the Court will accept the allegations that Defendants violated his rights as he claims in his complaint, so long as it does not contradict the record. *See id.* at 678. Even assuming the allegations in his complaint are sufficient to meet the first element, he has not cited sufficient case law to show that the rights violated were clearly established. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (The burden of proof to show that an officer violated a clearly established law is "heavy.").

Regarding the clearly-established-right prong, "[a] right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope*, 3 F.4th at 204 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

Mr. Alfred alleged that the named Defendants placed him on provisional status and academic probation because he expressed views in the questions and answers session that were unpopular, and because he made complaints about the Comprehensive exam process while requesting accommodations. The named Defendants assert that their actions did not violate Mr. Alfred's constitutional rights. The named Defendants argue that Mr. Alfred failed to cite a factually analogous case holding that the named Defendants' specific conduct was unconstitutional. The Court agrees with this assertion. The plaintiff in a § 1983 action "must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Mr. Alfred

15

cited case law, but none of it "squarely governs" Defendants' conduct at issue. *See Cope*, 3 F.4th at 204.

Mr. Alfred asserts that his filed Notice of Procedural Irregularities [36] is not a response on the merits, but he filed nothing else responding to the Defendant's motion to dismiss and even when the Defendant's filed their reply [39], Mr. Alfred has yet to address any of the defenses raised in the motion to dismiss, so the Court will interpret his notice [36] as a response on the merits. Mr. Alfred's response to the Defendant's motion to dismiss only addresses procedural irregularities that he claims are present in the Defendant's motion to dismiss but does not cite to any case law.

Looking to Mr. Alfred's Complaint, he claims that he was punished for his constitutionally protected speech made during a June 25, 2025, academic exchange, and for his requests for accommodation. The Court will analyze whether he has cited sufficient case law clearly establishing his rights to overcome the named Defendants' qualified immunity.

To support his allegations that his First Amendment rights were violated, Mr. Alfred cites to *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667 (1973); *Healy v. James*, 408 U.S. 169 (1972); and *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589 (1967). Mr. Alfred claims that his actions at a colleague's thesis defense are protected speech under the above precedent, but he makes no effort to show how the cases he cites specifically outlines the Defendants conduct against him as violations beyond debate. *See Morrow*, 917 F.3d at 874. His references to the case law merely consist of broad statements that the case law establishes clear precedent that "university officials may not discipline students for … protected academic expression." [25]. He does not expand on how the Defendants' specific conduct is squarely governed by the case law nor how his speech was clearly protected under the cited precedent. *See*

16

*Cope*, 3 F.4th at 204. His First Amendment claims do not survive the named Defendant's qualified immunity defense.

Mr. Alfred supports his retaliation claim by citing to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), particularly to show that the "disruptive" label given to him in the disciplinary memorandum is a violation of his rights. In *White*, the Supreme Court analyzed Title VII's antiretaliation provision. *Id.* at 59-60. The Court does not see how this case squarely governs Defendants' use of a disciplinary memorandum against Mr. Alfred, and he makes no effort to show how the case is relevant. *See Cope*, 3 F.4th at 204. Mr. Alfred's retaliation claims do not overcome qualified immunity.

Mr. Alfred also claims his procedural and substantive due process rights were purposefully violated. He asserts that the following due process rights were violated by the Defendants: notice requirements for academic standing changes (*Goss*); funding and tuition remission are protected interests (*Roth*; *Sindermann*); disruptive title in institutional record is a deprivation (*Paul*); notice requirement for deprivation of property and liberty interests (*Dixon*; *Goss*); public universities must follow their own procedures before depriving students of protected interests (*Dixon*); abrupt discipline and administrative ratification is a willful abuse of authority (*Roth*); and the cumulative effect of sanctions may shock the conscience (*Lewis*).[1] His citations to the cases are used to generally show that those rights exist, but he makes no clear indication how the case law classifies the named Defendants' actions as violations beyond debate or how the violations occurred in his

---

[1] Mr. Alfred cited the following cases to show that his allegedly violated rights were clearly established, but he does so at a high level of generality without expanding on which defendant's specific conduct is governed by each case: *Goss v. Lopez*, 419 U.S. 565 (1975*); The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Paul v. Davis*, 424 U.S. 693 (1976); *Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150 (5th Cir. 1961); and *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

17

particular situation. *See Morrow*, 917 F.3d at 874. Clearly established law must not be defined at a high level of generality. *See City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if clearly established law can simply be defined as the right to be free from unreasonable searches and seizures."). Mr. Alfred does have rights but the case law he cited alone, without more input or explanation on his part, does not show a clearly established law that the named Defendants violated. Mr. Alfred failed to meet his burden in pleading his due process claims to overcome qualified immunity. The named Defendants are entitled to qualified immunity and all of Mr. Alfred's claims against them in their individual capacities are dismissed. See *Cope*, 3 F.4th at 204.

## IV. Official Capacity Claims

Moving to the official capacity claims against the four non-barred Defendants, they argue that any remaining claims must be dismissed for failure to state a claim. The Fifth Circuit has recognized that Section 1983 claims against public officials are subject to a heightened pleading requirement; a plaintiff "must do more than allege conclusions;" they must assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (en banc). The Court will evaluate whether Mr. Alfred sufficiently stated a claim under this heightened standard.

### A. First Amendment and Retaliation Claims

The non-barred Defendants argue that Mr. Alfred did not adequately raise a First Amendment viewpoint discrimination claim because he did not plausibly allege that he experienced punishment due to his protected speech. Mr. Alfred's claim arises from the academic probation and downgrade in status he faced allegedly in retaliation for the viewpoint he expressed disagreeing with a faculty member during a classmate's thesis defense. While stated as viewpoint

18

discrimination, Mr. Alfred's claim is in essence a first amendment retaliation claim as there were no restrictions or policies preventing his speech or participation, but he was later allegedly punished for his speech during the classmate's thesis defense. As a result, the Court will analyze his viewpoint discrimination claim as a first amendment retaliation claim, along with his claims of retaliation for "objecting to procedural irregularities in his comprehensive exam" and for "[f]iling formal complaints" against Defendants. [25].

"To prove a retaliation claim cognizable under the First Amendment, the plaintiff must show that her speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the defendant's decision." *Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985) (quoting *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). The plaintiff may meet this burden with direct evidence or through "a chronology of events from which retaliation may be plausibly inferred." *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). If a plaintiff meets this burden, the burden shifts to the defendant to show "that it would have taken the same adverse employment action against" the plaintiff "even in the absence of the" plaintiff's "protected conduct" *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 455 (5th Cir. 2013) (citing *Charles v. Grief*, 522 F.3d 508, 516 n. 28 (5th Cir. 2008)).

"Whether speech is entitled to First Amendment protection is a question of law." *Kelleher*, 761 F.2d at 1084. The non-barred Defendants argue that Mr. Alfred has not presented sufficient facts or case law to indicate that his speech was a motivating factor in the Defendants' conduct against him. Defendants also argue that Mr. Alfred's claims of retaliation for his speech during the thesis defense are inadequate as he never identified the content of his allegedly unpopular speech.

"Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Heaney v. Roberts*, 846 F.3d 795,

19

802 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). To claim viewpoint discrimination, the plaintiff must show that the defendant acted with a viewpoint-discriminatory purpose. *Id.* Mr. Alfred never identified what particular viewpoint that he expressed that he believes led to the alleged retaliation. This lack of identification serves as a failure to state a claim. When reading Mr. Alfred's complaint in the light most favorable to him, the only information provided about his participation during the thesis defense was that he disagreed with a faculty member. Mr. Alfred never identified the faculty member nor did he share the content and viewpoints of his comments. Without this information the Court cannot infer any viewpoint-discriminatory motives from the Defendants as is required to state a viewpoint discrimination claim. Mr. Alfred's viewpoint discrimination claim must be dismissed against the non-barred Defendants.

As to Mr. Alfred's retaliation claims for his complaints made to the Dean and his objections to the Comprehensive Exam's alleged irregularities, the Defendants assert that Mr. Alfred failed to meet his burden of showing that his downgrade to provisional status and the non-renewal of his Graduate Research Assistantship was motivated by his complaints and not his failure to complete his Abilities Transcript. Mr. Alfred claims his conduct is protected speech under the First Amendment but he cited no case law to support that assertion.

Even if the Court accepts his complaints and requests as protected, the Defendants assert that the adverse actions taken against Mr. Alfred were for his failure to complete the Abilities Transcript program requirement, and not in response to his protected speech. Mr. Alfred does not dispute that he failed to complete his Abilities Transcript. Mr. Alfred argues that the Abilities Transcript is merely a developmental tool and is not evaluative in nature, and that his inability to complete it was due to unresolved procedural disputes and not neglect. Even if true, the record

20

shows that the Abilities Transcript, despite being a developmental tool, is a requirement for Mr. Alfred to complete his program. Mr. Alfred does not state that his failure to complete his Abilities Transcript is protected speech.

The Court finds that Mr. Alfred's failure to submit the Abilities Transcript is the motivating factor for his status downgrade and non-renewal of his position. *See Kelleher*, 761 F.2d at 1083. As a result, Mr. Alfred failed to meet the burden required to state a First Amendment retaliation claim against the Defendants. *See Mooney*, 538 F. App'x at 455. None of Mr. Alfred's protected conduct were the primary motivation for the Defendants' adverse actions, so Mr. Alfred's First Amendment retaliation claims against Dr. Barnard, Dr. Yang, Dr. Kluck and Dr. Simmons in their official capacities fail.

Mr. Alfred also raised a retaliation claim under the ADA and § 504 of the Rehabilitation Act against the non-barred Defendants. To establish a prima facie case of retaliation under the ADA and Rehabilitation Act, Mr. Alfred must show that 1) he engaged in a protected activity under the ADA and Rehabilitation Act, 2) his employer took an adverse employment action against him, and 3) a causal connection existed between the adverse employment action and the protected activity. *Calderon v. Potter*, 113 Fed. Appx 586, 592 (5th Cir. 2004). At this stage in the litigation, the Court accepts as true Mr. Alfred's claims that his attempts to request accommodations under the ADA and Rehabilitation Act were protected, and that his downgrade in status and the non-renewal of his Graduate Research Assistantship are adverse actions taken against him. But as explained during the Court's First Amendment retaliation analysis, there is no causal connection between his protected activity and the adverse actions because Mr. Alfred's status downgrade and position non-renewal were motivated by his noncompletion of the Abilities Transcript. As a result, Mr. Alfred failed to establish a prima facie case of retaliation. *See Calderon*, 113 Fed. Appx at 592.

All of Mr. Alfred's remaining retaliation claims against the non-barred Defendants must be dismissed.

### B. Due Process Claims

Mr. Alfred claims that his procedural and substantive due process rights were violated when the Defendants issued a disciplinary memorandum labeling him as "disruptive," placed him on provisional status and did not renew his Graduate Research Assistantship position without adequate notice, hearing, or impartial review. [25]. The Defendants argue that Mr. Alfred's due process claims fail since his affected interest is not a protected property interest.

The threshold issue in a due process claim is whether a protected property interest exists. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020). "If there is no protected property interest, there is no process due." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992). The United States Supreme Court "has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections." *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013). The Fifth Circuit held that "a student who is not denied access to public education does not have a property or liberty interest implicated." *Id.* (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997). "In order to have a property interest in a benefit, 'a person ... must have more than an abstract need or desire for it,' and he must be able to establish 'more than a unilateral expectation' that he would receive it." *Wigginton*, 964 F.3d at 336 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

As determined above, Mr. Alfred's downgrade in status occurred because he failed to complete his Abilities Transcript. The Court finds that because the Abilities Transcript is a program requirement, any actions taken due to its noncompletion are considered scholastic, not disciplinary, in nature. Mr. Alfred's downgrade in status and the non-renewal of his Research Assistantship are

22

not protected interests requiring due process to alter because the Defendant's actions were academic decisions. *See Smith v. Davis*, 507 F. App'x at 362. This includes his subsequent removal from the Ph.D. program for failing to meet the requirements given to him by the University to regain full standing by the spring semester. Additionally, Mr. Alfred does not have a property interest in the renewal of his Graduate Research Assistantship because he never asserted more than his own expectation that he is entitled to it. *See Wigginton*, 934 F.3d at 336.

Mr. Alfred claims that because his provisional status prevented the renewal of his Graduate Research Assistantship, he lost his sole means of income and is unable to comply with his F-1 visa and to stay in the country. As a result, he claims his downgrade in status is constructive expulsion because he will lose access to the University and its courses if he is deported. Mr. Alfred cites no case law establishing this as a protected interest. Fifth Circuit precedent instead establishes that continued enrollment in a post-graduate or professional program is not a protected interest. *Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, No. 24-10304, 2024 WL 4973300, at *2-3 (5th Cir. Dec. 4, 2024) (citing *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995)). Mr. Alfred's continued enrollment in his Ph.D. program is not a protected interest requiring due process.

Turning to Mr. Alfred's claims related to his academic probation, Mr. Alfred asserts that the disciplinary memorandum stigmatized him by assigning him a reputation as "disruptive." [25]. The Supreme Court held that an interest in reputation alone is insufficient to invoke the Due Process Clause of the Fourteenth Amendment because it does not reach the level of "liberty or property interests protected by the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 711–12 (1976). As it relates to his academic probation, Mr. Alfred has not identified any associated interest other than his reputation, so he is not entitled to due process. Mr. Alfred failed to identify any

protected interest meriting him to due process. His due process claims against Dr. Barnard, Dr. Yang, Dr. Kluck and Dr. Simmons in their official capacities are dismissed.

## CONCLUSION

**ACCORDINGLY**, Mr. Alfred's Motion for Recusal [48] is **DENIED**. Defendants' Motion to Dismiss [31] is **GRANTED**. Mr. Alfred's breach of contract claim against the University and his § 1983 claims against the University and Drs. Rosenthal and Holmes in their official capacities are **DISMISSED WITHOUT PREJUDICE** and Mr. Alfred's remaining Claims against the University and the named Defendants in their official and individual capacities are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 29th day of June, 2026.

  /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI